UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        Plaintiff,

v.

CRAIG CARTON and MICHAEL WRIGHT,

        Defendants.

Case No. 17 Cr. 680 (CM)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CRAIG CARTON'S MOTION TO DISMISS COUNT THREE OF THE INDICTMENT (SECURITIES FRAUD) FOR FAILURE TO STATE AN OFFENSE

GOTTLIEB & JANEY LLP
111 Broadway, Suite 701
New York, NY 10006
Tel.: (212) 566-7766
Fax: (212) 374-1506

*Attorneys for Defendant
Craig Carton*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

I. PRELIMINARY STATEMENT ............................................................................... 1

II. FACTUAL BACKGROUND .................................................................................... 4

III. ARGUMENT ............................................................................................................. 6

    A. Count Three of the Indictment Should Be Dismissed Because It Fails to Meet the Minimum Pleading Requirements Under Federal Rule of Criminal Procedure Rule 7(c) .................................................................. 6

    B. Analysis of the Relevant Sections of the Indictment Support Mr. Carton's Position for Dismissal of Count Three ........................................................ 8

    C. Count Three Is Subject to Dismissal Pursuant to Rule 12(b)(3)(B)(v) Because It Does Not State An Offense .......................................................... 12

    D. A Bill of Particulars Does Not Rescue the Government's Indictment Here ....................................................................................................................... 14

IV. CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

# TABLE OF AUTHORITIES

Page

**Constitutional Provisions**

U.S. CONST. amend. V ..................................................................................................1, 4, 7, 8, 15

U.S. CONST. amend. VI .................................................................................................................7

**Rules and Statutes**

15 U.S.C. § 78ff ..............................................................................................................................5

15 U.S.C. § 78j (b) ..........................................................................................................................5

18 U.S.C § 2 ....................................................................................................................................5

18 U.S.C. § 1010 ...........................................................................................................................13

18 U.S.C § 1343 ..............................................................................................................................5

17 C.F.R § 240.10b-5 .....................................................................................................................5

Fed. R. Crim. P. 7(c) ............................................................................................................. passim

Fed. R. Crim. P. 12(b)(3)(B) .............................................................................................1, 12, 15

**Cases**

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) .................................................................................................................2

*In re Integrated Resources Real Estate Ltd. Partnerships Securities Litigation*,
   850 F.Supp. 1105 (S.D.N.Y.1993) ...........................................................................................2

*Russell v. United States*,
   369 U.S. 749 (1962) ....................................................................................................... passim

*S.E.C. v. First Jersey Sec., Inc.*,
   101 F.3d 1450 (2d Cir. 1996) ...................................................................................................2

*United States v. Allen*,
    406 F.3d 940 (8d Cir.2005) .................................................................................................. 8

*United States v. Berlin*,
    472 F.2d 1002 (2d Cir.1973) ..................................................................................... 7, 13, 14

*United States v. Bongiorno*,
    2006 WL 1140864 (S.D.N.Y. May 1, 2006) ........................................................................ 13

*United States v. Camp*,
    541 F.2d 737 (8th Cir.1976) ................................................................................................ 6, 14

*United States v. Gonzalez*,
    686 F.3d 122 (2d Cir. 2012) ............................................................................. 1, 2, 7, 13,14

*United States v. Halloran*,
    664 Fed. Appx. 23 (2d Cir. 2016). ...................................................................................... 12

*United States v. Miller*,
    471 U.S.130 (1985) ............................................................................................................. 8

*United States v. O'Hagan*,
    521 U.S. 642 (1997) ............................................................................................................ 3

*United States v. Panzavecchia*,
    421 F.2d 440 (5th Cir 1970) .............................................................................................. 15

*United States v. Pirro*,
    212 F.3d 86 (2d Cir.2000) ................................................................................. 7, 11, 12, 14

*United States v. Smith*,
    985 F. Supp. 2d 547 (S.D.N.Y. 2014), *aff'd sub nom.* ....................................................... 12

*United States v. Stavroulakis*,
    952 F.2d 686 (2d Cir.1992) ................................................................................................. 7

*United States v. Walsh*,
    194 F.3d 37 (2d Cir. 1999) .................................................................................................. 7

*United States v. Wexler*,
    621 F.2d 1218 (2d Cir. 1980) ............................................................................................ 13

Defendant Craig Carton, by and through his undersigned counsel, Gottlieb & Janey LLP, hereby moves to dismiss Count Three (Securities Fraud) of the Indictment ("Count Three"), pursuant to Federal Rule of Criminal Procedure Rule 7(c) and Rule 12(b)(3)(B), and the Fifth Amendment of the United States Constitution. Count Three fails to allege an essential element—intent— to misappropriate investor funds at either the time Mr. Carton solicited the subject investment (*i.e.*, the loan) from the Hedge Fund and/or when the loan agreement was made, and therefore fails to state an offense.

## I.   PRELIMINARY STATEMENT

Count Three fails to plead that Mr. Carton possessed fraudulent intent at the time the agreement was entered into with the Hedge Fund on December 8, 2016—the date the Indictment states Mr. Carton and the Hedge Fund entered into the loan agreement. The Indictment's failure to state an essential element of the charge must result in dismissal of Count Three, because, among other things, it is unknown if the grand jury considered the missing essential element, voted on it and handed-up the indictment with that essential element included therein. The Second Circuit, relatively recently, in a case on point, underscored the well-established law of this Circuit on the constitutional implications of such an indictment as here in *United States v. Gonzalez*:

> Under the Fifth Amendment, a defendant has a substantial right to be tried only on charges presented in an indictment returned by a grand jury... An indictment that does not set out all of the essential elements of the offense charged is defective...The Fifth Amendment made the right to indictment by grand jury mandatory in federal prosecutions in recognition of the fact that the intervention of a grand jury was a substantial safeguard against oppressive and arbitrary proceedings.

*United States v. Gonzalez*, 686 F.3d 122, 127 (2d Cir. 2012) (citations omitted).

1

The factual circumstance in *United States v. Gonzalez* concerned a defendant charged with a drug offense while the offense here is securities fraud. However, the critical legal policy of *Gonzalez* is relevant because there, as here, was an instance where the Government sought to subject the defendant to a criminal penalty without factual allegations in the indictment from which the grand jury's determination to make that charge could be inferred. *See Gonzalez*, 686 F.3d 122, 127 (2d Cir. 2012). On that basis, *inter alia*, the defendant argued that his right to indictment by a grand jury was violated. The trial court rejected that argument principally on the grounds that the text of the indictment referenced the statute, thus giving the defendant notice. However, the defendant argued that notice was *not* the issue; the essential element(s) itself must actually be pleaded. The Second Circuit agreed and remanded the matter to the District Court.

In *Ernst & Ernst v. Hochfelder*, the Supreme Court made it clear that "[t]he words 'manipulative or deceptive' used in conjunction with 'device or contrivance' strongly suggest that § 10(b) was intended to proscribe knowing or intentional misconduct." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197 (1976). In order to establish primary liability under Section 10(b) and Rule 10b–5, it is required to be proven, that in connection with the purchase or sale of a security the defendant, **acting with scienter**, made a material misrepresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device. *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996) (emphasis added). "Scienter, as used in connection with the securities fraud statutes, means intent to deceive, manipulate, or defraud, or at least knowing misconduct." *Id.* So, as a threshold matter, at least in the criminal context, securities fraud liability attaches where the material misrepresentation was knowingly false when made. Some aspect of the projection must be actually false, and **known to be false to the defendant making the promise at the time it was made, for the projection to be fraudulent.** *See In re*

*Integrated Resources Real Estate Ltd. Partnerships Securities Litigation*, 850 F.Supp. 1105, 1141 (S.D.N.Y.1993).

In other words, to establish a criminal violation under Section 10(b) and Rule 10b-5, the Government must prove the "presence of culpable intent." *United States v. O'Hagan*, 521 U.S. 642 (1997). At the pleading stage, the Government must sufficiently allege facts describing intent, and the indictment, on its face, therefore, must evidence that these facts were presented to the grand jury. Here, the Government certainly describes that Mr. Carton (a) communicated with the co-defendants about a potential agreement between Mr. Carton and the Hedge Fund for the loan "relating to the purchase of tickets to live events"; and (b) Mr. Carton entered into an agreement with the Hedge Fund on December 8, 2016 "under which the Hedge Fund agreed to finance the CARTON Entity's purchase of tickets to live events, so those tickets could be resold in the secondary market." Indictment, ¶16 (a)-(b). These are the operative paragraphs in the Indictment for describing what, if anything, might be construed about Mr. Carton's state of mind at the time he entered into the loan arrangement. However, in its most favorable light, nothing here describes a state of mind for actual intent to deceive or defraud the Hedge Fund when the loan arrangement was effectuated on December 8, 2016. If anything, the Indictment describes a legitimate commercial arrangement for the financing of live event tickets to be resold into the secondary ticket market.

Simply, the Government has failed to include specific factual allegations as to how Mr. Carton possessed the requisite intent—a fundamental element of a securities fraud violation. The Indictment is devoid of any allegations that Mr. Carton possessed "culpable intent" **at the time the Hedge Fund established the loan facility for approximately $4.6 million in the ticket resale business on December 8, 2016**. The Government has failed to put forth any allegation

that Mr. Carton had "intent to deceive" **at the time** the Hedge Fund established the loan agreement.

Despite the Government's omission of an essential element of the crime, Mr. Carton, a public person who for over a decade worked as a high-profile radio talk show host for CBS, has been unfairly turned into a pariah. A decade building good-will as a highly respected community leader, child advocate and charity minded citizen was completely discarded with an obnoxious disregard. Banks have closed his accounts; employment prospects have dissolved, despite his incontrovertible talent; and neighbors and others have elected not to engage him because he has been accused of securities fraud. When the Government brings a criminal prosecution, as here, it should approach that responsibility deliberately and soberly. Among other things, this means that the Government should take every measure to ensure the defendant's constitutional guarantees under the Fifth Amendment are assured, and, more particularly, that, in this instance, Mr. Carton is being prosecuted for securities fraud based on evidence presented to and approved by the grand jury. The failure to allege the intent element in Count Three substantially undermines Mr. Carton's Fifth Amendment guarantees in this regard, and is violative of Rule 7 of the Federal Rules of Criminal Procedure. Therefore, Count Three should be dismissed.

## II.   FACTUAL BACKGROUND

For many years, Craig Carton was a nationally renowned, successful sports radio broadcaster, most recently on the "Boomer and Carton" show on WFAN- CBS Radio in New York. Apart from his career in radio, Mr. Carton was a philanthropic family man who set out to better his community, including creating the TicTocStop Foundation to combat Tourette Syndrome. In addition to his career as a radio broadcaster and philanthropist, Mr. Carton

established a business acquiring bulk tickets live events, including sporting events and concerts, that, in turn, would be resold on the secondary ticket market.

In the fall of 2016, Mr. Carton began discussions with the Hedge Fund regarding a potential investment in his ticket resale business. These discussions ultimately resulted in the Hedge Fund investing in Mr. Carton's ticket business. On December 8, 2016, the Hedge Fund agreed to provide Mr. Carton with a revolving loan agreement, under which the Hedge Fund agreed to provide Mr. Carton with up to $10 million, for the purpose of funding investments in the purchase of tickets to live events. The Hedge Fund subsequently invested approximately $4.6 million with Mr. Carton. The Hedge Fund was given unfettered access to independently review an online, third-party platform to check the corresponding ticket sales and financial results in real time. Over the course of Mr. Carton's business relationship with the Hedge Fund, thousands of tickets were sold.

Despite this, his broadcasting career, and life, including his opportunities to be involved in philanthropy, all were irrevocably altered when he was arrested on September 6, 2017. Later, on November 2nd, 2017, a grand jury indictment was filed in the Southern District of New York against Mr. Carton, along with Michael Wright, charging them with (1) Conspiracy to Commit Securities Fraud and Wire Fraud in violation of 15 U.S.C. §§ 78j (b) & 78ff, 17 C.F.R § 240.10b-5; and 18 U.S.C § 1343; (2) Wire Fraud in violation of 18 U.S.C. §§ 1343 and 2; and (3) Securities Fraud in violation of 15 U.S.C. §§ 78j (b) & 78ff, 17 C.F.R § 240.10b-5; and 18 U.S.C § 2.

Count Three of the Indictment charged Mr. Carton with the aforementioned securities fraud violations. Critically, Mr. Carton is charged under Count Three even though it merely cites the relevant statutes in support of such claims without factual articulation of a fundamental

element—Mr. Carton's intent. In regards to Mr. Carton's mental state, Count Three states that Mr. Carton (a) communicated with the co-defendants about a potential agreement between Mr. Carton and the Hedge Fund for the loan "relating to the purchase of tickets to live events"; and (b) Mr. Carton entered into an agreement with the Hedge Fund on December 8, 2016 "under which the Hedge Fund agreed to finance the CARTON Entity's purchase of tickets to live events, so those tickets could be resold in the secondary market."

### III. ARGUMENT

#### A. Count Three Should Be Dismissed Because It Fails to Meet the Minimum Pleading Requirements Under Federal Rule of Criminal Procedure Rule 7(c)

The Indictment cites the relevant statutes in support of a securities fraud claim. However, well settled law in this Circuit supports Mr. Carton's position that citing the statute without factual articulation of a fundamental element is insufficient. More particularly, Rule 7(c) of the Federal Rules of Criminal Procedure sets forth the minimum pleading standard that applies to indictments. It requires that the *"[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged…. For each count, the indictment…must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."* Fed.R.Crim.P. 7(c)(1) (emphases added).

The wording of Rule 7(c)(1) imposes "two requirements [:] the statement of the essential facts and the citation of the statute. They are separate requirements and not a restatement of one another." *United States v. Camp*, 541 F.2d 737, 740 (8th Cir.1976). "If citation of the statute were a statement of the facts, nothing beyond a citation would be necessary. Surely no one could

6

assert persuasively that an indictment that merely charged that a defendant violated a cited statute would suffice as an indictment." *Id.* Both the Supreme Court and the Second Circuit have embraced an additional principle of criminal pleading: when the definition of an offense "includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species, —it must descend to particulars." *Russell v. United States*, 369 U.S. 749, 765 (1962); *See also United States v. Pirro*, 212 F.3d 86, 92-93 (2d Cir.2000).

Furthermore, it has long been the rule in this Circuit that a deficiency in an indictment's factual allegations of the elements of an offense is "not cured by" the fact that the relevant count "cited the statute that [the defendant] is alleged to have violated." *Gonzalez*, 686 F.3d at 128 (citing *United States v. Berlin*, 472 F.2d 1002, 1008 (2d Cir.1973)). (If citing the statute defendant is alleged to have violated were enough to cure a deficient statement, then almost no indictment would be vulnerable to attack; for it is a common practice in indictments to cite the statute that is alleged to have been violated). The Second Circuit strictly adheres to the principle that citation to a statutory section is not, by itself, sufficient to cure a defective indictment that fails to allege all the elements of an offense. *Gonzalez*, 686 F.3d at 132.

The requirement of Rule 7(c) also performs three constitutionally mandated functions: "[1] It fulfills the Sixth Amendment right 'to be informed of the nature and cause of the accusation;' [2] it prevents a person from being subject to double jeopardy as required by the Fifth Amendment; and [3] **it serves the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury**." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999); *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir.1992) (emphasis added).

7

The Fifth Amendment guarantees that "[N]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...." U.S. Const. Amend. V. If the indictment does not state the essential elements of the crime, the defendant cannot be assured that he is being tried on the evidence presented to the grand jury. *Russell*, 369 U.S. at 770. Accordingly, as applied to the instant case, Mr. Carton has a "substantial right to be tried only on charges presented in an indictment returned by a grand jury." *United States v. Miller*, 471 U.S.130, 140 (1985). Count Three of the Indictment fails to set out all of the essential elements of securities fraud and, therefore, Mr. Carton cannot be assured that he is being tried on the evidence presented to the grand jury. *See* Russell, 369 U.S. at 770. This is what makes the defect in Count Three especially problematic and subject to dismissal. *See Miller*, 471 U.S. at 143. The right to have the grand jury "make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment." *Id.* at 139; *see also United States v. Allen*, 406 F.3d 940 (8d Cir.2005) (Failure to plead mens rea requirement in indictment violated defendant's Fifth Amendment rights).

### B. Analysis of the Relevant Sections of the Indictment Support Mr. Carton's Position for Dismissal of Count Three

An analysis of the specific language of the Indictment is required. The Indictment contains the following portions relevant to this motion:

> **The Scheme to Defraud**
>
> 11. From at least in or about August 2016 through in or about August 2017, CRAIG CARTON and MICHAEL WRIGHT, the defendants, along with CC-1, worked together to solicit individuals and entities to invest in and finance the bulk purchase of tickets to live events, which would be re-sold at a profit on the secondary market. After receiving investor funds based on misrepresentations, CARTON, WRIGHT, and CC-1 misappropriated those investor funds, using them to, among

8

other things, pay personal debts and repay prior investors as part of a Ponzi-like scheme.

12. For example, in or about December 2016, based on representations by CRAIG CARTON, the defendant, and CC-1, the Hedge Fund invested approximately $4.6 million with the understanding that the money would be used to finance the purchase of tickets to events promoted by the Concert Promotion Company and the Sports and Entertainment Company and that the tickets would then be re- sold in the secondary market. Instead, however, CARTON, CC-1 and MICHAEL WRIGHT, the defendant, misappropriated the Hedge Fund's investment. At least $1.6 million of the Hedge Fund's investment was used to pay back, in a Ponzi-like manner, individuals who had previously invested in ticket-related investments; approximately one million dollars was sent to casinos; and an additional approximately $1.19 million was wired to other individuals to whom CARTON and/or WRIGHT owed money, including over $600,000 to an individual who had provided CARTON, via WRIGHT, with a gambling- related loan.

**Overt Acts**

16. In furtherance of the conspiracy and to effect the illegal objects thereof, CRAIG CARTON and MICHAEL WRIGHT, the defendants, and their co-conspirators, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. In or about early December 2016, CARTON, WRIGHT, and CC-1 communicated with each other regarding a potential agreement between CARTON and the Hedge Fund, relating to the purchase of tickets to live events.

b. On or about December 8, 2016, CARTON entered into an agreement with the Hedge Fund, under which the Hedge Fund agreed to finance the CARTON Entity's purchase of tickets to live events, so those tickets could be resold in the secondary market. That same day, the Hedge Fund wired $700,000 to the CC-1 Entity. CC-1 then caused the wiring of those funds to a bank account for CARTON-WRIGHT Entity-2 (the "CARTON-WRIGHT Entity-2 Account").

c. On or about December 12, 2016, WRIGHT authorized the wiring of $200,000 from the CARTON-WRIGHT Entity-2 Account to CARTON and $500,000 from the CARTON-WRIGHT Entity-2 Account to an individual who had previously provided CARTON with a short-term loan.

d. On or about December 13, 2016, WRIGHT emailed CARTON and CC-1 to advise them of additional debts that would be coming due in the coming days and weeks. CARTON responded stating that he was "trying to bring in $3m this week for [two well-known rock bands]."

9

e. On or about December 18, 2016, CARTON emailed the Hedge Fund a purported agreement between the CARTON Entity and the Sports and Entertainment Company, relating to live event tickets.

f. Thereafter, on or about December 20, 2016, the Hedge Fund wired $2 million to the Sports and Entertainment Company, to finance the purchase of tickets to events. CARTON, however, told the Sports and Entertainment Company to re-direct the $2 million wire to an account belonging to CARTON-WRIGHT Entity-1 (the "CARTON-WRIGHT Entity-1 Account"), and the Sports and Entertainment Company complied.

g. On or about December 21, 2016, WRIGHT caused the wiring of $966,000 from the CARTON-WRIGHT Entity-1 Account to an account he controlled.

h. In or about the spring of 2016, CARTON made additional misrepresentations to the Hedge Fund regarding the status of its investment.

## COUNT THREE (SECURITIES FRAUD)

19. The allegations set forth in paragraphs 1 through 12 and 16 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

20. From at least in or about August 2016 through at least in or about August 2017, in the Southern District of New York and elsewhere, CRAIG CARTON and MICHAEL WRIGHT, the defendants willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, used and employed, and caused others to use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing, and causing others to employ, devices, schemes, and artifices to defraud; (b) making, and causing others to make, untrue statements of material fact and omitting to state, and causing others to omit to state, material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging, and causing others to engage, in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, CARTON and WRIGHT solicited investments in ventures related to the purchase and re-sale of tickets to live events through materially false misrepresentations and then misappropriated investor funds for their own use and the use of others, and aided and abetted the same.

At the outset, paragraphs 11 and 12 seek to describe the allegations of the overall scheme. Paragraph 11 purports to cover at least a one year period and provides only vague labels about conduct; it does not describe specific intent. The first sentence of paragraph 11 is purely factual and describes only lawful conduct. Further, the second sentence of paragraph 11 provides a general description of alleged conduct without descending into particulars, as required under *Russell* and *Pirro*. *Russell*, 369 U.S. at 765; *Pirro*, 212 F.3d at 92-93 (When the definition of an offense "includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species, --it must descend to particulars.")

Similarly, paragraph 12 starts off with a broad statement about the Hedge Fund's investment into the legitimate ticket resale business without alleging any intent on the part of Mr. Carton to commit securities fraud at the time of the Hedge Fund's investment. This sentence is followed by a general statement about what may or may not have happened with the money following the Hedge Fund's investment. As described above, any alleged misappropriation of funds, alone, is not enough to plead the elements of securities fraud. Rather, the Indictment is required to plead a specific intent on the part of Mr. Carton at the time the investment was made in order to sufficiently plead a count of securities fraud. Count Three of the Indictment fails to do so. Although this paragraph pleads that Mr. Carton made "representations" to the Hedge Fund, the Indictment fails to detail whether any of these "representations" were inaccurate, at minimum, or knowingly false –a requirement of the statute. *See* Section 10(b) and Rule 10b-5.

Furthermore, paragraph 16 purports to describe the overt acts committed as part of the alleged scheme. However, paragraph 16 also neglects to plead specific intent on the part of Mr. Carton at any time either before or at the time of the agreement with the Hedge Fund on

11

December 8, 2016. Both subparagraphs (a) and (b) fail to allege any intent whatsoever on the part of Mr. Carton. All dates referenced following December 8, 2016—the date of the agreement with the Hedge Fund—pertain solely to allegations of subsequent misappropriation of funds, which standing alone, without intent, do not meet the elements of securities fraud. Further, should this Court determine that intent is pleaded in the Indictment with regards to occurrences *after* December 8, 2016, the Indictment still lacks the requirement of sufficiently pleading intent, an essential element of securities fraud, at the time of the agreement.

As to Count Three of the Indictment itself, the allegation in paragraph 20 is unintelligibly vague and merely regurgitates the statutes. The Indictment's ambiguous claim that over the course of a one year period Mr. Carton made false misrepresentations and then misappropriated investor funds does not "descend to particulars" as set forth in *Russell* and *Pirro*. *Russell*, 369 U.S. at 765; *Pirro*, 212 F.3d at 92-93. The Indictment does not detail specifics, nor does it set forth any allegation concerning Mr. Carton's intent to commit securities fraud at the time of the agreement on December 8, 2016.

In sum, taken together, the sections entitled "Scheme to Defraud," "Overt Acts," and Count Three fail to plead specific intent on the part of Mr. Carton at the time of the loan agreement.

### C. Count Three Is Subject to Dismissal Pursuant to Rule 12(b)(3)(B)(v) Because It Does Not State An Offense

"[A] charge in an indictment is insufficient and must be dismissed when it does not describe conduct that is a violation of the criminal statute charged." *United States v. Smith*, 985 F. Supp. 2d 547, 561 (S.D.N.Y. 2014), *aff'd sub nom. United States v. Halloran*, 664 Fed. Appx. 23 (2d Cir. 2016). Certainly, failure to allege the essential element of intent for securities fraud

at the time of the loan qualifies as insufficient under the law. A motion to dismiss for failure to charge an offense is granted where either the indictment fails to track language of the statute **or sufficiently sets forth elements of crime charged**. *See United States v. Wexler*, 621 F.2d 1218, 1223 (2d Cir. 1980) (emphasis added).

Further, a court in the Southern District of New York has ruled that a defendants' motion should not be denied solely because the indictment tracks the statutory language. *United States v. Bongiorno*, 2006 WL 1140864 (S.D.N.Y. May 1, 2006). The court in *Bongiorno* stated:

> ...the basis for defendants' motion is not a pretrial challenge to the evidence or a claim that the indictment is not pled with sufficient specificity, but rather that the facts alleged do not state an offense as a matter of law. If defendants are correct, it would be improper and a waste of resources for everyone involved to conduct a lengthy trial-the parties estimate the trial as taking up to three months-and submit the case to a jury only to rule on a post-trial motion that the government's theory of criminal liability fails no matter what facts it was able to adduce at trial.

*Id.*

Similar to the defendant in *Bongiorno*, Mr. Carton's challenge to Count Three is that it does not state an offense as a matter of law. Here, Count Three does no more than regurgitate the statutory language. The Government fails to allege specifics which give rise to a statutory violation, as is required. As previously stated, it has long been held in the Second Circuit that a deficiency in an indictment's factual allegations of the elements of an offense is "not cured by" the fact that the relevant count "cited the statute that [the defendant] is alleged to have violated," *Gonzalez*, 686 F.3d at 128 (quoting *Berlin*, 472 F.2d at 1002, 1008).

For example, in *Berlin*, the defendant was charged with aiding and abetting a mortgage applicant's false statement for the purpose of obtaining mortgage insurance, in violation of 18 U.S.C. § 1010. *Berlin*, 472 F.2d at 1008. An essential element of that offense is that the offender had knowledge of the falsity of the statement that was made; however, the indictment

13

did not include an allegation that the defendant knew of the falsity of the statements or documents the applicant submitted. *Id.* The Second Circuit held that

> This deficiency was not cured by the fact that each count cited the statute that appellant is alleged to have violated. Although the statutes in question explicitly require knowledge of the falsity, if this were enough to cure a deficient statement, then almost no indictment would be vulnerable to attack; for it is a common practice in indictments to cite the statute that is alleged to have been violated. We have been cited to no authority indicating that an indictment can be cured in such a fashion. **Indeed, the cases, while not discussing the point explicitly, seem to imply that an indictment that fails to allege all the elements of the offense required by the statute will not be saved by simply citing the statutory section.**

*Id.*

The Second Circuit's reasoning in *Berlin* directly applies here. Count Three of the Indictment uses generic terms from the statute without stating specifics as the Supreme Court requires in *Russell* and as the Second Circuit reflects in *Berlin*. As this Circuit put forth in *Pirro*, the Indictment needs to identify a specific criminal act and not just a generic allegation. *Russell*, 369 U.S. at 765; *Pirro*, 212 F.3d at 92-93; *Berlin*, 472 F.2d at 1008.

### D. A Bill of Particulars Does Not Rescue the Government's Indictment Here

An indictment that is defective for failure to allege an essential element is not rescued by prosecutorial advice in the nature of a bill of particulars stating the missing element, because the "grand jury did not see or participate in preparing the bill of particulars." *Gonzalez*, 686 F.3d at 128 (quoting *Camp*, 541 F.2d at 740). A bill of particulars does not provide assurance that the grand jury considered and charged the missing essential element. *Camp*, 541 F.2d at 740. The Supreme Court has settled that a bill of particulars cannot save an invalid indictment. *Russell v. United States*, 369 U.S. 749, 764 (1962). While a bill of particulars can solve evidentiary

14

problems it cannot unlock the grand jury's mind and cure a defective indictment. *United States v. Panzavecchia*, 421 F.2d 440, 442 (5th Cir 1970). Here, the Government cannot be allowed, many months after commencing the prosecution of Mr. Carton, to retrospectively save the indictment through a bill of particulars as it is unknown whether the grand jury considered the missing essential element of intent.

### IV. CONCLUSION

For the reasons set forth herein, Mr. Carton respectfully requests this Court, pursuant to Rule 7(c) and Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure and the Fifth Amendment of the United States Constitution, dismiss Count Three of the Indictment alleging securities fraud because the Indictment fails to plead fraudulent intent on the part of Mr. Carton—an essential element of securities fraud—and thus fails to state an offense.

Dated: New York, NY
       May 18, 2018

By: _/s/ Derrelle M. Janey_
Robert C. Gottlieb, Esq.
Derrelle M. Janey, Esq.
Seth J. Zuckerman, Esq.
GOTTLIEB & JANEY LLP
111 Broadway, Suite 701
New York, NY 10006
Tel.: (212) 566-7766
Fax: (212) 374-1506

*Attorneys for Defendant Craig Carton*