UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                      Plaintiff,

v.

CRAIG CARTON and MICHAEL WRIGHT,

                      Defendants.

Case No. 17 Cr. 680 (CM)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CRAIG CARTON'S MOTION TO SUPPRESS THE SEARCH WARRANT DATED SEPTEMBER 8, 2017

GOTTLIEB & JANEY LLP
111 Broadway, Suite 701
New York, NY 10006
Tel.: (212) 566-7766
Fax: (212) 374-1506

*Attorneys for Defendant
Craig Carton*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... iii

I.   PRELIMINARY STATEMENT ................................................................................... 1

II.  FACTUAL BACKGROUND ........................................................................................ 2

III. ARGUMENT .................................................................................................................. 5

       A. The Search Warrant for Mr. Carton's iPhone Does Not Comply With The Fourth Amendment As It Does Not Adequately Establish Probable Cause ........................................................................................................... 5

       B. The Search Warrant's Failure To Establish Probable Cause For Mr. Carton's iPhone Is Not Saved By Speculation That Mr. Carton "May" Have Transferred Old Date Onto This Cell Phone ....................................... 8

       C. The "Good Faith" Exception Does Not Apply And Thus Does Not Rescue This Search Warrant ................................................................................... 11

IV.  CONCLUSION ........................................................................................................... 14

## TABLE OF AUTHORITIES

Page

**Constitutional Provisions**

U.S. Const. Amend. IV……………...………………………………………………………..passim

**Rules and Statutes**

15 U.S.C. § 78ff………………………………………………………………………..…......2

15 U.S.C. § 78j (b)………………………………………………………..……………………2

18 U.S.C § 2………………………………………………………………………………….2

18 U.S.C § 1343………………………………………………………………………….…...2

17 C.F.R § 240.10b-5……………………………………………………………………...…2

**Cases**

*Arizona v. Evans,*
        514 U.S. 1 (1995)................................................................................................ 6

*Brown v. Illinois,*
        422 U.S. 590 (1975).......................................................................................... 12

*Go-Bart Importing Co. v. United States,*
        282 U.S. 344, 357 (1931)……………………………………………………………...10

*Herring v. United States,*
        555 U.S. 135 (2009)..................................................................................... 6, 13

*Illinois v. Gates,*
        462 U.S. 213 (1983)............................................................................... 1, 6, 8, 9

*Mapp v. Ohio,*
        367 U.S. 643 (1961)........................................................................................... 6

*Riley v. California,*
        134 S. Ct. 2473 (2014).................................................................................... 10

*United States v. Calandra,*
        414 U.S. 338 (1974)........................................................................................... 6

*United States v. Clark,*
    638 F.3d 89 (2d Cir.2011) ............................................................................................... 12

*United States v. Galpin,*
    720 F.3d 436 (2d Cir. 2013) ...................................................................................... 10, 11

*United States v. Ganias,*
    824 F.3d 199 (2d Cir. 2016) ........................................................................................... 10

*United States v. George,*
    975 F.2d 72 (2d Cir.1992) .............................................................................................. 12

*United States v. Griffith,*
    867 F.3d 1265 (D.C. Cir. 2017) ......................................................................... 8, 9, 10, 12

*United States v. Leon,*
    468 U.S. 897 (1984) ................................................................................................. 12, 13

*United States v. Rosa,*
    626 F.3d 56 (2d Cir.2010) .............................................................................................. 11

*United States v. Schultz,*
    14 F.3d 1093 (6th Cir.1994) ............................................................................................. 9

*United States v. Ulbricht,*
    858 F.3d 71 (2d Cir. 2017) ............................................................................................. 11

*United States v. West,*
    520 F.3d 604 (6th Cir.2008) .......................................................................................... 12

*Walczyk v. Rio,*
    496 F.3d 139 (2d Cir.2007) ................................................................................. 2, 6, 7, 11

Defendant Craig Carton, by and through his undersigned counsel, Gottlieb & Janey LLP, hereby moves to suppress all evidence seized as a result of an unlawful search and seizure of his iPhone in accordance with a September 8, 2017 Search Warrant, pursuant to the Fourth Amendment of the United States Constitution.

## I.   **PRELIMINARY STATEMENT**

The Search Warrant authorizing the seizure of Mr. Carton's iPhone is facially insufficient as it fails to provide adequate probable cause to search the device. More particularly, the lion's share of the affidavit supporting the application for the Search Warrant purports to establish Mr. Carton's alleged involvement in wire fraud and securities fraud by way of alleged communications involving Mr. Carton **before March 2017**. However, Mr. Carton did not acquire the subject iPhone until in or about March 2017—a fact acknowledged by Special Agent Sean Sweeney of the Federal Bureau of Investigation (FBI).

Special Agent Sweeney concedes that any purported **basis** to search and seize Mr. Carton's iPhone predates March 2017. Further, Special Agent Sweeney states that the new iPhone "**may**" contain evidence of purported crimes; however, Special Agent Sweeney fails to provide any support for his speculation that Mr. Carton transferred old data onto the iPhone. In other words, the crux of the Search Warrant's basis for probable cause is pure conjecture. Although "great deference" is paid to the judge's initial determination of probable cause, a warrant application cannot rely merely on "conclusory statement[s]." *Illinois v. Gates*, 462 U.S. 213, 239 (1983) (citation omitted). This unconstitutional fishing expedition into Mr. Carton's iPhone—and his private life—must not be permitted.

Simply, based on all the circumstances present here, the Search Warrant does not

1

establish a "fair probability that evidence of a crime" would be found on Mr. Carton's iPhone. *See Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir.2007). The Search Warrant lacks the appropriate factual predicate to establish probable cause. Thus, the Search Warrant does not comply with the guaranteed protections of the Fourth Amendment and all evidence seized as a result of the unlawful search of Mr. Carton's iPhone must be suppressed.

## II.     FACTUAL BACKGROUND

On September 6, 2017, following a pre-dawn raid at his home, successful sports radio broadcaster Craig Carton was arrested and charged pursuant to a Sealed Complaint with (1) Conspiracy to Commit Securities Fraud and Wire Fraud in violation of 15 U.S.C. §§ 78j (b) & 78ff, 17 C.F.R § 240.10b-5; and 18 U.S.C § 1343; (2) Wire Fraud in violation of 18 U.S.C. §§ 1343 and 2; and (3) Securities Fraud in violation of 15 U.S.C. §§ 78j (b) & 78ff, 17 C.F.R § 240.10b-5; and 18 U.S.C § 2. The Sealed Complaint named Mr. Carton and Michael Wright as defendants.

At the time of Mr. Carton's arrest, his iPhone 7 Plus ("iPhone")—which he had acquired in March of 2017—was seized from his person. Subsequently, on September 8, 2017, Honorable Magistrate Judge Katharine Parker authorized a Search Warrant for Mr. Carton's black iPhone 7 Plus with IMEI number 355835081432437 and Mr. Wright's black BlackBerry phone with serial number 0861-9034-5853[1] ("Search Warrant"). *See* Affirm, Ex. 1.

In support of the application for the Search Warrant, an affidavit was submitted by Special Agent Sean Sweeney ("Agent Sweeney"). *See* Affirm, Ex. 2 (hereafter "Affidavit"). Most importantly, Agent Sweeney stated that he was aware that Mr. Carton did not acquire the

---

[1] Only Mr. Carton iPhone is the subject of the instant motion.

2

subject iPhone until in or about March 2017. Yet, the factual basis put forth by Agent Sweeney in his Affidavit detailed events which predate March of 2017—prior to Mr. Carton's acquisition of the subject iPhone. Agent Sweeney stated, in relevant part, in his Affidavit as follows:

> 8. As set forth in the Complaint, from at least in or about September 2016, through at least in or about January 2017, CRAIG CARTON and MICHAEL WRIGHT, the defendants, along with JOSEPH MELI (who is identified in the Complaint as "CC-1,") worked together to solicit individuals and entities to invest in the bulk purchase of tickets to live events, which would be re-sold at a profit on the secondary market. In soliciting these investments, CARTON and MELI both provided potential investors with purported agreements that gave MELI and CARTON access to purchase blocks of tickets to live events. In fact, these agreements were fraudulent, and MELI and CARTON had not, in fact entered into these agreements. After receiving investor funds based on these false representations, CARTON, WRIGHT, and MELI misappropriated those funds, using them to, among other things, pay personal debts and to repay prior investors as part of a Ponzi-like scheme.
>
> 12. Based on my training and experience, I believe that the Subject Devices can be used to send text messages and emails. As noted in the Complaint, WRIGHT and CARTON repeatedly used text and e-mail messages to communicate with each other and with MELI regarding their debts, including money owed to investors; their efforts to repay these debts by, among other things, misappropriating investor funds; and information pertaining to their bank accounts, which was then used to transfer and launder misappropriated investor funds. For example:
>   a. On September 2, 2016, MELI sent CARTON and WRIGHT a text message regarding "clean[ing] up [their] debt." See Complaint ¶ 11(a).
>   b. On September 5, 2016, WRIGHT emailed MELI and CARTON outlining a schedule of their existing debts, to which CARTON responded "don't forget I have $1m coming tomorrow from ticket investor[.] will need to be discussed how to handle." See Complaint ¶ 11 (b)-(c).

3

<ul>
<li>c. On September 7, 2016, CARTON emailed WRIGHT and MELI and discussed "borrow[ing] against future profits" with respect to Investor-1's investment. See Complaint ¶ 11(d).</li>
<li>d. On December 6, 2016, MELI texted CARTON and WRIGHT regarding using the potential investment by the Hedge Fund "to repay debts." Complaint ¶ 12(d).</li>
<li>e. On December 13 and 15, 2016, WRIGHT emailed CARTON and MELI regarding debts he owed to a particular entity. See Complaint ¶ 14(a).</li>
<li>f. Also, in mid-December, CARTON sent emails to the Hedge Fund regarding purported agreements with the Concert Promotion Company and the Sports and Entertainment Company, to induce the Hedge Fund to provide him with millions of dollars, which he, WRIGHT, and MELI then misapprporaited [sic]. See Complaint ¶ 14(b)-(c), (g). As noted in the Complaint, however, neither the Concert Promotion Company nor the Hedge Fund actually entered into these agreements.</li>
<li>g. In late December, CARTON, WRIGHT, and MELI exchanged text messages regarding the disposition of the funds received from the Hedge Fund. See Complaint ¶ 15(g).</li>
</ul>

13. I and other FBI agents arrested MELI on January 27, 2017. The day before, on Janaury [sic] 26, 2017, MELI, during a consensually recorded conversation, advised a cooperating witness ("CW-1"), in sum and substance, that MELI had learned that the FBI was investigating him, MELI, for fraud and that MELI, had just hired Marc Kasowitz as a lawyer. Based on my review of text messages obtained from MELI's cellphone pursuant to a warrant and telephone toll records, I know that MELI and CARTON exchanged multiple text messages on January 26, 2017, and, also, that there were approximately 15 calls or attempted calls between CARTON and WRIGHT on January 26 and 27, 2017. At 4:06 p.m., on January 26, for example, there was an eight-minute call between CARTON's phone and WRIGHT's phone; followed by several text messages between CARTON and MELI between 4:15 and 4:21 p.m.; followed by a 12-minute call between CARTON, and WRIGHT beginning at 4:38 p.m.

14. On September 7, 2017, counsel for CARTON informed the Government that CARTON had begun using Subject

4

> Device-1 in or about March 2017, i.e., after the events described above. Nonetheless, toll records show over 200 calls between WRIGHT and CARTON between March 1, 2017 and June 26, 2017, the last date for which the Government currently has records. Moreover, after March 2017, CARTON continued to conceal from the Hedge Fund that he, WRIGHT, and MELI had misappropriated its money, almost immediately after it was invested in December 2016, including by making misrepresentations in phone communications. On or about July 26, 2017, for example, Agent-1 participated in an interview with an employee of the Hedge Fund, who had dealt with CARTON (the "Hedge Fund Employee"). The Hedge Fund Employee stated, in sum and substance, that, as of the date of the interview, the Hedge Fund was still waiting for their money back, and CARTON had advised the Hedge Fund's money was being held in account controlled by "MICHAEL," i.e. WRIGHT; that CARTON continually provided excuses when asked to wire the money back to the HEDGE FUND, including that his "partner," "MICHAEL," was on vacation and would be able to make the transfer when he returned. Moreover, based on my training and experience, I know that even where a user has changed phones, data from an old phone may be transferred to the new phone.

Thus, Agent Sweeney acknowledged in his Affidavit that he is aware Mr. Carton obtained a new iPhone in or about March 2017. Moreover, his Affidavit puts forth no indicia that evidence of any criminal activity post-March of 2017 is likely to be found on the subject iPhone. Likewise, Agent Sweeney puts forth only speculation that data from Mr. Carton's prior cell phone was transferred to the subject iPhone.

### III. ARGUMENT

#### A. The Search Warrant For Mr. Carton's iPhone Does Not Comply With The Fourth Amendment As It Does Not Adequately Establish Probable Cause

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The Supreme Court has stated that

5

"probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. In determining whether probable cause exists to support a search warrant, the magistrate must determine if the totality of circumstances indicates a " 'fair probability that contraband or evidence of a crime will be found in a particular place.' " *Walczyk*, 496 F.3d at 156) (quoting *Gates*, 462 U.S. at 238). Here, the Search Warrant fails to provide adequate probable cause to specifically search Mr. Carton's iPhone for evidence of a crime.

While the Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violations of its commands," *Arizona v. Evans*, 514 U.S. 1, 10 (1995), the Supreme Court has "establish[ed] an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009). "[T]his judicially created rule is 'designed to safeguard Fourth Amendment rights generally through its deterrent effect.' " *Id.* at 139–40 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). Thus, the remedy for a Fourth Amendment violation is suppression of the illegally seized evidence. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

Here, the Search Warrant for Mr. Carton's iPhone does not sufficiently meet the aforementioned probable cause requirement. Mr. Carton's iPhone was seized from his person incident to his arrest on September 6, 2017. In the Affidavit, Agent Sweeney alleges that Mr. Carton and Michael Wright "repeatedly used text and e-mail messages to communicate with each other and with MELI regarding their debts, including money owed to investors; their efforts to repay these debts by, among other things, misappropriating investor funds; and information pertaining to their back accounts, which was then used to transfer and launder misappropriated investors funds." *Aff.* at 4. The Affidavit further provides a few examples of such

6

communications occurring before March 2017. *Id.* at 4-5. However, Agent Sweeney affirmatively acknowledges in the Affidavit that Mr. Carton did not start using this particular iPhone at issue until in or about March 2017. *Id.* at 6.

Moreover, the Affidavit provides only "bare bones" allegations in attempting to establish that evidence of a crime following March 2017 will be found on Mr. Carton's iPhone. While the Affidavit alleges that "after March 2017, CARTON continued to conceal from the Hedge Fund that he, WRIGHT, and MELI had misappropriated its money, almost immediately after it was invested in December 2016, including by making **misrepresentations** in phone communications," *Id.* (emphasis added)**, it does not provide any specifics to support that evidence of these misrepresentations were contained on Mr. Carton's iPhone**. The Affidavit merely refers to "200 calls between WRIGHT and CARTON between March 1, 2017 and June 26, 2017" and an interview that an agent conducted with an employee of the "Hedge Fund" on July 26, 2017. *Id.* In this interview, the employee stated, in sum and substance, the Hedge Fund was still waiting for its investment back from Mr. Carton; Mr. Carton advised the Hedge Fund that its investment was being held in an account controlled by Michael Wright; and Mr. Carton continually provided excuses as to when the Hedge Fund's investment would be returned. *Id.* Nothing about this interview indicates that Mr. Carton made actual misrepresentations to the Hedge Fund via the iPhone acquired in March 2017. In sum, none of the communications or circumstances following March 2017 detailed in the Affidavit establish a "fair probability that contraband or evidence of a crime will be found" in Mr. Carton's new iPhone. *See Walczyk*, 496 F.3d at 156. The Search Warrant does not set forth any allegations—let alone any assertions sufficient to establish probable cause—that evidence of any crime will be found on the iPhone that Mr. Carton acquired in March 2017.

### B. The Search Warrant's Failure To Establish Probable Cause For Mr. Carton's iPhone Is Not Saved By Speculation That Mr. Carton "May" Have Transferred Old Data Onto This Cell Phone.

As stated above, the Affidavit clearly does not establish sufficient probable cause that evidence of a crime following March 2017—when Mr. Carton acquired the iPhone—will be found on Mr. Carton's iPhone. In an attempt to correct this failure, Agent Sweeney claims in the Affidavit that "based on my training and experience, I know that even where a user has changed phones, data from an old phone **may** be transferred to the new phone." *Aff.* at 6 (emphasis added). Such guesswork simply does not rise to the level of probable cause. To justify a search, the circumstances must indicate why evidence of an illegal activity will be found in a "particular place." *Gates*, 462 U.S. at 238. However, the Affidavit does not present any circumstances to suspect that Mr. Carton transferred old data onto the iPhone that he acquired in March 2017. The Affidavit merely speculates that Mr. Carton's iPhone "**may**" contain communications before March 2017 without offering any basis for such assertion. This is pure conjecture on the part of Agent Sweeney and tantamount to a fishing expedition into Mr. Carton's iPhone.

The District Court for the District of Columbia very recently considered an analogous Fourth Amendment violation in *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017), a case involving the police obtaining a search warrant to search the home of a gang member suspected of involvement in a homicide. In *Griffith*, the search warrant at issue authorized the government to seize, *inter alia*, all cell phones in the defendant's home. *Id.* at 1268. While the court acknowledged that most people now carry a cell phone, the search warrant was held invalid for lack of probable cause as the supporting affidavit did not offer any reasons to suspect that the defendant owned a cell phone or that a cell phone containing incriminating information would be found in his home. *Id.* In particular, the court noted the following:

> ...the affidavit in this case conveyed no reason to think that Griffith, in particular, owned a cell phone. There was no observation of Griffith's using a cell phone, no information about anyone having received a cell phone call or text message from him, no record of officers recovering any cell phone in his possession at the time of his previous arrest (and confinement) on unrelated charges, and no indication otherwise of his ownership of a cell phone at any time.

*Id.* at 1272.

Similar to the groundless probable cause that was overruled in *Griffith*, here, Agent Sweeney has provided no reasons to believe that Mr. Carton transferred old data onto the new iPhone in March of 2017 thus justifying seizure of the subject iPhone.

For example, there was no information that Mr. Carton had transferred old data onto new cell phones in the past and no observation that he did so with the March 2017 iPhone. Even upon a reading of the Affidavit in a "practical, common-sense manner," there are no valid claims of possible wrongdoing evincing in Mr. Carton's iPhone. *See Gates*, 462 U.S. at 238. While some people transfer old data onto new phones, it cannot be automatically assumed. Akin to the Government not providing any reasons to suspect that the defendant owned a cell phone and kept it in his home in *Griffith*, the Affidavit here does not provide any reasons to suspect that Mr. Carton transferred old data onto the new iPhone in March 2017 and that it contained evidence of pre-March 2017 communications.

Although Agent Sweeney's "training and experience" may be considered in determining probable cause, "it cannot substitute for the lack of evidentiary nexus in this case, prior to the search," between the iPhone and any criminal activity. *See United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir.1994). The Affidavit clearly has not provided such a nexus to Mr. Carton's iPhone. Further, "[i]n obligating officers to describe the items to be seized with particularity, the Fourth Amendment prevents the 'issu[ance] of warrants on loose, vague or doubtful bases of

9

fact.' " *Griffith*, 867 F.3d at 1275 (quoting *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 357 (1931)). In claiming that old data "**may**" have been transferred to Mr. Carton's iPhone, the Affidavit is relying on the type of ambiguous language and questionable facts which have been prohibited by the Fourth Amendment. This Court must not permit such speculative "training and experience" to be blindly relied on in supporting a search warrant into an individual's cell phone. More must be provided by the Government to satisfy the requirements of the Fourth Amendment. "Because a cell phone, unlike drugs or other contraband, is not inherently illegal, there must be reason to believe that a phone may contain evidence of the crime." *Griffith*, 867 F.3d at 1274. No adequate reasons have been provided here.

Protecting the privacy of Mr. Carton's iPhone cannot be understated. When a search warrant focuses on electronically stored information, as it does here, courts have stressed the growing importance of rigorously upholding the protections of the Fourth Amendment. This legal policy exists because the seizure of electronic devices, and "subsequent retention by the Government, can give the Government possession of a vast trove of personal information about the person to whom the [device] belongs, much of which may be entirely irrelevant to the criminal investigation that led to the seizure." *United States v. Ganias*, 824 F.3d 199, 217 (2d Cir. 2016). "The potential for privacy violations occasioned by an unbridled, exploratory search of a [device] is enormous"—a "threat [that] is compounded by the nature of digital storage." *United States v. Galpin*, 720 F.3d 436, 447 (2d Cir.2013); *see also Riley v. California*, 134 S. Ct. 2473, 2489-91 (2014) (recognizing that cell phones "differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person" owing to their "immense storage capacity" and their ability to "contain[ ] in digital form" both "many sensitive records previously found in the home" and "a broad array of private information never found in a

home in any form—unless the phone is"). Given the practical risk that "every warrant for electronic information will become, in effect, a general warrant,"..."fail[ure] to link the evidence sought to the criminal activity supported by probable cause"—does not satisfy the requirements of the Fourth Amendment. *United States v. Ulbricht*, 858 F.3d 71, 100 (2d Cir. 2017) (internal quotation marks and alterations omitted) (quoting *Galpin*, 720 F.3d at 436; *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir.2010)).

### C. The "Good Faith" Exception Does Not Apply And Thus Does Not Rescue This Search Warrant

The Search Warrant for Mr. Carton's iPhone cannot be saved by the good faith exception. The Search Warrant is so deficient in exhibiting probable cause for Mr. Carton's iPhone that no agent could have reasonably relied on it in believing he or she had probable cause to conduct the search and seizure. The Affidavit plainly does not demonstrate a "fair probability that evidence of a crime" will be found on Mr. Carton's iPhone. *Walczyk*, 496 F.3d at 156. Not only is the Affidavit devoid of any factual support for probable cause but it is based solely on the unsubstantiated conclusion by Agent Sweeney that Mr. Carton "**may**" have transferred old data onto his new iPhone in March 2017. However, Agent Sweeney's Affidavit provided no basis for such belief. The Affidavit does not include any specific factual references for the assertion that Mr. Carton's iPhone "**may**" have contained evidence of a crime. Instead, it relies on the conclusory speculation of Agent Sweeney—which without more is insufficient. Thus, all evidence seized as a result of the unlawful search of Mr. Carton's iPhone must be suppressed.

The Supreme Court has long recognized that agents cannot reasonably rely on a warrant issued on the basis of an affidavit " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *United States v. Leon*, 468 U.S. 897, 923 (1984)

11

(quoting *Brown v. Illinois*, 422 U.S. 590, 610–11 (1975)). "Such a concern most frequently arises when affidavits are bare bones, *i.e.,* totally devoid of factual circumstances to support conclusory allegations." *United States v. Clark,* 638 F.3d 89, 103 (2d Cir.2011); *see also United States v. West*, 520 F.3d 604, 610 (6th Cir.2008) (holding that good faith exception does not apply to bare bones affidavit based entirely on unsubstantiated conclusions). Ultimately, " 'the burden is on the Government to demonstrate the objective reasonableness of the [agents]' good faith reliance' on an invalidated warrant." *Clark,* 638 F.3d at 100 (quoting *United States v. George*, 975 F.2d 72, 77 (2d Cir.1992)).

In this case, the Government cannot meet this burden and cannot demonstrate that the agents executing the Search Warrant for Mr. Carton's iPhone could have reasonably relied on it. The Affidavit, on its face, clearly violates the Fourth Amendment's probable cause requirement. As explained, the Affidavit's basis for probable cause to search Mr. Carton's iPhone runs as follows: (i) purported communications involving Mr. Carton before March 2017; (ii) Mr. Carton's acquisition of a new iPhone in or about March 2017; and (iii) speculation that Mr. Carton "**may**" have transferred old data to this new iPhone. "Whatever may be the reasonableness of any of those inferences standing on its own, demonstrating probable cause required adequately establishing all three in combination." *Griffith*, 867 F.3d at 1278. The Affidavit fails to do so here. It provides no support to reasonably believe that Mr. Carton transferred old data to the new iPhone. Instead it wholly depends on Special Agent Sweeney's conjecture as to what Mr. Carton "**may**" have done with his old data. A plain reading of the Affidavit reveals that Agent Sweeney had no idea as to what was stored on Mr. Carton's iPhone. Thus, the Affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See Leon*, 468 U.S. at 923. In other words, no reasonable

12

agent could have believed that the Search Warrant was valid, given the failure of the Affidavit to articulate any nexus between illegal activity and the place to be searched—Mr. Carton's iPhone.

Additionally, the agents' conduct here cannot be reasonably explained by exigent circumstance, by simple mistake, or by mere negligence. Even where there is a lack of reasonable reliance on the search warrant, to trigger the exclusionary rule, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. Here, given the Affidavit's dependence on sheer guesswork, finding the existence of probable cause in this case would verge on authorizing a search of a person's cell phone almost anytime there is probable cause to suspect him or her of a crime. That must not be permitted and such "bare bones" support of probable cause for cell phones must be deterred. Accordingly, the Government is not entitled to claim the benefit of the good faith exception to the exclusionary rule, and Mr. Carton's motion to suppress seized evidence must be granted.

## IV. CONCLUSION

For the reasons set forth herein, Mr. Carton respectfully requests this Court, pursuant to the Fourth Amendment of the United States Constitution, grant the instant motion to suppress evidence seized from Mr. Carton's iPhone because the Search Warrant is facially defective and runs afoul of the probable cause requirement of the Fourth Amendment.

Dated: New York, New York
       May 18, 2018

By: _/s/_
Robert C. Gottlieb
Derrelle M. Janey
Seth J. Zuckerman

GOTTLIEB & JANEY LLP
111 Broadway, Suite 701
New York, NY 10006
Tel.: (212) 566-7766
Fax: (212) 374-1506

*Attorneys for Defendant*
*Craig Carton*