UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

CRAIG CARTON,

        Defendant.

17 Cr. 680 (CM)

**GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTIONS *IN LIMINE***

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Elisha J. Kobre
Brendan F. Quigley
Assistant United States Attorneys
    *Of Counsel*

**Table of Contents**

BACKGROUND ................................................................................................................ 1

DISCUSSION .................................................................................................................. 1

I. The Court Should Permit the Government to Offer Certain Evidence in Its Case-in-Chief As Direct Proof of the Charged Offenses or, in the Alternative, Under Rule 404(b) ..................... 1

    A. Applicable Law ....................................................................................................... 2

    B. Evidence Regarding Solicitation of Gambling-Related Loans ......................................... 2

    C. Evidence Regarding Carton's Use of a Certain Gmail Account ....................................... 4

    D. The Court Should Allow the Government to Introduce Certain Tax-Related Evidence ... 6

II. The Court Should Preclude Carton from Offering Evidence Regarding Purported "Prior Good Acts" and Limit the Presentation of Character Evidence ........................................................... 7

    A. Applicable Law ....................................................................................................... 7

    B. Evidence Regarding Prior Ticket Sales or Carton's Prior Relationship with the Sports and Entertainment Company ............................................................................................. 9

    C. Argument That Other Purportedly Legitimate Ticket Transactions Justify the Fraud..... 11

    D. Evidence Regarding Ties to Law Enforcement or Other Works of Charity Should Be Excluded ................................................................................................................. 13

    E. The Court Should Limit the Number of Character Witnesses Carton Calls ................... 15

III. The Court Should Preclude Evidence Regarding the "Forbearance Agreement" Between Carton and the Hedge Fund, but if Admitted, Should Allow the Government to Introduce Carton's False Representations in Connection with the Agreement ........................................ 16

IV. The Court Should Preclude Evidence Regarding Mental Disease or Defect .................... 18

    A. Applicable Law ..................................................................................................... 18

    B. Discussion ........................................................................................................... 19

V. The Court Should Preclude Evidence Regarding the Fact that Carton Received a Victim Notification ............................................................................................................... 20

VI. The Court Should Set a Deadline of October 12, 2018 Trial for Any Defense Rule 16(b) Materials, Including Expert Disclosures ................................................................................. 22

CONCLUSION................................................................................................................ 24

## Table of Authorities

### Cases

*In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93 (2d Cir. 2008) ........... 21

*Shakur* v. *United States*, 32 F. Supp. 2d 651 (S.D.N.Y. 1999) ..................................................... 10

*United States* v. *Al Kassar*, 660 F.3d 108 (2d Cir. 2011) ....................................................... 10, 11

*United States v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978) ....................................................... 9, 10

*United States* v. *Berger*, 188 F. Supp. 2d 307 (S.D.N.Y. 2002) .................................................. 15

*United States* v. *Cameron*, 907 F.2d 1051 (11th Cir. 1990) ...................................................... 23

*United States* v. *Doyle*, 130 F.3d 523 (2d Cir. 1997)................................................................. 10

*United States* v. *Ford*, 435 F.3d 204 (2d Cir. 2006) ................................................................. 25

*United States* v. *Gonzalez*, 110 F.3d 936 (2d Cir. 1997) ............................................................ 2

*United States* v. *Gotti*, 784 F. Supp. 1013 (E.D.N.Y. 1992)...................................................... 13

*United States* v. *Hatfield*, 685 F.Supp.2d 320 (E.D.N.Y.2010)................................................... 7

*United States* v. *Lin Guang*, 511 F.3d 110 (2d Cir. 2007)........................................................... 6

*United States* v. *Mercado*, 573 F.3d 138 (2d Cir. 2009)............................................................. 6

*United States* v. *Napout*, No. 15 Cr. 252 (PKC), 2017 WL 6375729 (E.D.N.Y. Dec. 12, 2017)…

.................................................................................................................................... 27

*United States* v. *Nektalov*, No. S2 03 Cr. 828 (PKL), 2004 WL 1637010 (S.D.N.Y. July 21, 2004)

................................................................................................................................. 9, 18

*United States* v. *Quinones*, 511 F.3d 289 (2d Cir. 2007)............................................................. 2

*United States* v. *Riley*, No. 13 Cr. 339 (VEC), 2014 WL 3435721 (S.D.N.Y. July 14, 2014)....... 5

iii

*United States v. Rivera*, No. 13 Cr. 149 (KAM), 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) ........................................................................................................................... 10, 17

*United States* v. *Roldan-Zapata*, 916 F.2d 795 (2d Cir. 1990) ...................................................... 8

*United States* v. *Rosa*, 11 F.3d at 334 .......................................................................................... 5

*United States* v. *Rossomando*, 144 F.3d 197 (2d Cir. 1998) .................................................. 15, 16

*United States* v. *Sacks*, No. 08 Cr. 629 (GEB), 2009 WL 4114169 (D.N.J. Nov. 23, 2009) ....... 23

*United States* v. *Salerno*, 937 F.2d 797 (2d Cir. 1991) ............................................................... 25

*United States* v. *Scarpa*, 913 F.2d 993 (2d Cir. 1990) ...................................................... 8, 12, 13

*United States* v. *Shkreli*, No. 15 Cr. 637 (KAM), 2017 WL 3623626 (E.D.N.Y. June 24, 2017)....
............................................................................................................................................15

*United States* v. *Thomas*, 116 F.3d 606 (2d Cir. 1997) ............................................................. 11

*United States* v. *Tuzman*, No. 15 Cr. 536 (PGG) (S.D.N.Y. Dec. 12, 2017) ............................... 27

*United States* v. *Walker*, 191 F.3d 326 (2d Cir. 1999) ............................................................ 9, 13

*United States* v. *Williams*, 205 F.3d 23 (2d Cir. 2000) ............................................................ 9, 13

*United States* v. *Zane*, 495 F.2d 683 (2d Cir. 1974) .................................................................. 19

## Statutes and Rules

18 U.S.C § 17 ................................................................................................................................ 22

Fed. R. Crim. P. 12.2 ................................................................................................................... 18

Fed. R. Crim. P. 16(b) ............................................................................................................ 22, 23

Fed. R. Evid. 403 .................................................................................................................. passim

Fed. R. Evid. 404 ........................................................................................................................ 1-2

Fed. R. Evid. 408 .................................................................................................................. 20

## Other Authorities

Bailey McCann, *Are the Feds Blowing Their Ponzi Scheme Case Against Sports Talker Craig Carton?*,        https://www.thedailybeast.com/are-the-feds-blowing-their-ponzi-scheme-case-against-sports-talker-craig-carton?ref=author .......................................................................... 25

Craig Carton*, Loudmouth* ..................................................................................................... 21

Kaja Whitehouse, *Craig Carton: I've Got Proof that Clears Me in Ponzi Scheme*, The N.Y. Post, Nov. 3, 2017 ..................................................................................................................... 6

Mad   Sports   Radio,   Craig   Carton   Exclusive   Interview,   *available   at* https://www.youtube.com/watch?v=NoVObbgiGv8&t=22s .................................................. 16

Mark W. Sanchez and Emily Saul, *Craig Carton is asking pals to vouch for him in Court*, The N.Y. Post, Jan. 3, 2018 ...................................................................................................... 19

Martin Rogers, *Exclusive: Craig Carton talks about Ponzi scheme charges and life off sports radio since arrest*, USAToday Sports, Nov. 7, 2017 ...................................................... 17

## BACKGROUND

This is a straightforward case involving fraudulent misrepresentations to investors and the misappropriation of investor funds. From at least in or about August 2016 through in or about August 2017, the defendant and his co-conspirators, Michael Wright and Joseph Meli, worked together to solicit individuals and entities to invest in and finance the bulk purchase of tickets to live events, which would then be re-sold on the secondary market. (Indictment ¶ 11). In soliciting these investments, Carton and his co-conspirators lied to investors about how the investors' funds would be used and about the existence of purported agreements Carton and Meli had in place with arenas and concert promotion companies. (*See, e.g.*, Indictment ¶¶ 16(e), 18, 20). The investors to whom Carton and his co-conspirators made these false representations included the entity defined in the Indictment as the "Hedge Fund," which invested $4.6 million in December 2016, as well as other investors who made investments both before and after the Hedge Fund's investment. Carton and his conspirators then misappropriated investor funds, using them to pay back prior investors and to pay personal debts, among other things. (Indictment ¶ 11).

## DISCUSSION

## I.  The Court Should Permit the Government to Offer Certain Evidence in Its Case-in-Chief As Direct Proof of the Charged Offenses or, in the Alternative, Under Rule 404(b)

The Government seeks to introduce certain categories of evidence outlined below as direct proof of the charged scheme, or, in the alternative, under Rule 404(b).[1]

---

[1] On September 17, 2018, pursuant to the Court's prior scheduling order, the Government provided Carton with notice of the evidence described below.

## A.   Applicable Law

The law has long recognized that evidence of bad acts is admissible without reference to Federal Rule of Evidence 404(b) if it constitutes intrinsic or direct proof of a charged crime, if it provides the jury with background for the events alleged in the indictment, or if it arose out of the same transaction or series of transactions as the charged offenses.  *See, e.g.*, *United States* v. *Quinones*, 511 F.3d 289, 309 (2d Cir. 2007) (explaining that evidence may be admitted to "complete the story of the crime on trial"); *United States* v. *Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) (holding that background evidence may be admitted to show the circumstances surrounding the events alleged in the indictment or to furnish an explanation of the understanding or intent with which certain acts were performed).

In addition, under Rule 404(b), other acts evidence can be admitted for any purpose other than "prov[ing] a person's character in order to show that on a particular occasion the person acted in accordance with the character."  *See* Fed. R. Evid. 404(a), 404(b).  Proper reasons for offering other acts evidence under Rule 404(b) include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b).

## B.   Evidence Regarding Solicitation of Gambling-Related Loans

The Government expects to show at trial that Carton and Wright (1) solicited loans to fund Carton's gambling, (2) in fact entered into such loan agreements, and (3) repaid these gambling loans with money from investors in their purported event-ticket investment enterprise.  The Government anticipates proving these facts through e-mails and text messages among the conspirators, as well as through testimony of one or more individuals who extended these gambling loans to the conspirators.

2

The solicitation of gambling-related loans appears essentially undisputed. Notably, in opposing the Government's motion to quash his Rule 17(c) subpoenas, Carton admitted that "[i]n partnership with Michael Wright and Joseph Meli, Mr. Carton sought loans and investors to fund [a] gambling operation." (Carton Opp'n to Mot. to Quash ECF No., 72, at 4). The conspirators, however, repaid these loans with money from investors in their purported ticket business.

Evidence regarding these gambling loans is thus inextricably intertwined with the charged offenses and direct proof of the charged scheme in two ways. First, as part of the charged scheme, Carton misappropriated money from investors in his purported ticket business to repay his gambling loans. The evidence is therefore necessary to show where the money from Carton's ticket investors went, *i.e.*, to show how Carton misappropriated their investments. Second, and conversely, the evidence at trial is expected to show that Carton used the proceeds of some of the gambling-related loans he solicited to pay his ticket investors purported returns on their investments. This enabled Carton and his co-conspirators keep the ticket scheme going, by hiding from investors that their funds had been misappropriated and by giving them the false impression that their investments in the ticket enterprise had been successful.

Relatedly, the gambling-loan evidence is also admissible under Rule 404(b) because it shows Carton's motive and intent for misappropriating his ticket investors' money.

Finally, this evidence does not run afoul of Rule 403. Its probative value is extremely high because it explains how and why Carton and his coconspirators misappropriated investor funds, and the danger of unfair prejudice or undue delay is low, given the close relationship between the gambling loans and the charged ticket scheme.

Accordingly, the Court should admit this evidence.

### C. Evidence Regarding Carton's Use of a Certain Gmail Account

In or about the fall of 2015, in connection with an investment related to the popular Broadway show *Hamilton*, Meli had told investors that Meli's company, Advance Entertainment, had in place a written agreement with *Hamilton*'s producer to buy a large block of *Hamilton* tickets for resale. Meli also told at least one *Hamilton* investor that the email account maytommy2015@gmail.com (the "Maytommy Account") belonged to *Hamilton's* producer. The Maytommy Account was then used to send an email to the investor and Meli, purportedly from the producer:

**From:** tommy may [mailto:maytommy2015@gmail.com]
**Sent:** Monday, December 14, 2015 8:59 AM
**To:**▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Joseph Meli <▮▮▮▮▮▮▮▮n>
**Subject:** Re: Please meet

Joe and John

Good morning. and looking forward to meeting with you both.

Apologies as my schedule has moved and i am going to Chicago now for today and tomorrow back Weds.

Can I get you available times for later this week? What days and times work best for you both?

In the future note that Sunday evenings I do not work(how I keep my sanity and my family life strong) and never respond to email.

Is your family going back to St. Martin this year?

We leave on Saturday and desperately need the break.

Speak later from the Windy City

In fact, the Maytommy Account had never been used by *Hamilton's* producer, and Carton was actually the user of the Maytommy Account.

This evidence is admissible for multiple reasons.

First, evidence concerning Carton's use of the Maytommy Account is admissible to show the development of the conspiratorial relationship between Carton and Meli.  *See United States* v. *Rosa*, 11 F.3d at 334.  It is well-settled that, "in a conspiracy case, 'other acts' evidence is admissible as background information, to demonstrate the existence of a relationship of mutual trust, or to 'enable the jury to understand how the illegal relationship between the co conspirators developed.'"  *United States* v. *Riley*, No. 13 Cr. 339 (VEC), 2014 WL 3435721, at *4 (S.D.N.Y. July 14, 2014) (admitting evidence of co-conspirator's uncharged trades using material non-public information) (quoting *United States* v. *Lin Guang*, 511 F.3d 110, 121 (2d Cir. 2007)).  Here, Carton's use of a fake e-mail account to assist Meli in making false representations to another ticket investor shows the existence of a relationship of mutual trust between Meli and Carton and how their illegal relationship developed.

Second, the Maytommy evidence is also admissible pursuant to Rule 404(b) to show Carton's knowledge, intent, and lack of mistake.  This is especially true given Carton's anticipated defense that "'Meli used and defrauded countless people including Craig Carton[.]'"  *See* Kaja Whitehouse, *Craig Carton: I've Got Proof that Clears Me in Ponzi Scheme*, The N.Y. Post, Nov. 3, 2017 (quoting Carton's attorney).  Evidence that, less than a year before the events charged in the Indictment, Carton assisted Meli by using a fake e-mail address to deceive an investor is highly probative to rebut the argument that Carton was unaware that Meli was running a fraudulent ticket-investment scheme.  *See United States* v. *Mercado*, 573 F.3d 138, 141 (2d Cir. 2009) (admitting evidence of prior criminal conduct involving co-conspirators in light of the defendant's argument

that the charged conduct was "nothing more than innocent acts of a friend, and not a knowing participation in a conspiracy").

Third, the evidence is not barred by Rule 403. Currently, the Government anticipates tying Carton to the MayTommy through relatively brief testimony from two to three witnesses, and, as such, there is little danger of undue delay, wasting time, or confusion of the issues.

Accordingly, the Court should allow the Government to introduce regarding the MayTommy Account.

**D. The Court Should Allow the Government to Introduce Certain Tax-Related Evidence**

The Government should also be permitted to introduce evidence that (i) that Carton failed to file any 2016 tax returns and (ii) that no tax returns were filed for TierOne Tickets ("Carton-Wright Entity-1" in the Indictment); AdvanceM (Carton-Wright Entity-2" in the Indictment); and Ticket Jones (the "Carton Entity") in the Indictment.

This evidence is directly relevant and admissible to the charged crimes. Carton's failure to file proper income tax returns is relevant to his state of mind, in particular his consciousness of guilt. *See United States* v. *Hatfield*, 685 F. Supp. 2d 320, 324 (E.D.N.Y.2010) (admitting alleged but uncharged tax fraud in securities fraud prosecution because the conspirators' failure to report certain earnings to the IRS "demonstrates [their] consciousness of guilt").

Nor does Rule 403 bar the limited tax evidence the Government seeks to introduce. Among other things, the failure to file tax returns is not "more sensational or disturbing" than the charged conduct, which involves false statements and material omissions to investors. *United States* v. *Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (holding that other acts evidence was not unfairly

prejudicial where it "represented only a tiny fraction of the testimony heard by the jury, and did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged").

Accordingly, the Court should admit the tax-related evidence described above.

## II. The Court Should Preclude Carton from Offering Evidence Regarding Purported "Prior Good Acts" and Limit the Presentation of Character Evidence

The Government anticipates that Carton may try to offer evidence of prior good acts including acts of charity, ties to current and former law enforcement members, and previous sales of tickets to live events. Such specific "prior good acts" should be excluded, and any other character evidence should be circumscribed within the applicable rules of evidence

### A. Applicable Law

It is well-settled that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions." *United States* v. *Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990) (affirming exclusion of recordings of purportedly "innocuous" conversations between conspirators in racketeering case); *see United States* v. *Walker*, 191 F.3d 326, 336 (2d Cir. 1999) (affirming, in case involving fraudulent asylum applications, exclusion of evidence that defendant had "prepared other, non-fraudulent applications" because evidence "was simply irrelevant to whether the applications charged as false statements were fraudulent"); *United States* v. *Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (rejecting defense argument that "evidence of innocent travel [to Jamaica] was necessary to rebut the government's allegation that [the defendant] had been involved in other cocaine importations from Jamaica").

Relatedly, while a defendant may introduce evidence of a pertinent character trait through generalized opinion or reputation testimony, *see* Fed. R. Evid. 405(a),[2] Rule 405(b) expressly precludes proof of the defendant's good character by specific acts where, as here, the defendant's character or trait of character is not an essential element of the crime charged. *See, e.g., United States v. Benedetto*, 571 F.2d 1246, 1249-1250 (2d Cir. 1978) (explaining that defense-proffered character evidence of defendant's specific acts in the past was improperly admitted because "character evidence has long been admissible only in the form of reputation and not in the form of a recitation of good or bad acts").[3]

Furthermore, pursuant to Federal Rule of Evidence 403, "a district court may exclude evidence of a defendant's prior good acts if it finds that any minimal probative value of such evidence is outweighed by the likelihood of jury confusion and the risk of jury nullification." *United States v. Rivera*, No. 13 Cr. 149 (KAM), 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) (citing *United States* v. *Al Kassar*, 660 F.3d 108, 124 (2d Cir. 2011) ("And the trial judge was rightly concerned that, to the extent any of the evidence [of prior good acts] could be construed to relate to the charged conspiracies, the jury would find

---

[2] *See also United States* v. *Nektalov*, No. S2 03 Cr. 828 (PKL), 2004 WL 1637010, at *1-3 (S.D.N.Y. July 21, 2004) (summarizing principles governing application of Rule 405(a)).

[3] As the Advisory Committee Notes and applicable case law make plain, cases in which character is an essential element of the crime charged are rare: "Illustrations are: the chastity of the victim under a statute specifying her chastity as an element of the crime of seduction, or the competency of the driver in an action for negligently entrusting a motor vehicle to an incompetent driver." Advisory Committee Note to Fed. R. Evid. 404(a); *see, e.g., United States* v. *Doyle*, 130 F.3d 523, 542 (2d Cir. 1997) (explaining that "the exception of Rule 405(b)" cannot be read to "swallow the general rule of 405(a) that proof of specific acts is not allowed"); *Shakur* v. *United States*, 32 F. Supp. 2d 651, 668-69 (S.D.N.Y. 1999) (discussing this rule).

8

it extremely confusing, if not incomprehensible.")); *see also United States* v. *Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent.").

### B. Evidence Regarding Prior Ticket Sales or Carton's Prior Relationship with the Sports and Entertainment Company

As discussed above, the Indictment charges that, between approximately August 2016 and August 2017, Carton and his co-conspirators (i) lied to investors about, among other things, how the investors' funds would be used and about purported written agreements they had in place with arenas and concert promotion companies, including the entity identified in the Indictment as the Sports and Entertainment Company, and (ii) misappropriated investor funds.

Carton nonetheless has argued that it is "crucial" to his defense to demonstrate that he had a "legitimate business relationship" with the Sports and Entertainment Company in the years prior to the charged scheme.  (Carton Opp'n to Mot. to Quash at 14-15).  However, these prior dealings with the Sports and Entertainment Company and, more generally, ticket sales by Carton before the time period in the Indictment, are not a defense to the charges at issue here, and the Court should preclude the defense from arguing otherwise.[4]

---

[4] To be clear, the Government may ask any witnesses it calls from the Sports and Entertainment Company limited questions about these prior dealings, to establish context for the witnesses' dealings with Carton during the time period of the charged scheme.  This should not, however, given Carton *carte blanche* to introduce evidence of this dealings or argue that these prior dealings provide a defense.

9

The Court should preclude such arguments because a defendant cannot use his "prior good acts," or the absence of criminal activity on other occasions, as a defense to the charges.  In *United States* v. *Scarpa*, for example, the defendants were charged with various racketeering offenses. 913 F.2d at 997-98.  The Government alleged that the defendants frequently congregated with each other at a social club (the "Social Club").  *Id.* at 1010.  During the prosecution, the Government learned that state law enforcement authorities had installed an eavesdropping device in the Social Club for a period of time but had intercepted only "innocuous" conversations by the defendants or conversations relating to other uncharged criminal conduct.  *Id.*  The defense sought to obtain these "innocuous" tapes from the Government in order to introduce them into evidence, arguing that "the very innocuousness of the [defendants'] statements renders them relevant as they are probative of the defendants' innocence."  *Id.*

The Second Circuit affirmed the district court's decision to exclude evidence, "by way or testimony or stipulation, of the existence of the bug and the absence of relevant intercepted conversations by the defendants."  *Id.* at 1011.  The Second Circuit quoted the district court's statement that defendants in criminal cases "cannot hope to use a process of elimination to defend themselves by presenting evidence of their noncriminal activities."  *Id.*  "[P]roof of the absence of criminal acts on specific occasions" is inadmissible.  *Id.*; *accord United States* v.

10

*Gotti*, 784 F. Supp. 1013, 1011 (E.D.N.Y. 1992) ("[A] defendant cannot establish that he did not commit a crime as to A because he did not commit a crime as to B.").[5]

Similarly, here, under the principles outlined in *Scarpa*, Carton cannot establish that he did not commit the scheme to defraud alleged in the Indictment because he did not defraud anyone in his earlier dealings with the Sports and Entertainment Company or in his prior ticket ventures more generally. Accordingly, the Court should preclude the defense from offering evidence or argument regarding these prior dealings and prior ventures.

### C.   Argument That Other Purportedly Legitimate Ticket Transactions Justify the Fraud

Relatedly, Carton has claimed it is relevant to his defense that "[o]ver the course of [his] business relationship" with the Hedge Fund "thousands of tickets were bought and sold," Opp'n to Mot. to Quash at 6, and that he had a "legitimate ticket resale business," *id.* at 15. Notably, Carton does not specify who bought these thousands of tickets, how they were bought, or on whose behalf they were bought. Based on the Government's investigation, it appears Carton may be referring to tickets he purchased on his American Express card, months *after* misappropriating the Hedge Fund's $4.6 million investment.[6]

---

[5] *See also United States* v. *Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (rejecting defense argument that "evidence of innocent travel [to Jamaica] was necessary to rebut the government's allegation that [the defendant] had been involved in other cocaine importations from Jamaica"); *United States* v. *Walker*, 191 F.3d 326, 336 (2d Cir. 1999) (affirming, in case involving fraudulent asylum applications, exclusion of evidence that defendant had "prepared other, non-fraudulent applications" because evidence "was simply irrelevant to whether the applications charged as false statements were fraudulent").

[6] In fact, Carton later falsely claimed to American Express that certain of these tickets had not been delivered to him. The Government is not seeking to affirmatively use these false statements at this time, but reserves the right to do so in response to defense arguments or testimony.

To the extent Carton is suggesting that, despite (i) lying to his investors by telling them that he had specific agreements in place to purchase tickets and about how their specific investment dollars would be utilized; and (ii) misappropriating their investor funds, it is somehow a defense that other tickets "were bought and sold" at other points in time, with other funds, or not pursuant to the agreements Carton specifically represented he had in place, that is not a defense to the charges in the Indictment.

While the Government is not requesting any relief at this point in time, it wishes to flag the issue for the Court and note that it will request a "no ultimate harm" instruction in its requests to charge.  The law is clear that, in a wire fraud or securities fraud prosecution, "where some immediate loss to the victim is contemplated by a defendant, the fact that the defendant believes (rightly or wrongly) that he will 'ultimately' be able to work things out so that the victim suffers no loss is no excuse for the real and immediate loss contemplated to result from defendant's fraudulent conduct."  *United States* v. *Rossomando*, 144 F.3d 197, 201 (2d Cir. 1998); *accord United States* v. *Berger*, 188 F. Supp. 2d 307, 329 (S.D.N.Y. 2002) (finding that a guilty verdict on securities fraud charges based on the fact that the defendant intentionally caused others to issue false or misleading statements to investors would be proper regardless of evidence of the defendant's belief that his investment strategy would be successful financially); *see also United States* v. *Shkreli*, No. 15 Cr. 637 (KAM), 2017 WL 3623626, at *13 (E.D.N.Y. June 24, 2017) (excluding evidence that the defendant later compensated investors whose funds he had misappropriated, reasoning that such evidence was "not probative of or relevant to his motive and state of mind at the time of the alleged fraud, that is, when the alleged false representation

12

occurred and the investors were denied the right to control their assets").   Indeed, the Government is not even required to prove that investors were actually harmed.  *See, e.g.*, *United States v. Rossomando*, 144 F.3d at 201 n.4 ("It is irrelevant . . . whether the victim of a fraudulent scheme does in fact suffer harm, so long as concrete harm was contemplated.").[7]

Thus, Carton's fraud was complete when he lied to investors and misappropriated their funds.  It is not a defense simply that "thousands of tickets were bought and sold" at some point during the charged scheme, and the jury should be instructed accordingly.

### D.   Evidence Regarding Ties to Law Enforcement or Other Works of Charity Should Be Excluded

The Government understands that Carton may introduce evidence regarding his relationships with members of law enforcement and his involvement with charities, including Carton's Tic Toc Stop Foundation.

In particular, since his arrest, Carton has sought to emphasize his connections to law enforcement.  For example, Carton hosted podcast called "Walk the Beat Wednesday," on which he interviewed former members of the NYPD.  In a recent media appearance, Carton expressed his surprise at his arrest, noting "[y]ou have twelve FBI agents there for you, when you *were honored as their man of the year six months earlier and spoke at their luncheon*."  Mad Sports Radio,   Craig   Carton   Exclusive   Interview   at   6:45-52,   *available   at*

---

[7] To be clear, although the Government is not required to show investor harm, the evidence will show that investors lost millions of dollars as result of Carton's misrepresentations and misappropriation of investor funds.

https://www.youtube.com/watch?v=NoVObbgiGv8&t=22s (emphasis added);[8] *see also* Martin Rogers, *Exclusive: Craig Carton talks about Ponzi scheme charges and life off sports radio since arrest*, USAToday Sports, Nov. 7, 2017 (interview with Carton, noting he "has been a vocal supporter of New York police officers" and "he took coffee and donuts to first responders at last week's terror attack near his home in Lower Manhattan").

But evidence of the Carton's charitable works for law enforcement and more generally would be wholly irrelevant to any issue at trial.  Rather, evidence of charitable deeds would simply be an effort to demonstrate the Carton's propensity for good character, which is not a defense to the charges in the Indictment and should therefore not be admitted.  *See, e.g.*, *United States* v. *Rivera*, 2015 WL 1725991, at *2 (finding evidence of charitable giving in racketeering case to be inadmissible).

Further, such evidence would be inadmissible under Rule 405.  Because there is no character trait that is an "essential element" of the charged offenses, Carton can introduce character evidence only through testimony about his reputation or through opinion testimony, not through "specific instances of conduct."  *See* Fed. R. Evid. 405; *United States* v. *Nektalov*, 2004 WL 1637010, at *2 (explaining that defendant "may offer direct testimony about his good character, but must do so by testimony about his reputation and by opinion testimony, and not by testimony about specific instances of conduct").

---

[8] In fact, the Government has been unable to locate any information suggesting that Carton was awarded the FBI's "Man of the Year" six months prior to his arrest, or at any point for that matter.

Finally, even if relevant and consistent with the rules on character evidence, character testimony by current or former law enforcement officers should be precluded under Rule 403. For purposes of that rule, "'[u]nfair prejudice' . . . means an undue tendency to suggest decision on an improper basis . . . ." *See* Fed. R. Evid. 403 adv. committee note. Carton is not a member of law enforcement, has never worked as a law enforcement officer, and, as a public figure, presumably has a wide variety of non-law enforcement friends and associates. Thus, in offering any relevant character evidence through current or former members of law enforcement, Carton would clearly be seeking to use such evidence not simply show that Carton is, for example, an honest person, but to suggest that he had law enforcement's imprimatur, *i.e.*, "to suggest decision on an improper basis." Accordingly, the Court should preclude such testimony.

### E.  The Court Should Limit the Number of Character Witnesses Carton Calls

Carton has apparently sought numerous character references in connection with this prosecution. *See, e.g.*, Mark W. Sanchez and Emily Saul, *Craig Carton is asking pals to vouch for him in Court*, The N.Y. Post, Jan. 3, 2018, *available at* https://nypost.com/2018/01/03/craig-carton-is-asking-pals-to-vouch-for-him-in-court/.

In light of the principles outlined above, character evidence is of limited relevance in this case, particularly since no character trait is an essential element of the offense. Thus having numerous character witnesses to testify, for example, that Carton has a reputation in the community for honesty, will quickly become unduly cumulative. Accordingly, the Court should exercise its discretion and limit Carton to calling no more than three character witnesses in the defense case. *See, e.g.*, *United States* v. *Zane*, 495 F.2d 683, 698 (2d Cir. 1974) (finding no

15

abuse of discretion in district court's limiting number of character witnesses in securities fraud trial).

### III.  The Court Should Preclude Evidence Regarding the "Forbearance Agreement" Between Carton and the Hedge Fund, but if Admitted, Should Allow the Government to Introduce Carton's False Representations in Connection with the Agreement

As discussed in connection with the parties briefing on the Government's motion to quash Carton's Rule 17 subpoenas, in August 2017, eight months after the Hedge Fund's investment, Carton and the Hedge Fund entered into a Forbearance Agreement ("the Forbearance Agreement").  The Forbearance Agreement was entered into after the Hedge Fund sent Carton a notice of default, which occurred after Carton failed to make certain payments due under the Revolving Loan Agreement with Carton.  Under the Forbearance Agreement, the Hedge Fund agreed to temporarily forego exercising certain rights and remedies under the Revolving Loan Agreement, and Carton and two guarantors agreed to a payment schedule to repay the Hedge Fund's investment.  Carton and his guarantors ultimately made only a portion of the payments due under the Forbearance Agreement, and one of the guarantors later sued Carton.

As also discussed in the Government's reply brief in support of its motion to quash, the Forbearance Agreement is not the relevant to the issues at trial and should be precluded.  The facts surrounding the August 2017 Agreement have no bearing on whether Carton had an intent to defraud eight months prior when had made false statements to the Hedge Fund and misappropriated their investment funds.  Further, to the extent Carton seeks to use the Forbearance Agreement and related documents "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement," these materials are inadmissible under Rule 408.

16

*See* Fed. R. Evid. 408.   Accordingly, the Court should exclude evidence and questioning surrounding the Forbearance Agreement.

However, if the Court allows Carton to introduce evidence about the Agreement, the Government should be allowed to introduce evidence that Carton made false statements in connection with Agreement and failed to make the payments due under the agreement.   The Recitals clause of the Forbearance Agreement contains a number of inaccurate representations, including that Advance Entertainment, Meli's entity, "failed to refund" to Carton's entity any of the money that the Hedge Fund sent to Meli.   That is demonstrably false and misleading.   Indeed, the evidence at trial will show that, with respect to much of the money that the Hedge Fund sent to Meli, the conspirators re-directed it almost immediately to Carton and/or Wright, who then used it to pay down debts, among other things.   (*See, e.g.*, Indictment 16(b) ("On or about December 8, 2016 . . . , the Hedge Fund wired $700,000 to the [Meli] Entity.   [Meli] then caused the wiring of those funds to a bank account" controlled by Carton and Wright)).

Evidence that Carton was responsible for, or adopted, these false statements in the Forbearance Agreement is thus direct proof of Carton's state of mind with respect to the charged scheme, including his consciousness of guilt.   *See, e.g.*, *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 113 (2d Cir. 2008) (explaining that evidence of "consciousness of guilt, such as [making] false exculpatory statements," is relevant to show a defendant's knowing and willing participation in a conspiracy (quotation omitted)).

The evidence also admissible under Rule 404(b) to show Carton's knowledge and intent. Accordingly, to the extent the Court allows any evidence or questioning regarding the Forbearance

Agreement—which it should not—it should also allow the Government to introduce that Carton was responsible for and/or adopted the false statements in the Agreement and failed to abide by the Agreement's payment schedule.

## IV.   The Court Should Preclude Evidence Regarding Mental Disease or Defect

In his autobiography, Carton writes "I have been diagnosed with multiple disorders: Tourette's, OCD, ADD—I have them all.  They drive every movement I make and every thought that enters my mind." Craig Carton, *Loudmouth*, at 22.  The Court should preclude evidence or testimony regarding Carton's Tourette's, OCD, ADD, or any other disorder Carton claims to have.[9]

### A.   Applicable Law

#### 1.   Notice

Under Federal Rule of Criminal Procedure 12.2, a defendant who "intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on either . . . the issue of guilt  . . .  must--within the time provided for filing a pretrial motion or at any later time the court sets--notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk."

#### 2.   Relevance

To the extent Carton is seeking to rely on any mental disease or defect as a defense, the relevant statute is Insanity Defense Reform Act of 1984 (the "IDRA"), 18 U.S.C § 17.  Under the

---

[9] The Government attempted to raise these issues with Carton's counsel prior to filing this motion. Carton's counsel indicated that he "at this time . . .  can only say that it might be referred to by witnesses."

IRDA, "it is an affirmative defense . . . that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17.

Courts have required defendants who seek to introduce evidence of mental disease or defect to demonstrate clearly, in advance of trial, that there is a direct link between such evidence and the specific *mens rea* that the Government must prove. *See United States* v. *Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990). It is not enough for a defendant to show that his psychiatric condition adversely affected his state of mind during the relevant time period or that his disorder caused him to commit the actions that underlie his charge. *See, e.g.*, *United States* v. *Sacks*, No. 08 Cr. 629 (GEB), 2009 WL 4114169, at *6 (D.N.J. Nov. 23, 2009) (refusing to admit expert evidence of a defendant's dementia because it shed no light on the defendant's intent to deceive and did not affect the defendant's capacity to act voluntarily).

## B.  Discussion

Here, Carton has not established (or even attempted to establish) any link between his disorders and the *mens rea* that the Government must prove in this case. Accordingly, testimony or evidence relating to these disorders is irrelevant and would simply be intended to encourage jury sympathy for Carton. Further, Carton has not provided any expert notice regarding any mental disease or defect under Rule 12.2, and it would be impossible a lay witness to, for example, opine that Carton had Tourette's Syndrome without either (i) expert knowledge or (ii) relying on the statements of others to the effect that Carton has Tourette's, which of course would be inadmissible hearsay.

As such, testimony regarding Carton's mental conditions is inadmissible, on both relevance nod notice grounds.  Accordingly, the Court should preclude it.[10]

## V.   The Court Should Preclude Evidence Regarding the Fact that Carton Received a Victim Notification

In the fall of 2017, in connection with its obligations under the Crime Victims' Rights Act, the U.S. Attorney's Office sent form notifications to over 140 individuals or entities regarding proceedings in *United States* v. *Joseph Meli*, et al., No. 17 Cr. 127 (KMW), via an automated system called the "Victim Notification System" ("VNS").  Among other things, the letters stated "I am contacting you because you were identified by law enforcement as a victim or potential victim during the investigation of the above criminal case" and notified the recipient of, for example, the trial date in the *Meli* case.  The recipients of the letters consisted of individuals or entities who had sent money to Meli or his entities during the approximate time of the scheme charged in case 17 Cr. 127.  The letters are electronically signed by a member of the U.S. Attorney's Office Victim-Witness section on behalf of the U.S. Attorney.

Carton and at least two entities with which he was associated, Misoluki and Notrac Slam, received VNS letters relating to the *Meli* case following Carton's arrest.  This was an error.  Carton had been arrested in September 2017 and was thus not viewed "as a victim or potential victim of Meli."  After learning that letters had been sent to Carton and these entities, the Government removed Carton and the entities from the automated VNS system.[10]

---

[10] Because the letters are generated automatically, the Government does not maintain a copy of each letter sent to each recipient, and thus does not have copies of the letters sent to Carton or the entities.

The Court should exclude any evidence or argument relating to these VNS letters.

Notably, when examining whether to admit a prior purported inconsistent statement by a Government attorney, the proponent of the evidence must show (i) that "'the prior argument involves an assertion of fact inconsistent with similar assertions in a subsequent trial'"; (ii) that "'the statements of counsel were such as to be the equivalent of testimonial statements' made by the client"; and (iii) "by a preponderance of the evidence that the inference that the proponent of the statements wishes to draw 'is a fair one and that an innocent explanation for the inconsistency does not exist.'" *United States* v. *Ford*, 435 F.3d 204, 215 (2d Cir. 2006) (quoting *United States* v. *Salerno*, 937 F.2d 797, 812 (2d Cir. 1991)).

Carton cannot meet this standard.  The inference Carton seeks to draw—that "someone in the prosecutor's office seems to agree" that he was a victim of Meli[11]—is not a fair one in context and an innocent explanation exists.   The VNS letters were sent as part of automated, mass mailings to over 140 individuals and entities based only on the fact that these 140  had transacted business with Meli.  The sending of the letters did not represent the considered "argee[ment]" of anyone that Carton was a victim of Meli's scheme.  Further, with respect to the entities to which VNS letters were sent, NoTrac Slam and Misoluki, nothing about the names of these entities alone suggested they are associated with Carton, providing a further reason why they initially escaped detection as victim notifications to Carton.

---

[11] Bailey McCann, *Are the Feds Blowing Their Ponzi Scheme Case Against Sports Talker Craig Carton?*,  https://www.thedailybeast.com/are-the-feds-blowing-their-ponzi-scheme-case-against-sports-talker-craig-carton?ref=author (reporting on case, including interview with Carton's attorney).

Second, to the extent there is any probative value to the letters, it is substantially outweighed under Rule 403 by the danger of confusing the issues, undue delay, and wasting time. To respond to the (incorrect) insinuation that the letters represented someone's considered judgment that Carton was a victim of Meli's fraud, the Government would need to present testimony, likely from multiple witnesses, regarding the VNS process and the VNS notifications in this case and would seek to admit the criminal complaint charging Carton and Wright, which pre-dated the letters at issue and which is entirely consistent with the Government's actual view of the facts.

Accordingly, the Court should preclude evidence regarding the VNS notifications.

## VI.  The Court Should Set a Deadline of October 12, 2018 Trial for Any Defense Rule 16(b) Materials, Including Expert Disclosures

Finally, the Court should set a deadline of October 12, 2018 for defense disclosures of any Rule 16(b) materials not previously produced by the Government and for any defense expert notice.

The Government has requested in writing reciprocal discovery from the defendant pursuant to Rule 16(b) on multiple occasions and limited reciprocal discovery was produced for the first time tonight.

Rule 16(b)  imposes reciprocal discovery obligations on the defense.  Rule 16(b) requires the defense disclose, among other things, (i) "documents" and "tangible objects" that "the defendant intends to use" in his "case-in-chief at trial," Rule 16(b)(1)(A); (ii) reports of examinations and tests, Rule 16(b)(1)(B); and (iii) expert disclosures, Rule 16(b)(1)(C).

22

The term "case-in-chief" in Rule 16(b) applies not only to exhibits offered in any defense case, but also to "all non-impeachment exhibits [the defendants] intend to use in their defense at trial, whether the exhibits will be introduced through a government witness or a witness called by the defendant." *United States* v. *Napout*, No. 15 Cr. 252 (PKC), 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017) (noting "this interpretation of Rule 16 has been adopted by almost every district court to consider the issue" (collecting cases)).

Timely defense Rule 16(b) disclosures (as with timely Government disclosures) reduce the possibility of time-consuming disputes during trial over the admissibility of evidence or the relevance and qualifications of proffered experts. *Cf., e.g.*, Minute Entry, *United States* v. *Tuzman*, No. 15 Cr. 536 (PGG) (S.D.N.Y. Dec. 12, 2017) (reflecting mid-trial evidentiary hearing regarding authenticity and admissibility of late-produced defense exhibit in case).

Accordingly, the Court should set a deadline of October 12, 2018 for defense disclosures of any Rule 16(b) materials.

## CONCLUSION

For the reasons set forth above, the Court should grant the Government's motions *in limine*.

Dated:  New York, New York
        October 1, 2018

                                        Respectfully submitted,

                                        GEOFFREY S. BERMAN
                                        United States Attorney for the
                                        Southern District of New York

                              By:       _____
                                        Elisha J. Kobre / Brendan F. Quigley
                                        Assistant United States Attorneys
                                        Tel.: (212) 637 2599/2190

24