```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                         17 Cr. 680 (CM)

CRAIG CARTON,
                                       Trial
                Defendant.

------------------------------x
                                       New York, N.Y.
                                       October 29, 2018
                                       10:10 a.m.

Before:

                    HON. COLLEEN MCMAHON,

                                       Chief District Judge

                         APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
ELISHA KOBRE
BRENDAN QUIGLEY
     Assistant United States Attorneys

GOTTLIEB & JANEY LLP
     Attorneys for Defendant
BY:  ROBERT C. GOTTLIEB
     DERRELLE M. JANEY
     SETH J. ZUCKERMAN
     SARAH LEDDY

ALSO PRESENT:   MICHAEL ZAVONA, Special Agent FBI
                SEAN SWEENEY, Special Agent FBI
```

1              (Case called)

2              MR. KOBRE:  Good morning, your Honor.  Elisha Kobre

3     and Brendan Quigley, for the government.  With us at counsel's

4     table are paralegal specialists with our office Nate Cooney and

5     Luke Urbanczyk, Special Agents Mike Zavona and Sean Sweeney of

6     the FBI.

7              THE COURT:  Let's get that.  Agent Sweeney I remember.

8     Mike?

9              MR. KOBRE:  Zavona.

10             THE COURT:  Zavona.  Thank you.  Says "to be

11    determined" in my script.  I don't do TBDs.

12             Mr. Gottlieb, good morning.

13             MR. GOTTLIEB:  Your Honor, good morning.  Gottlieb &

14    Janey by Robert Gottlieb.

15             MR. JANEY:  Good morning, your Honor.  Derrelle Janey

16    of Gottlieb & Janey, also for Mr. Carton.

17             MR. ZUCKERMAN:  Good morning, your Honor.  Seth

18    Zuckerman, also for Mr. Carton.

19             THE COURT:  And she was going to speak, Mr. Gottlieb.

20             MR. GOTTLIEB:  No, your Honor.  You have to be fair.

21    You have to be fair.  I know you are.  The only reason I even

22    paused is she's not formally admitted, and we take seriously

23    that if you're going to speak in federal court, you should be

24    admitted.  That was the only reason.  But I want her to speak.

25    As a matter of fact, I would like to waive the formal admission

IATHCar1

1    so she can do the opening and the summation.
2               THE COURT:  Yeah, right.  How about like *pro hac vice*
3    for the trial?
4               MR. GOTTLIEB:  Thank you.
5               THE COURT:  Speak, woman, speak.
6               MS. LEDDY:  Good morning, your Honor.  Sarah Leddy of
7    Gottlieb & Janey as well.
8               THE COURT:  Thank you, Ms. Leddy.
9               Now, the first thing I need to do is be rude to
10   everybody in the back.  We're going to need all those seats for
11   the jurors.  So when we're ready for the jury to come in, I'm
12   going to need you to move.
13              Mr. O'Neill, will you tell people where they're going
14   to move.  This is press, family, everybody will have to move to
15   the back.  And I'm sorry, it's just that I need to seat the
16   jurors.
17              That's thing one.  Thing two, after some careful
18   consideration, here's what -- I'm sorry?  Am I missing
19   something?
20              MR. KOBRE:  Not at all.
21              THE COURT:  Thank you, Mr. Kobre.
22              Did you guys get the decision, by the way?  I worked
23   so hard on it.
24              MR. KOBRE:  We did, your Honor.  Thank you.
25              THE COURT:  All right.  Certainly learned a lot of law

1    that I didn't know before.
2             Here's what I'm proposing to do, Mr. Gottlieb, to deal
3    with the issue that we know is the issue.  I'll introduce the
4    government team; I'll introduce your team, all of your team;
5    and then I'm going to ask three questions, because nobody's
6    going to know any of you.  I'll ask three questions.  I'll ask
7    if anyone knows Mr. Carton personally.  I'm proposing to say:
8    Mr. Carton's name may be familiar to some of you because of his
9    radio work.  And is anybody familiar with him from listening to
10   him on the radio, and have you formed an opinion about
11   Mr. Carton from his radio persona that would make it hard for
12   you to be a fair and impartial juror?  And then, of course,
13   I'll ask if anybody's read anything about the case in the
14   press.  We'll note these things down and we'll have further
15   discourse with problematic jurors back in the back.
16            OK.  Does that work?
17            MR. GOTTLIEB:  Yes, your Honor.
18            MR. KOBRE:  Yes, your Honor.
19            THE LAW CLERK:  The press raises their hand, Judge.
20            THE COURT:  Yes.  Good morning to the press.
21            MR. RILEY:  Yes, Judge, John Riley from *Newsday*.  You
22   said back in the back.  Do you intend to speak to jurors in
23   chambers?
24            THE COURT:  I intend only to prescreen for time and
25   medical conditions, as opposed to doing it at sidebar.

1         MR. RILEY:  But what you said indicated you would be
2    talking to them about their answers to the questions --
3         THE COURT:  I just.
4         MR. RILEY:  -- regarding familiarity with Mr. Carton.
5    If those are the questions, I'd like -- I'd request access
6    should be open.
7         THE COURT:  Your request is noted.
8         MR. RILEY:  And denied or granted?
9         THE COURT:  Denied.  It's prescreening.  I prescreen
10   either here where we all whisper or in my robing room.  You'll
11   get answers to the questions that are given about Mr. Carton
12   here in the courtroom, all right?  If there's anything that I
13   think is going to be detrimental to the other jurors, I'll ask
14   in the back room.
15        MR. RILEY:  But can the press come into --
16        THE COURT:  I heard you, sir.  No.
17        I have a very long list of names, a very long list of
18   names.
19        THE LAW CLERK:  I think it's inclusive of defense.
20        THE COURT:  I don't care if it's inclusive of the
21   defense.  It looks like it's inclusive of the entire world.
22        Really?  All these people are somehow going to be
23   mentioned in this trial?
24        MR. KOBRE:  Yes, Judge.  I think we're trying to be
25   cautious and avoid a possibility where a name comes up that we

1    hadn't thought of.

2             THE COURT:  This looks like every casino on the East
3    Coast.

4             MR. KOBRE:  We expect those to come up.

5             THE COURT:  Who has an issue before we get jurors?
6    They're very slow this morning.  We have a terrorism trial
7    going on, inopportunely scheduled.

8             MR. QUIGLEY:  Judge, I know of one follow-up from the
9    last conference.  I know your Honor deferred ruling on the
10   subsequent ticket purchases by Mr. Carton.  We dispute,
11   certainly dispute, the relevance of the prior ticket purchases
12   and the subsequent purchases also.  And we would just ask, I
13   know your Honor's going to take the evidence as it comes, but
14   in terms of openings, it would not be appropriate for the
15   defense to open on the fact --

16            THE COURT:  I didn't rule on subsequent ticket
17   purchases?

18            MR. QUIGLEY:  We had said in one of our -- there was a
19   motion.  The defense moved to essentially get you to reconsider
20   or clarify your *Scarpa* motion.

21            THE COURT:  Right.

22            MR. QUIGLEY:  Your *Scarpa* decision.  We responded to
23   that saying we think, essentially, this argument about prior
24   course of dealing is really a *Scarpa* motion in disguise, is
25   *Scarpa* evidence in disguise.

1          THE COURT:  He says it's a *Litvak* motion.  He says
2    it's an intent motion.
3          MR. QUIGLEY:  Understood.  One thing we also said was
4    that the subsequent ticket purchases that Mr. Carton made later
5    in 2017 which were not to the concerts that were the conduct
6    of -- or at least in as much they were not to the concerts that
7    were the subject of the Brigade investment.  That was also
8    clearly intended as *Scarpa*-type evidence to show that
9    Mr. Carton had a legitimate ticket business, which is not
10   something that's at issue in this trial.  The issue --
11         THE COURT:  It's not.  You know, I don't mean to blow
12   my own horn, Mr. Quigley, but I'm really good at one thing,
13   only one thing, and it's talking to jurors.  And believe me, by
14   the end of this case, the jurors will know that the fact that
15   Mr. Carton may have had a legitimate ticket business is no
16   defense if he engaged in fraud in connection with some of his
17   ticket sales.  They will know that.  They will be told that by
18   me, OK?  They will know that that's the law.
19         MR. QUIGLEY:  Thank you, your Honor.
20         My concern is more in opening that the defense is
21   going to assert that as a defense when it's not a defense.
22         THE COURT:  If I were you and I were going to open,
23   I'd be surprised if your opening didn't include something about
24   the fact that Mr. Carton -- we all know Mr. Carton engaged in
25   ticket sales and something about the fact that maybe some of

IATHCar1

those sales were legitimate, but some were not.  And the fact that some were legitimate, as you will hear, ladies and gentlemen, does not make them all legitimate.  And those that were illegitimate were very illegitimate.  Here's why.

You know how to do this, Mr. Quigley, you do.  You know how to do this.

MR. QUIGLEY:  Thank you, your Honor.

THE COURT:  Mr. Gottlieb, did you have anything?

MR. GOTTLIEB:  No, your Honor.  Thank you very much.

THE COURT:  Let's figure out what's going on.

(Discussion off the record)

(Recess)

THE COURT:  Just so you know, I will make a formal Stewart findings, but the basis of the ruling, we're going to make sure that the *Newsday* has instantly access to transcripts of any questions that may be asked in the robing room about Mr. Carton, attitudes towards, relationships with Mr. Carton.  I don't know that there are going to be that many, but the interest in having a member of the press in the room at the time the questions are asked, if any have to be asked, is, seems to me, overcome by the fact that the jurors will see a member of the press whom they will not know an who will either have to be presented to them or they will think there was a stranger in the room, and they will feel uncomfortable and singled out.  I can get the information to the press

IATHCar1

1     immediately, and that is what I intend to do.
2              So let's go.  Let's get the jurors in the room.
3              THE LAW CLERK:  Yes, Judge.
4              THE COURT:  I would never do a Martha Stewart.
5              Juror No. 1 will be in this seat.  Juror No. 2 will be
6     in this seat as spit out in random order.
7              Ready, Mr. Carton?
8              THE DEFENDANT:  Yes, ma'am.
9              THE COURT:  OK.
10             THE LAW CLERK:  Should I bring the prospective jurors
11    in, Judge?
12             THE COURT:  I wish you would, Mr. O'Neill.
13             THE LAW CLERK:  The parties remain seated during this
14    process?
15             THE COURT:  Does any of us have a form?
16             THE LAW CLERK:  Yes, we do.
17             THE COURT:  Do the parties?
18             THE LAW CLERK:  I'll make extra copies.
19             MR. QUIGLEY:  Yes, your Honor.
20             THE COURT:  OK.
21             (Jury selection ensued)
22                                    o0o
23
24
25