# Exhibit E

## FORBEARANCE AGREEMENT

**THIS FORBEARANCE AGREEMENT** (this "Agreement") is made and entered into as of the 18th day of August, 2017 among Ticket Jones, LLC, a New York limited liability company ("Borrower"), Mr. Craig Carton, a natural person ("Mr. Carton"), LCS TKT LLC, a Delaware limited liability company, Brigade Leveraged Capital Structures Fund LP, a Delaware limited partnership (LCS TKT LLC and Brigade Leveraged Capital Structures Fund LP are collectively and without differentiation referred to herein as "Lender"), (solely for purposes of Section 7(d) and Sections 11 through 18, inclusive)                    , a natural person ("        "), whose address is                                , New York, NY        , and (solely for purposes of Section 6, Section 9 and Sections 11 through 19, inclusive)            , a natural person ("Guarantor"), whose address is            New York, NY    . Borrower and Lender hereinafter are referred to individually as a "Party" and collectively as the "Parties." Capitalized terms used in this Agreement but not defined herein shall have the meanings ascribed to them in the Loan Agreement (as defined below).

## Recitals and Statement of Purpose

**WHEREAS,** Borrower, Mr. Carton and Lender entered into that certain Revolving Loan Agreement, dated as of December 8, 2016 ("Loan Agreement").

**WHEREAS,** on July 28, 2017, Lender sent to Borrower a letter (the "Notice of Default") confirming, among other things, that Borrower had acknowledged that the following facts had occurred: (i) Borrower requested and received advances under the Loan Agreement in the aggregate amount of $2,600,000 (the "Advance Loan") to be used by Borrower to place deposits for the purchase of certain Event Tickets from and/or through Advance Entertainment, LLC ("Advance") pursuant to an Event Ticket Agreement; (ii) Borrower requested and received advances under the Loan Agreement in the aggregate amount of $2,000,000 (the "Barclays Loan") to place deposits for the purchase of certain Event Tickets from and/or through Barclays (sic) Sports and Entertainment Company ("Barclays") pursuant to an Event Ticket Agreement; (iii) Advance is no longer conducting operations and, prior to the cessation of its operations, Advance (a) failed to deliver any Event Tickets to Borrower and (b) failed to refund to Borrower any of the deposits submitted by Borrower to Advance; (iv) the Advance Loan remains due, owing and unpaid; (v) Barclays delivered certain Event Tickets to Borrower (and/or an agent acting on behalf of Borrower or Tier One, an electronic commerce platform acting on Borrower's behalf), certain of which tickets were sold by or on behalf of Borrower; (vi) Borrower did not remit the Net Available Proceeds in the amount of at least $424,967 in respect of such sold Event Tickets (the "Ticket Proceeds") to Lender (it being understood that Lender expressly reserves its right to independently confirm through methods of its choosing the accuracy of the amount of the Ticket Proceeds reported by Borrower and to make any appropriate adjustments to such amount); (vii) funds on deposit with Barclays in the amount of at least $1,197,820 (the "Refund Proceeds") were not applied to purchase Event Tickets and instead remained with Barclays following the staging of the applicable Events tickets for which such deposited funds were designated to purchase (it being understood that Lender expressly reserves its right to independently confirm through methods of its choosing the accuracy of the amount of the Refund Proceeds reported by Borrower and to make any appropriate adjustments to such amount); (viii) Borrower directed Barclays to remit such Refund Proceeds to Tier One instead of to Borrower (the "Refund Transfer Event"); and (ix)

Borrower did not remit the Net Available Proceeds represented by such Refund Proceeds to Lender (the events described in clauses (i) to (ix) above are collectively referred to as the "<u>Acknowledged Facts</u>." The Notice of Default gave notice to Borrower that, among other Defaults, (i) Borrower was and remains in Default under Section 2.03(b)(ii) of the Loan Agreement for failure to make a mandatory prepayment in an amount equal to the Net Available Proceeds represented by both the Ticket Proceeds and the Refund Proceeds (the "<u>Principal Default</u>") and (ii) Borrower failed to pay interest in respect of the Ticket Proceeds and the Refund Proceeds when the same became due and owing to Lender five (5) Business Days following the occurrence of the Dispositions resulting in such Net Available Proceeds (the "<u>Interest Default</u>," and collectively with the Principal Default, the "<u>Payment Default</u>").

**WHEREAS,** on August 11, 2017, Lender sent to Borrower a letter (the "<u>Notice of Event of Default</u>") (i) providing notice to Borrower that an Event of Default occurred no later than Thursday, August 4, 2017 and is continuing under Section 7.01(a) of the Loan Agreement as a result of Borrower's failure to cure the Payment Default within three Business Days after the delivery of the Notice of Default to Borrower (such Event of Default and other Defaults and Events of Default that have arisen or may in the future arise as a result of the Acknowledged Facts, are collectively referred to herein as the "<u>Acknowledged Defaults</u>") and (ii) terminating and canceling any and all commitments to make Revolving Loans or otherwise make any financial accommodations for Borrower under the Loan Agreement and declaring the entire outstanding balance of Revolving Loans, together with interest thereon and other amounts owing to Lender pursuant to the Loan Agreement, including pursuant to Section 8.03 thereof, to be immediately due and payable.

**WHEREAS,** as a result of such Acknowledged Defaults, Lender is entitled to exercise its legal, equitable, and contractual rights and remedies against Borrower.

**WHEREAS,** Borrower has requested that Lender forbear from exercising all rights and remedies under the Loan Agreement provisionally through the Forbearance Maturity Date (as defined below) solely in respect of the Acknowledged Defaults.

**WHEREAS,** at Borrower's request, Lender is willing to forbear from exercising all rights and remedies under the Loan Agreement and/or applicable law provisionally only through the Forbearance Maturity Date solely in respect of the Acknowledged Defaults, in each case, subject to the express terms and provisions of this Agreement.

<u>**Agreement**</u>

**NOW, THEREFORE,** in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1.      <u>Acknowledgments</u>.  To induce Lender to execute this Agreement, Borrower and Mr. Carton hereby acknowledge, stipulate and agree with respect to the Loan Agreement as follows:

(a)      The Acknowledged Facts occurred as described above.

(b)     The Acknowledged Defaults constitute Events of Default and Defaults that have occurred and remain uncured and continuing as of the date of this Agreement.

(c)     As of the date of this Agreement, the outstanding amount due and owing under the Loan Agreement is equal to at least $4,600,000, plus accrued interest thereon in accordance with the Loan Agreement and the Notice of Event of Default.

(d)     The Loan Agreement and the other related and ancillary documents, including, without limitation, the Security Documents, remain in full force and effect and are hereby ratified and affirmed in all respects. Borrower and Mr. Carton hereby reaffirm and admit (i) the validity and enforceability of the Loan Agreement, the Security Documents and the other related and ancillary documents and (ii) the attachment and perfection of all liens and security interests granted by Borrower pursuant to the Security Documents.

(e)     All time-related defenses, such as statutes of limitations, doctrines of estoppel, doctrines of laches, doctrines of waiver, or any other rules of law or equity of similar nature, of Borrower with respect to all rights, claims and causes of action of any kind whatsoever that Lender may have against Borrower under or in connection with the Loan Agreement are hereby tolled from the date of this Agreement through and including the date which is one hundred eighty (180) days after the Forbearance Maturity Date and Borrower and Mr. Carton acknowledge and agree to such tolling and that the passage of such time shall not otherwise operate to the detriment of Lender with respect to such defenses.

(f)     This Agreement shall not amend, modify, or restate the Loan Agreement or any other related or ancillary documents, and, other than to the extent of the provisional forbearance contemplated hereby, shall not limit in any manner the rights or remedies available to Lender thereunder.

2.     <u>Provisional Forbearance</u>.  Effective as of the Forbearance Effective Date (as defined in paragraph 3 below), Lender agrees to forbear provisionally in the exercise of its rights and remedies under the Loan Agreement and/or applicable law solely in respect of the Acknowledged Defaults (excluding, however, Lender's right to charge default interest on the Revolving Loan), and to defer the exercise of any rights or remedies arising solely as a result of the occurrence of the Acknowledged Defaults, until the date (the "<u>Forbearance Maturity Date</u>") on which a Termination Event occurs (such period, beginning on the Forbearance Effective Date and ending on the Forbearance Maturity Date, the "<u>Forbearance Period</u>"); <u>provided</u>, <u>however</u>, that nothing herein shall restrict, impair or otherwise affect the exercise of Lender's rights under this Agreement; and <u>provided</u>, <u>further</u>, that no such forbearance shall constitute a waiver with respect to the Acknowledged Defaults or any other Events of Default under the Loan Agreement. In consideration of Lender's agreement to so forebear, Borrower and Mr. Carton hereby, jointly and severally, agree to:

(a)     Pay, or cause to be paid, $616,689.99 to Lender on August 18, 2017 by wire transfer of immediately available funds pursuant to instructions provided in advance by Lender (the "<u>Initial Payment</u>");

        (b)     pay, or cause to be paid, $206,097.01 to Lender on September 30, 2017 by wire transfer of immediately available funds pursuant to instructions provided in advance by Lender;

        (c)     pay, or cause to be paid, $25,000 on the last Business Day of each month beginning on October 31, 2017 and ending on September 28, 2018 by wire transfer of immediately available funds pursuant to instructions provided in advance by Lender; and

        (d)     pay, or cause to be paid, $500,000 plus the reasonable and documented fees and expenses incurred by Brigade following the closing of the transactions contemplated by the Loan Agreement in connection with matters relating to the loan embodied therein and the enforcement of the Loan Agreement, to Lender on October 31, 2018 by wire transfer of immediately available funds pursuant to instructions provided in advance by Lender.

In addition to the foregoing payments of principal, Borrower and Mr. Carton hereby, jointly and severally, agree to pay interest computed from and after December 31, 2017 on all amounts then outstanding and to be paid to Lender under this Section 2 at a rate per annum of three percent (3%), compounding quarterly, with such accrued interest to be paid concurrently with the payment of the corresponding principal amounts hereinabove specified in this Section 2. Borrower and Mr. Carton shall be entitled to prepay at any time the outstanding amounts described in this Section 2 without penalty.

      3.     Conditions Precedent.  This Agreement shall become effective on the first date (the "Forbearance Effective Date") on which the two (2) events that follow have both occurred: (i) Lender has received this Agreement, duly executed and delivered by Borrower, Mr. Carton and Guarantor, and (ii) Lender has received the Initial Payment.

      4.     Events of Termination; Discharge of Certain Obligations upon Payment in Full. Upon timely payment in full in cash, and with interest as provided herein, of all payments to Lender provided for in Section 2 above and the payment to Lender of any amounts owing pursuant to Section 20, absent fraud or willful misconduct, Borrower shall be discharged from all remaining obligations under the Loan Agreement and the other Loan Documents, which shall be terminated except to the extent to which provisions are by their terms contemplated to survive the termination of the Loan Agreement and the other Loan Documents (including in connection with the Advance Loan), and all liens and security interests granted by Borrower to Lender pursuant to the Security Documents shall be terminated and of no further force or effect; provided, however, that, notwithstanding the foregoing, Borrower and Mr. Carton shall use their diligent efforts to pursue the recovery of amounts owing in respect of the Advance Loan and, in the event that Borrower and/or Mr. Carton recover any such amounts, (i) all liens and security interests granted by Borrower to Lender pursuant to the Security Documents shall immediately and automatically attach thereto and (ii) Borrower and Mr. Carton shall immediately thereupon remit the same to Lender.

For purposes hereof, the term "Termination Event" shall mean the existence or occurrence, as the case may be, of any of the following:

(a)      The failure to be paid to Lender when due in immediately available United States Dollars any amount required to be paid to Lender under this Agreement, including, without limitation, all amounts required to be paid pursuant to Section 2 and Section 20;

(b)      Borrower makes any disbursement of money or distributes any other property to any Person other than Lender;

(c)      Borrower fails to deliver to Lender when due any report as required in Section 7(b).

(d)      Borrower, Mr. Carton and/or ███████ fail to cause, within forty-five (45) days following the date hereof, the obligations of Borrower and Mr. Carton to Lender hereunder to be secured by a mortgage on the Collateral as required by, and in accordance with the terms of, Section 7(d);

(e)      the acceleration of the maturity of any other Indebtedness of Borrower for borrowed money;

(f)      the occurrence of any Default or Event of Default under the Loan Agreement, other than the Acknowledged Defaults;

(g)      the filing of a bankruptcy case by or against Borrower (other than by or at the direction of Lender during the Forbearance Period), Mr. Carton or Guarantor;

(h)      the commencement of any proceedings in any court (whether state or federal) or governmental body, agency, or commission of competent jurisdiction, or the commencement of any arbitration proceedings by Borrower, Mr. Carton or Guarantor (other than pursuant to Section 9 with respect to any Dispute (as defined below) hereunder), pursuant to which any legal remedy or relief is sought with respect to, or which would be binding upon, or which would restrict, restrain or enjoin Lender from enforcing its rights and remedies under the Loan Agreement;

(i)      a breach by Borrower, Mr. Carton or, to the extent applicable, Guarantor, of any representation, warranty or covenant set forth in this Agreement;

(j)      the failure of Borrower to comply with any term, condition, covenant or agreement set forth in the Security Documents; and

(k)      the occurrence of an event or condition that could reasonably be expected to have, individually or in the aggregate, (a) a material adverse effect on the properties, assets, business, operations, liabilities (actual or contingent) or condition (financial or otherwise) of Borrower, Mr. Carton or Guarantor, (b) a material impairment of the ability of Borrower, Mr. Carton or, to the extent applicable, Guarantor, to perform its or his, as the case may be, obligations under this Agreement or, in the case of Borrower, under the Loan Agreement or the Security Documents, (c) a material impairment of the rights and remedies of Lender under the Loan Agreement, the Security Documents or this Agreement or (d) a material impairment of the legality, validity, binding effect or enforceability against Borrower, Mr. Carton or, to the extent applicable, Guarantor, of this Agreement, or, in the case of Borrower, of the Loan Agreement or the Security Documents.

5.      Termination and Effect.  Upon the occurrence of the Forbearance Maturity Date, but subject to Section 18, this Agreement and all rights and obligations of the Parties under this Agreement, including Lender's agreement to forbear from exercising rights and remedies, shall be terminable at the election of Lender upon notice to such effect (a "Termination Notice") made to the other Parties hereto at the respective electronic mail addresses of such Parties set forth on the signature pages hereto; provided, however, that Lender may rescind (wholly or in part and on the terms set forth in the related notice) a Termination Event described in Section 4 (and the termination of this Agreement as a result of such Termination Event) within 30 days of the occurrence of such Termination Event by providing notice to the other Parties hereto at the respective electronic mail addresses of such Parties set forth on the signature pages hereto that Lender is electing to rescind such Termination Event.  Borrower agrees that, subject to the proviso to the immediately preceding sentence, upon the occurrence of the Forbearance Maturity Date and delivery of a Termination Notice as contemplated in this Section 5, and at any time thereafter, Lender may proceed to exercise any and all of its rights and remedies, including without limitation, its rights and remedies in connection with the Acknowledged Defaults (provided the same are continuing and have not been cured or waived in writing) and any other Events of Default under the Loan Agreement, under applicable law or under any other related or ancillary documents.

6.      Representations and Warranties.  In order to induce Lender to enter into this Agreement, as applicable, each of Borrower, Mr. Carton and Guarantor makes the following representations and warranties as of the date of this Agreement, all of which shall survive the execution and delivery of this Agreement:

(a)      Borrower is duly organized, validly existing and in good standing under the Laws of the jurisdiction of its organization and has all requisite power and authority necessary to enter into, execute, deliver and perform its obligation under this Agreement and to consummate the transactions contemplated hereby.  With respect to Borrower, this Agreement does not conflict with, violate, or result in a breach of or require any consent under (i) any applicable law or regulation or from any governmental agency, or any of the terms of Borrower's charter, by-laws or other organizational documents, or (ii) any agreement or instrument to which Borrower is a party or to which it or any of its assets are bound or subject.  Each of Mr. Carton and Guarantor is competent to, and has all requisite authority necessary to, enter into, execute, deliver and perform its obligation under this Agreement and to consummate the transactions contemplated hereby.  With respect to each of Mr. Carton and Guarantor, this Agreement does not conflict with, violate, or result in a breach of or require any consent under (i) any applicable law or regulation or from any governmental agency, or (ii) any agreement or instrument to which he is a party or to which he or any of his assets are bound or subject.

(b)      This Agreement constitutes and has been duly authorized, executed and delivered by, and is the legal, valid and binding obligation of each of Borrower, Mr. Carton and Guarantor, enforceable against each of them in accordance with its terms.

(c)      Borrower has duly and validly approved the execution, delivery and performance of this Agreement and all other matters set forth herein.

(d)      Except for the Acknowledged Defaults, Borrower is in compliance with all of the terms and provisions set forth in the Loan Agreement on its part to be observed or performed and no other Default or Event of Default has occurred and is continuing.

(e)      Borrower is in compliance with the Security Documents.

7.      Covenants.

(a)      Repurchases of Equity; Payment of Fees. During the Forbearance Period, Borrower shall not purchase, redeem or otherwise acquire or retire for value any equity securities of Borrower.

(b)      Reports. During the Forbearance Period, on a weekly basis, Borrower shall deliver to Lender, a report of Borrower's cash receipts and disbursements for the immediately previous week.

(c)      Operations. During the Forbearance Period, Borrower shall not make any disbursement of money to any Person other than Lender and shall not conduct any operations of any kind, except collection of outstanding amounts due or that become due and performance of its obligations hereunder.

(d)      Mortgage. Borrower, Mr. Carton and            shall, jointly and severally, cause, within forty-five (45) days following the date hereof, all obligations of Borrower and Mr. Carton to Lender hereunder to be secured by a mortgage on the real property owned by          located at                                     , New York, NY       (the "Collateral"). The above-described mortgage and any ancillary documentation shall contain terms and conditions, and shall be in form and substance, customary for transactions of this type and otherwise reasonably satisfactory to the Lenders (including reasonably satisfactory legal diligence and availability of loan title insurance subject only to customary exceptions), and the Collateral shall not be subject to any other liens, subject to customary exceptions.

8.      Limited Effect of Agreement.

(a)      The Loan Agreement and the other related and ancillary documents, including, without limitation, the Security Documents, are, shall continue to be, and shall remain, in full force and effect. Except as expressly provided herein, this Agreement shall not be deemed or otherwise construed: (i) to be a consent granted pursuant to, or, except as expressly set forth herein, a waiver or modification of, any other term or condition of the Loan Agreement or any of the related and ancillary documents, including, without limitation, the Security Documents, including, without limitation, with respect to Defaults, Events of Default, or the Acknowledged Defaults; (ii) to prejudice any right that Lender now has or may have in the future under or in connection with the Loan Agreement or any of the other related or ancillary documents, including, without limitation, the Security Documents, as each may be amended, restated or otherwise modified from time to time; (iii) to be a commitment or any other undertaking or expression of any willingness to engage in any further discussion with Borrower or any other Person with respect to any waiver, amendment, modification or any other change to the Loan Agreement or any of the other related or ancillary documents, including, without limitation, the Security Documents, or any rights or remedies arising in favor of Lender under or with respect to

the Loan Agreement or any of the other related or ancillary documents, including, without limitation, the Security Documents; or (iv) to be a waiver of, or consent to or a modification or amendment of, any other term or condition of any other agreement by and among Borrower or any of its affiliates (including, without limitation, Mr. Carton), on the one hand, and Lender, on the other hand.

(b)    In addition, Borrower and Lender hereby agree that, beginning on the execution date hereof and continuing until the Forbearance Maturity Date, all statutes of limitation and similar laws, rules and equitable theories with respect to the time in which Lender may bring any claim or action against Borrower or any of its affiliates under or in connection with the Loan Agreement shall be tolled and that the passage of such time shall not otherwise operate to the detriment of Lender with respect to such rights. This Section 8(b) shall survive the termination of this Agreement.

9.    Dispute Resolution.    Any dispute between or among Lender, Mr. Carton, Guarantor and/or Borrower (or any subset of the foregoing) arising out of or relating to this Agreement, including claims arising in contract, in tort, by statute or otherwise, shall be settled exclusively and finally in accordance with Section 8.08(b) of the Loan Agreement.

10.    Release.    By its execution hereof and in consideration of the mutual covenants contained herein and other accommodations granted to Borrower and Mr. Carton hereunder, Borrower, Mr. Carton, and their respective successors, assigns and agents, hereby expressly forever waive, release and discharge any and all claims (including, without limitation, cross-claims, counterclaims, and rights of setoff and recoupment), causes of action (whether direct or derivative in nature), demands, suits, costs, expenses and damages any of them may have or allege to have as of the date of this Agreement of any nature, description, or kind whatsoever, based in whole or in part on facts, whether actual, contingent or otherwise, now known, unknown, or subsequently discovered, whether arising in law, at equity or otherwise (collectively, the "Claims"), against Lender, its affiliates, agents, principals, managers, managing members, members, partners, stockholders, "controlling persons" (within the meaning of the United States federal securities laws), directors, officers, employees, attorneys, consultants, advisors, agents, trusts, trustors, beneficiaries, heirs, executors and administrators of each of the foregoing (collectively, the "Released Parties") arising out of the Loan Agreement or any of the other related or ancillary documents, including, without limitation, the Security Documents, and any or all of the actions and transactions contemplated by the foregoing, including any actual or alleged performance or non-performance of any of the Released Parties under the Loan Agreement or any of the other related or ancillary documents, including, without limitation, the Security Documents.    Each of Borrower and Mr. Carton hereby acknowledges that the agreements in this Section 10 are intended to be in full satisfaction of all or any alleged injuries or damages arising in connection with the Claims.    In entering into this Agreement, each of Borrower and Mr. Carton hereby expressly disclaims any reliance on any representations, acts, or omissions by any of the Released Parties and hereby agrees and acknowledges that the validity and effectiveness of the releases set forth above does not depend in any way on any such representation, acts and/or omissions or the accuracy, completeness, or validity thereof.    This Section 10 shall survive the termination of this Agreement.

11.    Governing Law.    This Agreement will be governed by and construed in accordance with the laws of the State of New York, but without giving effect to applicable

principles of conflicts of law to the extent that the application of the law of another jurisdiction would be required thereby.

12.     Headings.  The captions in this Agreement are for convenience of reference only and shall not define or limit the provisions hereof.

13.     Counterparts.  This Agreement and any amendment hereof may be executed in several counterparts and by each party on a separate counterpart, each of which when executed and delivered shall be an original, and all of which together shall constitute one instrument.  In proving this Agreement it shall not be necessary to produce or account for more than one such counterpart signed by the Party against whom enforcement is sought.

14.     Entire Agreement, Etc.  This Agreement, the Loan Agreement and any other documents executed in connection herewith or therewith express the entire understanding of the Parties with respect to the transactions contemplated hereby.

15.     Amendments.  No waiver of any provision of, amendment to or modification of any provision of this Agreement shall be effective without the written agreement of Borrower, Lender, Mr. Carton and, in the case of (a) Section 19 or amendments to, or modifications of, other provisions of this Agreement by which Guarantor is bound, Guarantor, and (b) Section 7(d) or amendments to, or modifications of, other provisions of this Agreement by which ▮▮▮▮▮ is bound, ▮▮▮▮▮.

16.     No Third Party Beneficiaries.  Except with respect to the rights of Released Parties (that are not Parties) pursuant to Section 10 (which shall be enforceable by such Released Parties hereunder), this Agreement does not and shall not be construed to confer any rights or remedies upon any Person other than the Parties to this Agreement and their respective successors and permitted assigns.

17.     Severability.  The provisions of this Agreement are severable and if any one clause or provision hereof shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall affect only such clause or provision, or part thereof, in such jurisdiction, and shall not in any manner affect such clause or provision in any other jurisdiction, or any other clause or provision of this Agreement in any jurisdiction.

18.     Survival of Obligations.  All covenants, agreements, terms and other obligations of the Parties under this Agreement which do not terminate on the Forbearance Maturity Date pursuant to their express terms shall survive the occurrence of the Forbearance Maturity Date and shall thereafter be enforceable in accordance with their terms.

19.     Guaranty.

(a)     Guarantor hereby unconditionally guarantees to Lender and its successors and assigns, irrespective of the validity and enforceability of any other portion of this Agreement, the prompt payment and performance by Borrower and Mr. Carton of their obligations hereunder to:

(i)      pay in full to Lender all amounts described in <u>Section 2</u> when due and perform all other obligations of Borrower and Mr. Carton to Lender hereunder, all in accordance with the terms hereof; and

(ii)      in case of any extension of time of payment of any amounts required to be paid by Borrower or Mr. Carton to Lender under <u>Section 2</u> or any of such other obligations, promptly pay in full such amounts when due or perform such obligations in accordance with the terms of the extension;

<u>provided, however,</u> that in no event shall Guarantor be obligated to pay more than $200,000 in the aggregate hereunder (the "<u>Cap</u>").

(b)      Should any such payment not be made by or on behalf of Borrower or Mr. Carton when due for whatever reason, Guarantor shall pay the same immediately upon notice from Lender, subject to the Cap.  Guarantor agrees that this is a guarantee of payment and performance and not a guarantee of collection.

(c)      Subject to the Cap, Guarantor hereby agrees that its obligations hereunder are unconditional, irrespective of the validity, regularity or enforceability of this Agreement, the absence of any action to enforce the same, any waiver or consent by Lender with respect to any provisions hereof, the recovery of any judgment against Borrower or Mr. Carton, any action to enforce the same or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor.  Guarantor hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of insolvency or bankruptcy of Borrower or Mr. Carton, any right to require a proceeding first against Borrower or Mr. Carton, protest, notice and all demands whatsoever and covenant that this guaranty will not be discharged except by complete performance of the obligations contained in this Agreement.

(d)      If Lender is required by any court or otherwise to return to Borrower, Mr. Carton, Guarantor or any custodian, trustee, liquidator or other similar official acting in relation to Borrower, Mr. Carton or Guarantor, any amount paid by any of them to Lender, the guaranty set forth in this <u>Section 19</u>, to the extent theretofore discharged, will be automatically reinstated and thereupon be and thereafter remain in full force and effect, subject to the Cap.

20.      <u>Expenses.</u>  Borrower and Mr. Carton shall, jointly and severally, pay or reimburse, as the case may be, immediately upon demand (i) all out-of-pocket expenses incurred by Lender (including the fees, charges and disbursements of Milbank, Tweed, Hadley & McCloy LLP as counsel for Lender) in connection with the enforcement or protection of its rights in connection with this Agreement, the Loan Agreement and the other Loan Documents, and (ii) the reasonable and documented out-of-pocket expenses incurred by Lender in connection with the creation of the mortgage on the Collateral in accordance with <u>Section 7(d).</u>  This <u>Section 20</u> shall survive the termination of this Agreement.

21.      <u>Confidentiality.</u>  Each Party agrees to maintain the confidentiality of the existence, Parties to and content of this Agreement, and not to disclose the same, except (i) to the directors, officers, employees, existing and prospective investors, general partners, limited partners and representatives of such Party who are informed of the confidential nature of this Agreement, (ii) as may be required by applicable law, rule, process or regulation, or at the

request of any governmental, judicial, regulatory, administrative or supervisory authority or (iii) as may be required to defend any action brought against a Party hereto in connection with the subject matter of this Agreement or any other matter relating thereto.

22.    Non-Disparagement.    Each Party agrees and promises that, commencing on the date hereof and for twenty-four (24) months thereafter, it shall not knowingly make any libelous or disparaging statements about or concerning any other Party, its directors, officers, employees, investors or representatives.   Such prohibited statements include any statement that disparages the business or business reputation of any Party, its affiliates or their employees or representatives.   Notwithstanding the foregoing, nothing herein shall prevent any Party from disclosing information or making statements (i) in order to comply with applicable law, rule, process or regulation, or to comply with the request of any governmental, judicial, regulatory, administrative or supervisory authority or (ii) in connection with its communication with its existing or prospective investors, general partners or limited partners.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

**IN WITNESS WHEREOF,** the Parties hereto have caused this Forbearance Agreement to be duly executed and delivered as of the day and year first above written.

TICKET JONES, LLC

By:_____

    Name:   **CRAIG CARTON**

    Title:     **FOUNDER**

Address: ███████████. NY NY ███

Telephone: ███████

Electronic Mail Address: ██████████

By:_____

    Name:  Mr. Craig Carton

Address: ███████████. NY NY ███

Telephone: ███████

Electronic Mail Address: ██████████

LCS TKT LLC

By:_____

    Name:

    Title:

Address:

Telephone:

Electronic Mail Address:

LCS TKT LLC

By: ███████████████

Name: ██████

Title:  GC/CCO of Investment Manager

Address:  C/o Brigade Capital Management, LP
399 Park Avenue, 16th Floor
New York, New York 10022
Attention: Chris Chaice

Telephone: ███████████

Electronic Mail Address: █████████████

BRIGADE LEVERAGED CAPITAL
STRUCTURES FUND LP

By: ███████████████

Name: ██████████

Title:  GC/CCO of Investment Manager

Address:  C/o Brigade Capital Management, LP
399 Park Avenue, 16th Floor
New York, New York 10022
Attention: Chris Chaice

Telephone: ███████████

Electronic Mail Address: █████████████

[Signature Page to Forbearance Agreement]

BRIGADE LEVERAGED CAPITAL
STRUCTURES FUND LP

By:_____
    Name:
    Title:

Address:

Telephone:

Electronic Mail Address:

███████  ████████████  (as Guarantor
hereunder, solely with respect to ~~Section 6,~~
~~Section 7 and Sections 11 through 19, inclusive)~~

By █████████████████████████████
    Name:████████

Address:█████████████████████

Telephone:███████████████████

Electronic Mail Address:███████████████████████████

████████████  (solely with respect to
Section 7(d) and Sections 11 through 18,
inclusive)

By _____
    Name: ████████████

Address:

Telephone:

Electronic Mail Address:

█████ ██ solely with respect to Section 7(d) and Sections 11 through 18, inclusive)



By
   Name: ████ ██

Address: ██████████
Telephone: ████████
Electronic Mail Address: ████████

[Signature Page to Forbearance Agreement]