J457CARS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

           v.                    17 Cr. 680 (CM)

CRAIG CARTON,


                Defendant.

------------------------------x

                         New York, N.Y.
                         April 5, 2019
                         11:30 a.m.


Before:

                HON. COLLEEN MCMAHON,

                            Chief District Judge

                    APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
ELISHA KOBRE
BRENDAN QUIGLEY
     Assistant United States Attorneys

GOTTLIEB & JANEY LLP
     Attorneys for Defendant
BY:  DERRELLE M. JANEY
     ADAM FEDERER

ALSO PRESENT:   Michael Zavona, Special Agent FBI
                 Sean Sweeney, Special Agent FBI
                 Jonathan Bressor, U.S. Probation

J457CARS

1              (Case called)

2              (In open court)

3              MR. QUIGLEY:  Good morning, your Honor, Brendan

4      Quigley and Elisha Kobre for the United States, joined by

5      special agents Sean Sweeney and Mike Savona from the F.B.I.,

6      along with probation officer Jonathan Bressor.

7              THE COURT:  Good morning to the government.

8              MR. JANEY:  For the defendant, Gottlieb & Janey by

9      Derrelle Janey.  Good morning, your Honor.

10             THE COURT:  Good morning, Mr. Janey.

11             MR. JANEY:  And I am joined at counsel table by

12     Mr. Carton and my colleague Adam Federer.

13             THE COURT:  Mr. Federer.

14             Good morning, Mr. Carton.

15             THE COURT:  All right, have a seat.

16             This matter is on for sentencing, 17 Crim. 680, United

17     States of America v. Craig Carton, Mr. Carton, having been

18     found guilty after a trial before a jury of 12 of one count of

19     conspiracy to commit wire fraud and securities fraud, a class D

20     felony, in violation of 18 United States Code, Section 371.

21     This crime carries a statutory maximum penalty of five years'

22     imprisonment; three years' supervised release; a maximum fine

23     of $250,000, or twice the gross pecuniary gain to the defendant

24     or loss to identifiable victims other than the defendant; and a

25     $100 special assessment.  Also one count of wire fraud, a Class

J457CARS

1    C felony, in violation of 18 United States Code, Section 1343.

2    This crime carries a statutory maximum term of 20 years'

3    imprisonment; three years' supervised release; a maximum fine

4    of $250,000, or twice the gross pecuniary gain or loss as

5    aforesaid; and a $100 special assessment.  In addition, one

6    count of securities fraud, a Class C felony, in violation of 18

7    United States Code, Section 78j(b) and 15 United States Code

8    Section 78f(f), 17 Code of Federal Regulations 240.10b-5.  This

9    crime carries a statutory maximum term of 20 years'

10   imprisonment; three years' supervised release; a maximum fine

11   of $5 million, or twice the gross gain or loss as aforesaid;

12   and a $100 special assessment.

13          In connection with today's sentencing, I have received

14   and reviewed a great deal of paper.  I have the presentence

15   report prepared by United States Probation Officer Jonathan

16   Bressor.  It was originally filed with the court on the 19th of

17   March of this year.

18          I have a sentencing memorandum from the government

19   which was filed with the court on the 29th of March of this

20   year.

21          I have a draft order of restitution and a proposed

22   preliminary order of forfeiture and money judgment which were

23   provided by the defendant.

24          I have received and reviewed a very extensive

25   submission on behalf of Mr. Carton that was filed by Mr.

J457CARS

1    Gottlieb and Mr. Janey.  There is a sentencing memorandum.

2    Attached to that sentencing memorandum directly are Exhibits A

3    through H, which include some medical reports and information

4    about Mr. Carton and his by now widely publicized gambling

5    addiction.

6            I have received from Gottlieb and Janey I think it was

7    up to 90 letters from you in these two file folders in support

8    of Mr. Carton, and of course I have some exhibits filed under

9    seal and some that are partly redacted.

10           I have been given by Mr. Janey the transcript of the

11   hearing before Judge Rakoff in the Caspersen matter.  We have

12   also, as is customary in these cases that are more in the

13   public eye, received some letters that just came to us

14   directly, and Mr. O'Neil has, I believe, given all of these

15   letters to you:  One dated March 31, 2019 from someone named

16   Mary Walter; one dated March 24, 2019 from a Mr. Thomas

17   Kiernan; one dated March 27, 2019 from a Mr. John Corona; one

18   received on February 15 on the stationery of the Dukal

19   Corporation from Mr. Gerry LoDuca; one from a Lindsay Held; one

20   from the Davidoff law firm from Jonathan Davidoff.  I think

21   that's all the loose letters that we have.  Mr. Quigley, you're

22   reaching for your microphone.

23           MR. QUIGLEY:  Nothing further from the government in

24   terms of submissions.

25           THE COURT:  You anticipated my question.  Is there

J457CARS

1    anything I should have seen in writing prior to today's

2    proceeding.

3          MR. QUIGLEY:  No.  Just one clarification.  I think

4    you said the proposed forfeiture and restitution orders were

5    provided by defense.  We actually provided them.

6          THE COURT:  I meant to say the government.

7          MR. QUIGLEY:  That's it.

8          THE COURT:  Thank you.  Mr. Janey, is there anything

9    that I should have seen from the defendant in writing prior to

10   today's proceeding that I have not listed?

11         MR. JANEY:  No, your Honor.  I would just briefly

12   mention -- I believe this is captured in your comments -- but

13   we also provided a CD video attached to our papers.

14         THE COURT:  Yes, it's attached to the papers.  OK.

15         All right.  Has the government reviewed the

16   presentence report?

17         MR. QUIGLEY:  We have, your Honor.

18         THE COURT:  Any additions, deletions, corrections?

19         MR. QUIGLEY:  Only one minor point, your Honor.  It

20   says I think in there that forfeiture is not applicable.  I

21   think for the reasons in our sentencing memo it's plainly

22   applicable here.  That's the only thing we have an issue with.

23   My understanding is that was an oversight.

24         THE COURT:  I think it was an oversight on the part of

25   probation.  It's not about the wisdom of forfeiture; it's about

J457CARS

1    whether it's applicable.  And I will change that on the

2    sentencing recommendation.

3              MR. QUIGLEY:  Thank you, your Honor.

4              THE COURT:  Does the government wish to be heard on

5    sentencing?

6              MR. QUIGLEY:  Just briefly, your Honor.  Your Honor

7    sat through the trial; you are obviously very familiar with the

8    record.  But this was an extended and serious fraud; it went on

9    for at least a year from August of 2016 all the way up to right

10   before the defendant's arrest.  He kept lying to people for

11   that whole time, and those are people who formed relationships

12   with him.  He was involved in both sides of the fraud, both the

13   inducement of investors and then the misappropriation of

14   investor funds, and he directly benefited.

15             I expect you will hear when the defense gets up about

16   how the defendant has made two small payments in recent days to

17   two of the individual investors, I think about $25,000 each.

18   It's a small portion of the restitution due and owing to them.

19             THE COURT:  It's going to take him a while, Mr.

20   Quigley.

21             MR. QUIGLEY:  Understood, your Honor.  And there is

22   also an article in the New York Post this morning about a

23   forthcoming video.

24             THE COURT:  Thank you, Mr. Mushnick.

25             MR. QUIGLEY:  I certainly hope the defendant is

1    remorseful and committed to making things right as indicated by

2    the restitution payments in that article, but in determining

3    what weight to give the events in recent days in imposing

4    sentence today I think it's important to look at the whole

5    picture and timeline here.

6                It's been two and a half years since the defendant was

7    first interviewed by the government about this conduct -- two

8    years since he was first interviewed by the government, 19

9    months since he was arrested, and five months since he was

10   convicted, and, you know, these payments and actions on the eve

11   of sentencing I think should be given the appropriate weight in

12   light of that whole record.

13               So, for all of these reasons, and what is set forth in

14   our sentencing memo, we think a guideline sentence is

15   appropriate here.

16               THE COURT:  Thank you, Mr. Quigley.

17               Mr. Janey, have you reviewed the presentence report?

18               MR. JANEY:  I have, your Honor.

19               THE COURT:  And have you gone over it with Mr. Carton?

20               MR. JANEY:  I have, your Honor.

21               THE COURT:  Any additions, deletions or corrections?

22   I thought maybe you took issue with the loss amount.

23               MR. JANEY:  I know that the government indicated in

24   their submission that we take issue with the loss amount.

25   That's not the case, your Honor.  But as we've shared with the

J457CARS

1    government in the days preceding, and with probation, we just

2    have in the way of modifications two proposed modifications to

3    the presentencing report, your Honor.

4              THE COURT:  Yes, sir.

5              MR. JANEY:  With respect to paragraph 166, we would

6    just --

7              THE COURT:  Let me get there.

8              MR. JANEY:  I'm sorry, your Honor.

9              THE COURT:  Yes, OK.

10             MR. JANEY:  There, your Honor, it strikes us that it's

11   appropriate to include in the PSR that Mr. Carton has made

12   $50,000 toward restitution last week.  That's one, your Honor.

13             THE COURT:  Wait a minute.  I have paragraph 166 is

14   about his 2016 and '17 tax returns.  Am I working off the wrong

15   PSR?

16             MR. QUIGLEY:  It's the same paragraph in ours, your

17   Honor.

18             MR. JANEY:  It's further down.  Further down in that

19   paragraph, your Honor, I believe it's the last two sentences.

20             THE COURT:  Oh, that the breakdown of each payment is

21   unknown at this time.  What you would like to add is that in

22   recent weeks Mr. Carton has paid -- do you want to put those

23   amounts on the record?

24             MR. JANEY:  Yes, your Honor.  He has paid $25,000 to

25   Mr. LoDuca and $25,000 to Mr. DelGaudio.

1          THE COURT:  OK.  I've added that to the end of

2     paragraph 166.

3          MR. QUIGLEY:  We have no objection to that.

4          THE COURT:  Thank you.  Then I won't have to cross it

5     out.

6          MR. JANEY:  The second, your Honor, is just by way

7     again of proposed modification in paragraph 168.

8          THE COURT:  Yes.

9          MR. JANEY:  In its current form, your Honor, probation

10    notes that the New Jersey property is currently subject to a

11    contract for short sale.  As we've shared with probation and

12    with the government, the bank is reviewing that, and the

13    anticipated short sale is imminent on or about the 18th of this

14    month, your Honor.

15         THE COURT:  OK, so anticipated closing on or about

16    April 18.

17         MR. JANEY:  And we just note that in particular, your

18    Honor, because it goes to the chart at paragraph 165, which is

19    a description of Mr. Carton's assets.  There it lists the fair

20    market value of the New Jersey property, and again by way of

21    clarification that's not going to be imminently an asset of

22    Mr. Carton.

23         THE COURT:  Understood.  OK.

24         All right.  Mr. Janey, the floor is yours, sir.

25         MR. JANEY:  Thank you.  If I may take the lectern,

J457CARS

1    your Honor.

2            THE COURT:  Absolutely.

3            MR. JANEY:  May it please the Court, Chief Judge

4    McMahon, on sentencing.  Our sentencing submission, as the

5    Court noted, is lengthy and detailed, so I'm not necessarily

6    going to repeat what we have said here, but this morning, your

7    Honor, if we might focus for the defense on two things.

8            Number one, we will focus on the first prong of the

9    statute of Section 3553(a), in particular, your Honor, the

10   nature and circumstances of the offense, and the history and

11   characteristics of the defendant Craig Carton.

12           And, your Honor, it's in that context that I would

13   like to make clear and clarify our perspective on the gambling

14   addiction and the child sexual assault and the reasons that we

15   submit that the addiction and the childhood trauma, that it led

16   to the addiction, which in turn we submit is a major

17   contributing force to the offense conduct here, is a meaningful

18   mitigating factor in this case.

19           The second piece that we will focus on, your Honor, is

20   that we will give some time to the sixth prong of the statute,

21   the need to avoid unwarranted sentence disparities among

22   defendants with similar records who have been found guilty of

23   similar conduct.

24           Now, first, Chief Judge McMahon, if I may, I have

25   personally always found sentencings to be very difficult,

J457CARS

<table>
<tr><td>1</td><td>whether I am sitting in the gallery, and especially, your</td></tr>
<tr><td>2</td><td>Honor, as a defense attorney representing a person at a</td></tr>
<tr><td>3</td><td>sentencing hearing.  They are very sober, from my perspective,</td></tr>
<tr><td>4</td><td>your Honor, for me.  For me personally as a God fearing person</td></tr>
<tr><td>5</td><td>it is a reminder -- sentencing is a reminder that there is an</td></tr>
<tr><td>6</td><td>ultimate day of reckoning.  And as a defense attorney,</td></tr>
<tr><td>7</td><td>sentencings are strong reminders that the criminal law demands</td></tr>
<tr><td>8</td><td>we be accountable to our fellow citizens every day.</td></tr>
<tr><td>9</td><td>          As we described in our sentencing submission, and as</td></tr>
<tr><td>10</td><td>your Honor read in the actual words of Craig Carton attached to</td></tr>
<tr><td>11</td><td>the submission, and as your Honor will hear from Mr. Carton</td></tr>
<tr><td>12</td><td>today, Mr. Carton is before your Honor today making no excuses</td></tr>
<tr><td>13</td><td>for his violations of the criminal law.</td></tr>
<tr><td>14</td><td>          What we do here today, your Honor, is to provide</td></tr>
<tr><td>15</td><td>background and context to help explain and provide insight for</td></tr>
<tr><td>16</td><td>what might have led to these crimes and, your Honor, especially</td></tr>
<tr><td>17</td><td>in light of the substantial number of letters of support</td></tr>
<tr><td>18</td><td>describing a person with a long history of charitable works,</td></tr>
<tr><td>19</td><td>where he gave his actual time and energy, what as your Honor</td></tr>
<tr><td>20</td><td>has taught me might explain the person that comes before your</td></tr>
<tr><td>21</td><td>Honor for sentencing.</td></tr>
<tr><td>22</td><td>          And I know that your Honor believes that that</td></tr>
<tr><td>23</td><td>discussion is important.  I know that from some of the many,</td></tr>
<tr><td>24</td><td>many sentencings over which your Honor has provided, different</td></tr>
<tr><td>25</td><td>facts, of course, different scenarios, of course, but your</td></tr>
</table>

1    Honor has held fast to key underlying principles.

2          For example, in United States v. Binday.  Again

3    different facts, but in explaining the goal of sentencing your

4    Honor pointed out that the goal of sentencing is best served by

5    sentencing the old fashioned way:  What they did, how to punish

6    them, but also emphasizing who they are is important.  In other

7    words, your Honor has repeatedly emphasized that sentencing is

8    about the conduct in context, the context of who the person is,

9    taking the full measure of the person.

10         So, given that, I know that when I discuss the role of

11   Craig Carton's gambling addiction and childhood trauma in

12   describing who he is as a person, and as that relates to the

13   history and characteristics of Craig Carton, I believe your

14   Honor well understands the relevance of these things in

15   understanding this defendant.

16         As your Honor knows -- and, your Honor, to be clear, I

17   describe this so that the reasons we are describing the

18   gambling addiction in the context of sentencing is clear, so

19   that the argument is clear.  And I know your Honor knows, but I

20   want our argument to be clear.

21         In 2013, the fifth edition of the American Psychiatric

22   Association Diagnostic and Statistical Manual of Mental

23   Disorders, DSM-V, changed the classification of pathological

24   gambling from an impulse disorder to an addiction, and part of

25   what Dr. Potenza's report is pointing out in sum and substance

J457CARS

1    is that the rationale for this change is that the growing

2    scientific literature on pathological gambling revealed common

3    elements with substance use disorders, and he points out, your

4    Honor, that many scientists and clinicians had long believed

5    that problem gamblers closely resemble alcoholics and drug

6    addicts not only from the external consequences of problem

7    finances and destruction of relationships, but increasingly,

8    your Honor, on the inside as well, emotional and mental

9    turmoil, self-destructive behavior.

10          Now, having sat through Mr. Carton's trial, I am not

11   sure anyone needed a doctor to say that Mr. Carton has a

12   gambling addiction.  Nevertheless, so as to not come across as

13   speculative or unfounded, we included Dr. Potenza's evaluations

14   and report about Mr. Carton.  He concludes that Mr. Carton has

15   a severe gambling addiction.  The history and characteristics

16   of the defendant -- of this defendant -- of Craig Carton --

17   cannot be understood without the description of that addiction,

18   what led to it and the role that it has played.

19          During the pendency of this case, Craig Carton went

20   into rehab for his gambling addiction, as we explained in the

21   submission.  Craig Carton started going to Gamblers Anonymous

22   during the pendency of this case.  He went to therapy,

23   including with the help and assistance of probation during the

24   pendency of this case and again was evaluated by Dr. Potenza

25   among others.

J457CARS

1          Now, having read many transcripts in which your Honor

2     has adjudicated sentencing, I know that your Honor believes

3     that there are some things lacking about the advisory

4     sentencing guidelines.  For me on behalf of Mr. Carton, I

5     submit one such area is its proposed treatment of gambling

6     addiction.

7          The advisory guidelines say -- as the government

8     points out in its submission -- that addiction to gambling is

9     not a reason for a downward departure.  That is the policy

10    statement in Section 5H1.4, again, as the government points

11    out.  But your Honor is not bound by the policy statement in

12    determining the sentence under 3553(a), and this is important

13    for Mr. Carton's sentencing, especially since 2013, your Honor,

14    following that reclassification in DSM-V of pathological

15    gambling to an addiction.

16         As your Honor knows -- and I point it out only to make

17    our argument clear -- courts across the country have agreed

18    that gambling addiction can mitigate a defendant's culpability.

19    Courts in Wisconsin, the Eastern District of Wisconsin,

20    immediately following the change, in United States v. DiCharia.

21    And again I'm mentioning these instances that I know your Honor

22    knows well, but to emphasize the foundation of our argument

23    about variance given who this defendant is.  And in that case,

24    your Honor, citing the changed classification, that court held

25    that given the impact of the defendant's gambling addiction in

J457CARS

1    that case, a defendant who had embezzled more than a million

2    dollars from her employer, where virtually all of the proceeds

3    of the crime went to gambling, where the defendant started

4    gambling after a trauma -- in that case a cancer diagnosis --

5    where the guidelines range was 41 to 51 months, where the

6    gambling addiction was well supported by defense materials, a

7    below-range term sufficed to provide just punishment.  The

8    defendant was sentenced to a term of incarceration of 15

9    months.  And again, your Honor, I know every case is different,

10   but I am trying to underscore that since 2013 courts have

11   seriously considered gambling addiction in contemplating a

12   variance.

13          Mr. Carton's argument on these grounds is no

14   contrivance; it is documented.  And we have offered substantial

15   record of the disease as it has affected Mr. Carton, trying to

16   make clear the role it has played in these crimes.

17          Closer to home, your Honor, we submitted in our

18   supplemental submission at least one court in the Southern

19   District of New York.  In November of 2016, Judge Rakoff in

20   United States of America v. Caspersen -- where Dr. Potenza, the

21   psychiatric doctor that provided the evaluation of

22   Mr. Carton -- testified at sentencing.

23          As your Honor noted, we provided the hearing

24   transcript as a part of our submission, and, your Honor, we

25   submit there importantly the government in that case stated in

J457CARS

1  sum and substance that a gambling disorder could be a

2  mitigating factor in sentencing.  The court in that case took

3  the gambling addiction into account at sentencing as a

4  mitigating factor, and where the guidelines indicated 15 years,

5  where the loss amount was in excess of $27 million, sentenced

6  the defendant to 48 months' incarceration.

7         We offer these things, your Honor, to underscore the

8  point -- contrary to how we read the government's submission in

9  this case -- that gambling addiction, especially after 2013, is

10  and should be something taken into account for sentencing

11  purposes in Mr. Carton's case.

12         What Dr. Potenza points out both in his testimony in

13  Caspersen, and in his report in the instance of Mr. Carton, is

14  that a common thread in gambling addicts are reports of trauma.

15  So, to provide an understanding of who Craig Carton is and what

16  underlies the addiction, and to help explain the criminal

17  conduct here, we have put forth the details of child sexual

18  assault and other traumas.

19         Again, this is important.  It goes to the history and

20  characteristics of the defendant, and to share -- your Honor,

21  rest assured, discussion of these topics have not come easy for

22  my client.  Gaining the confidence to allow me to present to

23  you things that you have seen under seal, to explain the

24  person, what has happened here and what led to these crimes was

25  no small moment.  Your Honor has read them from his own words

J457CARS

1    in the unpublished chapter.  You have read the clinical

2    evaluation.

3             Either in your own words or in the words of

4    clinicians, however you cut it, when you discuss how your

5    Tourette Syndrome was initially misunderstood as ADD or a

6    failure to pay attention, and you become locked in a cage for

7    three days, that is bound to have a profound impact.

8             Whether it be through alcohol or extreme gambling, the

9    effort to number that pain is absolutely part of the

10   explanatory context here, and, your Honor, it is for that

11   reason that page 18 of the government's submission makes what

12   for me is an incredible statement.  The government at page 18,

13   and I quote, "In any event, Carton's childhood trauma does not

14   excuse or even explain his action four decades later in

15   stealing millions of dollars, particularly since in the

16   intervening years he has been able to lead a highly productive

17   and successful life."

18            Wow.  Well, first, Mr. Carton's submission could not

19   iterate more than it did that his childhood abuse is not meant

20   to excuse his criminal conduct.  It could not have been

21   clearer.

22            Second, just because there is an outward appearance

23   that someone is successful in terms of money or property does

24   not mean that earlier trauma would not subsequently lead them

25   to commit wrongful acts.

J457CARS

1           To be clear, your Honor, I am not suggesting nor do I

2   mean that everyone who had Mr. Carton's experience would commit

3   crimes, but some people, your Honor, cannot overcome that level

4   of trauma, and Mr. Carton could not and did not, and that's

5   part of the reason we're here.  And it's important in

6   understanding the history and background of this defendant.

7           Your Honor has experience undoubtedly with victims of

8   abuse, across the range of types of abuse, committing wrongful

9   acts and folks wondering where did that come from.  The only

10  difference here is that folks watched and observed Mr. Carton's

11  gambling addiction in plain sight.  Some of the letters

12  submitted to your Honor speak to this point.  His crash from

13  four decades of trying to numb the pain from abuse was

14  inevitable and is part of the context here.  He had never

15  developed an appropriate or constructive outlet for that pain.

16  And not that he failed to try.  He was taught to feel shame

17  about the childhood rape early on.  We put this in our

18  submission.  When he tried to tell his family, they silenced

19  him.  Deeply embedded shame, unfortunately medicated by the

20  silence and calming effect of gambling.

21          Second, as the government points out, the psychologist

22  reports we submitted, and in particular Dr. Potenza's report,

23  link the abuse to Mr. Carton's gambling disorder.  We agree

24  with that.  But what the government is missing, for whatever

25  reason, is that the gambling disorder is at the heart of the

J457CARS

1   crimes here.

2          Now, your Honor, we're not trying to whitewash the

3   criminal conduct here, but we're saying that there are reasons,

4   various reasons, why crimes are committed, as your Honor well

5   knows.  In fact, at page 5 to 6 of the government's submission

6   the government replicates Government's Exhibits 2311 admitted

7   in evidence at the trial.  In sum and substance the entire

8   chart makes the point Mr. Carton either sent money to a casino

9   or he sent money to a gambling investor, which in turn enabled

10  him to borrow more money to gamble.  The chart itself is

11  evidence of the gambling addiction.  The money is not being

12  spent on sports cars or new homes; it's being spent on

13  gambling.

14         In making this point, as I mentioned to the government

15  yesterday, I'm not trying to overlook the $30,000 Mr. Carton

16  misappropriated and diverted to his landscaper, but the

17  millions and millions of dollars that were diverted to gambling

18  are what I submit tell the story.  The millions from investor

19  victims in this case to gamble; the raiding of his children's

20  college fund to gamble tells the story.  The depletion of his

21  and his wife's personal bank accounts and the bounced checks

22  while he earned $2 million at the FAN so that he could gamble

23  tell the story.

24         Again, the gambling addiction is not an excuse; it is

25  a factor and a factor we submit warranting mitigation.  This is

J457CARS

1    what the government rationally conceded in Caspersen.  There it

2    was simply that the government did not want Judge Rakoff to in

3    sum and substance give Caspersa a free pass.  And we're not

4    looking for a free pass here.  We're requesting that the

5    gambling addiction be given its appropriate weight, because it

6    reflects a diminished self-control which in turn bears on

7    Mr. Carton's culpability for sentencing purposes.

8            The nature and circumstances of the offense, your

9    Honor, are incredibly serious, and the facts of the fraud are

10   disturbing, but we submit that consistent with 3553(a)(1) they

11   must be balanced with the understanding of this history, of

12   this defendant, the characteristics of this defendant.

13           Despite the addiction, despite the traumas, also

14   important to understanding Craig Carton is to understand his

15   contribution to his community.  Now, every white collar

16   defendant presents their argument about charity.  Your Honor

17   has said this many, many times and has pointed out in many,

18   many cases that such presentations are often unavailable.  But

19   if I may, your Honor, I'd like to explain why the good works to

20   society are availing here.

21           Unlike defendants who have used proceeds from the

22   illegal activity, unlike people who are convicted of tax fraud

23   and they've used society's money to be charitable, Mr. Carton

24   used his time and his physical energy and relationships to

25   improve the lives of others, especially children and children

J457CARS

1    suffering with Tourette Syndrome.

2            One could imagine that Mr. Carton, who himself battles

3    Tourette Syndrome every minute of every day, including as he

4    sits here, could have focused on himself and his children who

5    suffer from Tourette's.  He did not do that.

6            Your Honor has read the letters, the letters from the

7    families with children who have benefited from what Mr. Carton

8    has done in the Tourette Syndrome community.  Your Honor has

9    seen the video from Camp Carton.  And understand the impact

10   Mr. Carton has had when he launched his foundation in 2013.

11           What has come out of that effort, among other things,

12   is the tic guard that's described in our submission, a

13   ground-breaking dental appliance that alleviates the severity

14   of tics, showing an average tic reduction of 39 percent.

15           Camp for 9 to 13 year olds.  And let's talk about

16   camp.  Camp, your Honor?  Having experienced what Craig Carton

17   experienced at camp at a similar age?  I could not imagine the

18   strength, the emotional wherewithal it must have taken for him

19   to return even conceptually to camp, to step outside of

20   himself, to create a safe place for these children, something

21   he decidedly did not have as an 11 year old himself.  Camp was

22   not a safe place for Craig Carton.

23           Your Honor has in our submission the other

24   demonstrations of community service, the story of Michael

25   Nichols, the story of Air Force Sergeant Lem and his family,

J457CARS

1    the history and characteristics of the defendant, your Honor.

2            Of all the letters, your Honor, that we submitted I

3    would like to emphasize just one:  The letter from Jerry Geffen

4    at Exhibit 1 in the defense submission.  Mr. Geffen is Craig

5    Carton's father-in-law.  Now, your Honor, as a father myself I

6    want nothing more than to look forward to the day when my child

7    goes off on his own and starts a family; how proud and excited

8    I will be.  I imagine that Mr. Geffen felt the same way when

9    his child, his daughter, married Craig Carton and that union

10    gave Mr. Geffen and his wife four grandchildren.  But then

11    something happened.  Craig Carton broke the law and thereby put

12    his daughter in harm's way at least financially speaking.

13    Nevertheless, what Mr. Geffen writes to your Honor in a

14    two-page letter, culminating in the penultimate paragraph, he

15    writes, "I believe Craig is an extremely good person and in

16    fact a great role model except for his gambling addiction that

17    threatens to destroy him and his family."

18            He goes on to write to your Honor, "I cannot even

19    imagine the negative impact that my family and especially my

20    daughter and grandchildren would suffer if Craig is away from

21    them.  I am hoping that you will show leniency and allow Craig

22    to rehabilitate from his profound addiction.  In spite of the

23    events of the last few years, my wife and I are still solidly

24    in Craig's corner."

25            Now, I know that the collateral damage to families is

J457CARS

1    not really taken into account in sentencing, but I offer these

2    statements to you from Mr. Geffen, your Honor, more so as to

3    inform the Court from the people who know all of him, all parts

4    of who he is, the character of the defendant.  Craig Carton has

5    deeply touched a lot of lives in positive ways.

6            With respect to prong number six of the statute, your

7    Honor, the need to avoid unwarranted sentencing disparities, I

8    understand that this concept is meant to really consider and

9    compare similar conduct in sentences across the country, but I

10   submit that comparison of sentences of other coconspirators in

11   this conspiracy is also an important consideration.

12           You have our argument in our submission, your Honor,

13   so I won't spend a lot of time on this, but to underscore the

14   point, Craig Carton is no Joseph Meli.  A hundred victims?

15   Restitution in excess of $58 million?  Sentenced to 78 months?

16           Here in this case, in Mr. Carton's case, the

17   government proposes that the guidelines range of 70 to 87

18   months is appropriate.  That makes no sense by looking at the

19   sentences adjudicated in the broader conspiracy.  The

20   government's submission doesn't even attempt to reconcile

21   sentencing Craig Carton to somewhere within the approximate

22   sentence of Joseph Meli; no attempt at explaining why that

23   would be substantively reasonable.

24           Your Honor, I began this morning by saying that at

25   least for me sentencing hearings are very sobering and serious.

1  I cannot imagine the level of responsibility that they must

2  impose upon you.  I ask that when you consider what is

3  sufficient but not greater than necessary, I respectfully

4  request that you also consider a couple of things about

5  deterrence.

6          In terms of general deterrence, some period of

7  incarceration will send a signal to those who would consider

8  stealing to refrain.  A public person will be held accountable

9  just as someone who is not a person of means.

10         Those folks who sent you letters explaining that

11 Mr. Carton be incarcerated will observe that there was

12 meaningful punishment.  I respectfully submit that a lengthy

13 period of incarceration in this case is not necessary to send

14 that message.

15         Certainly, those persons who suffer from addiction and

16 those persons who are victims of sexual abuse and are

17 struggling to overcome those traumas will not necessarily

18 understand the message that a long period of incarceration will

19 bring.  For these people like Mr. Carton who are crying out for

20 help for rehabilitation, to somehow help them arrest their

21 mental disease, what ails them, lengthy jail terms as a signal

22 will not leave a general deterrent effect when we are talking

23 about them, people like Mr. Carton.

24         On specific deterrence, your Honor, Craig Carton is a

25 broken person; a lengthy term of incarceration will not address

J457CARS

| | |
|---|---|
| 1 | his illnesses.  In fact, your Honor, I would argue that without |
| 2 | sufficient help, he will get worse and a long time in prison |
| 3 | will not either serve his rehabilitative needs or specific |
| 4 | deterrence. |
| 5 | It is for these reasons, your Honor, that we |
| 6 | respectfully submit and request that in this case a |
| 7 | nonguidelines sentence be imposed. |
| 8 | Your Honor, thank you for your consideration. |
| 9 | THE COURT:  Thank you so much, Mr. Janey. |
| 10 | Mr. Quigley, does the government have anything in |
| 11 | response? |
| 12 | MR. QUIGLEY:  No, your Honor.  Thank you. |
| 13 | THE COURT:  Mr. Carton, is there anything you want to |
| 14 | say to me before I sentence you? |
| 15 | THE DEFENDANT:  Yes, your Honor.  Is it OK to go |
| 16 | there? |
| 17 | THE COURT:  Sure. |
| 18 | THE DEFENDANT:  Your Honor, I appreciate you giving me |
| 19 | a few moments to address the Court and those who have come here |
| 20 | to court today to support me at this most difficult time. |
| 21 | When I came in I noticed that there are people here |
| 22 | from Gamblers Anonymous; there are former and hopefully future |
| 23 | coworkers here; there are people from the Tourette's community |
| 24 | here; and of course my family is here, as they have been |
| 25 | throughout the trial. |

J457CARS

1          I think it's important to mention that everybody that

2    is here in support of me and my family is here knowing full

3    well that I have made mistakes.  They know that I'm not

4    innocent, and yet they're here because the part of me that

5    threw good judgment out the door is dwarfed for them by

6    something much greater than that.  They stand by me today

7    because their individual experiences with me are a great

8    departure from the reason I stand here before you today.  They

9    have had ample time to run away from me, but they know my true

10   character, and they know that I've made mistakes, taken

11   ownership of those mistakes, and they have decided that my

12   character and morals exhibited over a lifetime outweigh the

13   idiotic decisions I have made over the course of four months,

14   all while in the throes of a much discussed addiction.

15          I would like to start by apologizing to you'll of

16   them.  They expected better of me, and they deserved better

17   from me.  I failed them in the worst most public way by not

18   living up to my word and the ideals that I convinced them that

19   I stood for.  The mere fact that they're still here in my

20   corner means the world to me, and I can only hope that while I

21   certainly and clearly have their support and their friendship,

22   I hope that one day soon I will re-earn their respect as well.

23          I have spoken quietly with my kids over the last 19

24   months, and I made it clear to them that their father made

25   mistakes and that when you make mistakes there are consequences

J457CARS

1    for it.  I love my children more deeply than any other love

2    I've ever experienced, and the mere thought of the emotional

3    pain I've caused them causes me great distress and keeps me up

4    at night.

5          I apologize to my wife of 19 years, who literally

6    overnight had her entire world turned upside down and suddenly

7    had to deal with the looks and the whispers and the street-side

8    gossip of fellow New Yorkers solely because her husband did

9    something stupid and something wrong, when all she ever wanted

10   to do was be an amazing mom and remain private, and I robbed

11   her of that.  She begged me to stop gambling.  She begged me to

12   smell the roses, as she put it, and to enjoy my successes.  In

13   those moments I doubt that either of us fully appreciated the

14   magnitude of the addiction that had taken ahold of me.  Because

15   of that addiction, there is no doubt that she is the person I

16   hurt the most.  It says a great deal about her character and

17   love for me that she is still sitting in this courtroom

18   supporting me today, and to her I publicly say I love you, I

19   thank you, and I'm sorry.

20         The proceedings, especially of late, have created a

21   lightning bolt of awareness for me.  Trying to reconcile my

22   professional accomplishments with my personal failures, I have

23   spent many nights seemingly howling at the moon what I actually

24   did versus the perception or popular belief of what my actions

25   were.

J457CARS

1          Have I been successful?  Yes, I have.  But nobody has

2     any idea what it's like when the lights go out and you lay in

3     bed awake with your thoughts and the demons come.  And those

4     demons are very real.  Some people are fortunate enough to seek

5     professional help.  I didn't.  Others turn to drugs or alcohol

6     to numb the pain.  Some sadly take their own lives.  I turned

7     to gambling.

8          Your Honor, my name is Craig C. and I'm a compulsive

9     gambler.  The date of my last bet and loss was June 22, 2018.

10    I have a disease, an addiction, and, sadly, like so many people

11    before me -- and thousands more to come after me -- I fell prey

12    to that disease.  I have learned through rehab and Gamblers

13    Anonymous that I'm truly powerless over this disease.

14         I say this not to justify what I did, because there is

15    no justification at all for it, but maybe to explain how

16    someone in the position that I was in, with all the trappings

17    of success, could make such wildly stupid decisions.  It was

18    inconceivable to me that over the course of such a limited

19    period of time the events that I caused to happen will forever

20    impact so many lives so negatively.

21         I thought I figured out a way to handle things, but

22    then I was put in a position of having to discuss the

23    particulars of the Jerry Sandusky case at Penn State on my

24    radio show, and as I did, it triggered all the emotions I tried

25    so desperately hard to control and sweep under the rug; all

J457CARS

1    those terrible emotions came rushing back to me.  If anyone

2    remembers those shows -- and they're on YouTube still -- you

3    will see and hear me in the most passionate and angry verbal

4    dialog I have ever presented on the radio.  I was reliving my

5    horror day in and day out and yet still too ashamed to let

6    people know about my personal experiences, too ashamed to put

7    those experiences in my book, too ashamed to talk to my wife

8    about it, too ashamed to ask for help; and I sought refuge in

9    quiet, and the more I could isolate myself from the world, the

10   better I felt.

11           I turned to blackjack for that salvation, never

12   thinking that I would one day have a problem or that it wasn't

13   a healthy choice or a healthy way to cope.  It simply made the

14   demons go away, and that's all I really cared about, so I did

15   it more and more and more.  And if and when I didn't have

16   enough liquid funds of my own to wager, I sought out others who

17   did and who were willing to provide me with loans -- as your

18   Honor now knows -- so I could simply escape and feel better.

19           Winning and losing became irrelevant to me.  I didn't

20   celebrate winning $4 million in three days at Resorts World in

21   the Bahamas.  I didn't bemoan losing $700,000 in less than 24

22   hours a few weeks later in Atlantic City.  I just wanted and

23   needed to play to feel the cocoon that playing provided me that

24   nothing else could.

25           Sadly, gambling became my escape, my anesthesia, my

J457CARS

1   unhealthy coping mechanism.  To those who have difficulty

2   drawing a straight line between my gambling disease and my

3   abuse, all I can say is that they should thank God that they've

4   never had to experience that connection firsthand.

5          There are two men who loaned me money that I have not

6   fully repaid:  Ron DelGaudio and Gerry LoDuca.  I have reached

7   out to both of them personally over the last 19 months to

8   apologize, to apologize for being cavalier with their hard

9   earned money, and to pledge without reservation to make them

10  whole financially if not emotionally.  I have begun that

11  process, and as you now know, made payments to both men.  I

12  know those payments don't all of a sudden make things right,

13  but I hope it shows both men and your Honor that I'm dedicated

14  to what I pledged to them; and if they were both physically

15  here today, I would again apologize face to face, man to man.

16         I know the law doesn't see shades; it sees things in

17  black and white.  Fortunately, the justice system has judges

18  like yourself to provide temperance where appropriate.  So I

19  beg that your Honor sees the shades, sees that fraud itself was

20  not my business as it was for so many others who have stood

21  where I stand today.  I never intended to take money from

22  others and not pay them back.  I had grandiose and very real

23  business plans for how we would all make money together.  Under

24  the law I understand there is no difference, but to me and for

25  the very people who are here today supporting me, I believe

1   it's an important difference.

2          In a weird way being arrested, while devastating and

3   life changing, may have actually saved my life.  It forced me

4   to get help, to see therapists, to talk to someone.  It has now

5   19 months later allowed me to openly discuss being a victim of

6   sexual assault, discuss being an addict, having the disease of

7   compulsive gambling, and taking ownership of what I did wrong

8   and why I am here.  It has essentially forced me to stop

9   gambling, to become a better person, and I thank God for that.

10          The hardest part of me continuing to get better and

11  coming to terms with what I've lived through as a child, and

12  how I chose to handle the emotions of it, is that I risked and

13  lost other people's hard earned money while not being

14  forthright with them.  The remorse I have for that is tangible,

15  and as I once read, remorse is the single worst punishment to

16  endure, to want to undo something that you have done.

17          I allowed myself to become compromised, to set aside

18  the street smarts I was raised with as a latch key kid in the

19  1970s, and to make irrational decisions, decisions like getting

20  into business with the men I did, decisions like adding

21  sentences to e-mails, decisions to allow people of questionable

22  character to invest in my gambling and be involved with my

23  private life and business opportunities, decisions that I knew

24  were wrong but I did anyway, because they all gave me the

25  opportunity to gamble more.

J457CARS

```
 1           I abandoned the dreams I had entertained.  I had
 2   wanted life not to bother me too much, and I temporarily
 3   succeeded, and how pitiful that was for me to do.
 4           Every defendant is unique to his or her own
 5   circumstance.  I will offer to your Honor that every defendant
 6   then needs to be considered uniquely.  Putting me in prison
 7   accomplishes nothing.  It won't deter a single person who has
 8   the addiction of gambling to not desperately search for another
 9   way to fund his or her next bet.  It doesn't make society a
10   safer place.  It makes me disappear for a prescribed period of
11   time and of course to make my family suffer even more than what
12   I've already put them through.
13           I have a unique skill, I suppose, of public
14   communication, a skill that affords me the opportunity to be
15   heard by millions of people, a skill that would be wasted
16   behind prison bars in contrast to all the good I could do by
17   speaking to the assault, the subsequent disease, the addiction
18   and the perils of falling prey to it, as I have.
19           I'm desperate to continue my rehabilitation with the
20   government-endorsed and funded therapist I see on a regular
21   basis, and Gamblers Anonymous meetings, which I regularly
22   attend and have recently been asked to lead.
23           I have come a long way in these last 19 months, and I
24   am demonstrably a different person, a better person than the
25   one who first stood before you back in September of 2017.  I
```

beg of you to use your authority as chief judge to impose a

sentence that might seem counterintuitive to some but will have

the longest, most positive impact on my victims and in our

community.

If you think -- as I hope you do -- that even now I

could be a greater asset to my community as I once was -- and

of course to my family -- by not going to prison, and using my

voice for good, for awareness, for recovery, and for full

restitution, then I would kindly beg of you the proverbial

second chance.

I have already begun to make a difference to those

who, like me, suffer from a gambling addiction, and I will

continue to do so long after these court proceedings are done.

I humbly submit to you, your Honor, again that not

every defendant is the same, not every defendant has to go to

prison for the appropriate punishment to be meted out or for

society to be protected.

There are times when really good people do really

stupid things.  I lied to Brigade Capital about when I needed

their money, because I wanted, I needed to escape from the

demons, and acquiring their money five weeks before I really

needed it allowed me to gamble right now and later use my

credit card to buy those tickets.

I really beg of you that you see the good in me and

how it outweighs the bad, and that you are willing to take the

J457CARS

1   calculated chance that I am who I claim to be, and that I will

2   continue to do the things I've already begun to do.  And should

3   you show me that mercy, you will never look back and regret it.

4        My family is keenly aware of the fact that I may

5   possibly be absent from some of the landmark moments in my

6   children's lives.  My daughter Mickey J. graduates high school

7   this May and goes to college in August.  My oldest son, the

8   brave face of Tourette's through our foundation graduates from

9   high school next year and will be going off to college.  My

10  second oldest son Lucky enters high school in the fall and will

11  look to make his varsity football team.  And my little man

12  Anthony, possibly playing organized sports for the first time,

13  singing with the school choir, and most likely entering third

14  grade at a different school in a different school in a

15  different town.  All this as a result of my actions, their

16  father's actions, specific actions that I take full ownership

17  of.

18       I know it's your duty to impose a sentence sufficient

19  but not greater than necessary, and I can only hope that you

20  agree that when you do take all the factors of my case, my

21  behavior, my rehabilitative efforts, and the other things I've

22  done since my arrest, plus my life as a whole, and my potential

23  professional future, that you not only consider but effectively

24  use one of the many creative sentences that rests within your

25  discretion.

J457CARS

1      I want to thank you again for allowing me to speak in

2  your courtroom.  And for the 90 or so people that wrote letters

3  on my behalf -- I never wanted to ask people's help to write a

4  letter vouching for me; and I put myself in the position of

5  doing that -- I apologize to those people.  And I thank you

6  again for the time.  That's all I have.

7            UNIDENTIFIED SPEAKER:  Excuse me.  I apologize.  Let

8  me speak before sentencing.  Please, I beg you.

9            THE COURT:  Good afternoon, Mr. Carton.

10           THE DEFENDANT:  Good afternoon, your Honor.

11           THE COURT:  Colleen from New York, first time, long

12  time.

13      I have never forgotten the look of shock that crossed

14  your face when I revealed that I was a listener; you clearly

15  weren't expecting it.  But I am a long-time listener, generally

16  8:30 to 9:15 while I'm driving in.  In fact, I was listening

17  the morning you called in sick to work.  I listened as it all

18  unfolded in real time.

19      The fact that I listened to the show regularly means

20  that before the clerk wheeled this case out to me at random I

21  knew a lot about you.  I knew you were extremely knowledgeable

22  about your craft, about the business of sports and

23  communication.  I knew you could be fun to listen to.  I also

24  knew you could be a jerk.  Just FYI, there are women who like

25  to watch and listen to sports and talk about sports, and things

J457CARS

1    can get a little raunchy on sports radio, and there were times

2    when I had to change the channel because it was a little too

3    locker room talky, but for the most part it was a good show, an

4    insightful show, and I enjoyed it -- I still do.

5         I knew that you reveled in celebrity in the sports

6    world; that came across even over the radio.  You loved being

7    famous, and you loved hanging with the famous, and having and

8    providing others with access to the famous.  And I don't fault

9    you for that.  I think most of us would feel exactly the same

10   way if we had an entree into that glittering world.

11        I knew that you had Tourette's and that you had kids

12   with Tourette's, and that you had started a foundation to help

13   kids with Tourette's, and you ran a camp for kids with

14   Tourette's, and that you threw yourself into that work for your

15   kids and for those kids.

16        I have to tell you the first thought that I had when

17   the case got wheeled out to me was, oh, my God, I hope he

18   didn't loot the foundation; I home he didn't touch the money in

19   the foundation.  Because I've had a lot of cases like yours,

20   different defendants, similar facts, and I know when you're

21   desperate to find money to pay somebody off, nothing is off

22   limits.  And I can't tell you how relieved I was when I found

23   out that that was not an element in this case.

24        I knew about all the other charities that you

25   supported, all the celebrity baseball and hockey and basketball

games in which you played, all the air time that you gave to
athletes so that they could talk up their charitable causes,
all the events that you attended and that you promoted, events
that raised money or literally hundreds, probably thousands of
worthy enterprises over the ten years that you were heard on
WFAN.  I knew, in other words, that you had put your celebrity
to good use and that a lot of people benefited from that; and I
liked you for that.

          When I read the indictment in this case, and your
public statements about it, at the beginning I knew immediately
something else.  If I hadn't known it before, I would know it
today because you just said it; it just came out of your mouth.
I knew that if the allegations against you were true -- as they
proved to be -- you probably thought you weren't doing anything
criminal even though you obtained money from other people by
deceit.  That's your word, the word you used in the letter that
you sent me, you took money by deceit.  And you think that
because you were always sure that you would find a way to pay
it back, so no one would be hurt and no one would be the wiser.
You were sure that you could make it all work out.  I knew that
because I have handled a lot of cases like yours, and everyone
who does what you did thinks and hopes that it will all work
out in the end.  You steal money, and you lie in order to get
your hands on it, but you do it with the best of intentions.

          Unfortunately, as you have learned, under the law good

J457CARS

1    intentions don't excuse lies and deceit and theft, crimes that

2    were facilitated by the very things I've identified about you:

3    That you were a celebrity, that you had ties to other famous

4    people, that you could provide people with a connection to the

5    otherwise unattainable world of big time sports, and that you

6    had an admittedly deserved reputation for good works, which

7    made folks who probably should have known better more trusting

8    than they otherwise might have been.

9         And I've also learned from presiding over cases like

10   yours that when you do the kinds of stuff that you and Meli and

11   Wright were doing, the money always runs out at some point, and

12   only then do you realize that the road to your personal hell

13   was paved -- truly paved with your good intentions.

14        Craig Carton, you have indeed descended into a hell of

15   your own making.  Everything you spent a lifetime of building

16   up is gone.  Your marriage is over.  Your family is decimated.

17   Your kids are terrified.  Your career is in tatters.  Your

18   reputation is lost.  You're expose as a fraudster, a criminal,

19   a felon.  You've lost everything worth having:  Career,

20   respect, emotional and financial security for your family.  And

21   a lot of people who have grudges against you, whether they're

22   justified or not, are now coming out of the woodwork to take

23   their potshots.  It's pretty horrible, and you did it to

24   yourself.

25        I see that your new video is called "The Reckoning".

1    There will be many reckonings to come out of your behavior --

2    reckonings with family, friends, employers and creditors.

3          Today comes the legal reckoning.  Taking all relevant

4    factors into account, the United States Sentencing Commission

5    advises that I should send you to jail for between 70 and 87

6    months, six or seven years.  The government says you deserve

7    every day of that and urges me to impose a guidelines sentence.

8    Mr. Gottlieb and Mr. Janey presented volumes of evidence and

9    argument for why you should serve far less.

10          Now, it's understandable that the presentation that

11    the defense has made on your behalf -- including the long

12    letter that Mr. Gottlieb wrote to me and the amazing speech

13    that Mr. Janey just delivered, and even the letter that you

14    wrote me -- it's understandable that they should be heavy on

15    the factors that you argue entitle you to a break.

16          The government's not wrong when it says they're a

17    little light on the factors that brought you here today.  The

18    government's letter brief by contrast focuses on those facts,

19    and they are ugly facts.  The government's recounting in its

20    sentencing memorandum of what you did accords with the evidence

21    that the jury and that I found to be convincing, found in fact

22    to be overwhelming.  So, I accept and I adopt as my findings

23    the government's recital of the facts of this case, which can

24    be found in its sentencing memo and in the probation report,

25    because that recital accurately and unapologetically explains

J457CARS

1    what you did to turn yourself from a highly respected media

2    star and philanthropist into a criminal.

3              Now, what people don't understand often about these

4    sentencing guidelines is that what triggers a particular

5    person's guidelines is the amount of the loss that was caused

6    before your crime was detected, which for our purposes we're

7    going to set at the day that you called in sick for work, and

8    that amount is, I don't know, something like $5.1 or $5.2

9    million.

10             MR. QUIGLEY:  Yes, your Honor.

11             THE COURT:  And some of that money has subsequently

12   been repaid; a little more has been repaid in recent weeks.

13   And that's a good thing, and part of your sentence will be to

14   repay the rest of it.  And you know that.  But the loss amount

15   also drives the calculation of what your prison sentence should

16   be, and like many of my colleagues I believe that the

17   guidelines as we call them, because they're driven by loss

18   amount are sometimes unduly harsh, especially when there is

19   some double counting going on, as there is in your case, some

20   double counting, two double extra counting points for the same

21   loss.

22             Now, I don't imagine that your victims would feel that

23   the guideline sentence was on the harsh side, and I've gotten a

24   few letters from people who have nothing to do with the case

25   who wouldn't feel that way, but I know enough about prison to

J457CARS

1    know that 70 to 87 months is a very, very long time.  So I'm

2    not unreceptive to the argument made by Mr. Gottlieb and Mr.

3    Janey who ask that I vary your sentence from the guideline

4    level.  That said, I'm receptive only to a few aspects of the

5    argument.

6         Your lawyers offer several arguments in mitigation.

7    They cite your position as the head of a large family, one that

8    includes children who suffer from an illness.  They call my

9    attention to all the good works that you've done in the past

10   and to the good work that you hope to do in the future -- a

11   different kind of good work, trying to convince people that

12   gambling can be a bad thing, a thing that in your case was

13   destructively addictive.  I happen to have had The Post called

14   to my attention this morning, so I read Phil Mushnick's column,

15   and I see that you've already made a video, which I look

16   forward to seeing, exposing the downside of gambling, and the

17   lawyers ask that I especially consider your gambling addiction

18   in mitigation of your crimes.

19        Where your family is concerned, I want you to know --

20   and this is true in every case -- I feel terrible for your wife

21   and for your children and for your parents.  They're going to

22   suffer because of what you -- the person who loved them the

23   most and who was responsible for them and their comfort and

24   their safety -- chose to do.  But when you crossed a line

25   between gambling, or asking people for loans to help you

gamble, and altering e-mails and redirecting money that was
solicited from business investments to your personal bank
account, and the things that you did that were criminal, you
know, you should have thought of them.  Everybody's family is
collateral damage, and I don't consider your family
responsibilities to be a mitigating factor.  What I consider
them to be is a tragedy.

          Now, I have no doubt that this entire escapade
resulted from an addiction to gambling that was deep and
powerful, but I'm not going to mitigate your sentence because
of your gambling addiction.  I certainly can't do a downward
departure, because the guidelines themselves are clear.  I mean
I could, but I'm not going to.  Addiction is not to be used as
a grounds for departing downwardly from the guidelines, but I
happen to agree with the government that I shouldn't impose a
variance sentence for that reason either, and that's because
gambling may be why you did what you did, but a gambling
addiction is not an excuse for stealing from people or for
defrauding people.

          You may have felt under extraordinary pressure to
repay your gambling debts and your other business debts, but in
our society one is not free to relieve that pressure by picking
someone else's pockets.  One can declare bankruptcy.  One can
do other things that you might have found to be publicly
humiliating, but one does not need to steal other people's

J457CARS

1   money.

2          Everyone has a motive for committing a crime.  There

3   is always a reason.  And as my colleague Judge Kaplan noted

4   many years ago -- and I've had occasion to quote him from time

5   to time -- many of those motives arise out of behaviors that

6   society recognizes as compulsive or addictive.  I number in the

7   thousands the drug addicts who have passed through this court

8   convicted of dealing in drugs which they did to support their

9   own habit, their own addiction, or convicted of stealing money

10  to pay for a habit to support an addiction, and many of those

11  crimes arise out of a defendant's sense of desperation.  Dozens

12  upon dozens of rudderless young inner city men join gangs

13  because they provide the identity, the structure, the

14  companionship, even the family that those people lack.  There

15  is always a reason, and it's often a compulsive or an addictive

16  or a desperate reason.

17         The fact that your motive was to scratch an itch to

18  make bets -- whatever the source of that itch -- generates no

19  more sympathy in me than does the fact of somebody else's

20  motive was to scratch an itch to own a Ferrari.

21         Using someone else's money for your purposes without

22  that person's permission is in my book a reprehensible thing to

23  do, and doing it in the manner that you did -- repeatedly lying

24  to induce people to part with their money, stringing folks

25  along, giving them false accountings of what they thought were

1 investments -- you did all that.  And if it sounds a little bit

2 like what a guy named Madoff did, it's because it is the same

3 thing.  He just did it for a lot longer and apparently was a

4 lot better at it.

5     I am distressed to learn about what happened to you as

6 a child.  I'm not a psychologist, or a psychiatrist, or a

7 clinician, and I suppose it is entirely possible that that was

8 something that you had buried and that it resurrected itself

9 from Sandusky or something else, and that it started you down

10 the road to perdition.

11     But the government is not wrong.  Mr. Janey is

12 horrified by what the government said on page 18 of its brief,

13 but I was not horrified by what the government said on page 18

14 of its brief.  You have done an amazing -- amazing job of

15 building a live for yourself, a successful life for yourself, a

16 successful family life for yourself, a successful career for

17 yourself in the 40 years since that happened, and while those

18 actions may have -- I'll even accept that they did --

19 contribute to your compulsive gambling, no psychologist has

20 opined that they drove you to commit fraud.  It explains a lot

21 but it doesn't excuse anything.

22     OK.  That said, I don't think it's necessary to

23 sentence you to 70 months in a federal penitentiary in order to

24 give you a sentence that is sufficient but not greater than

25 necessary to effectuate the goals of the sentencing statute.

J457CARS

1    I'm not going to keep you in suspense.  I'm going to follow the

2    recommendation of the probation department.  I'm going to

3    sentence you to 42 months in prison; together with a maximum

4    term of three years' supervised release; with special

5    conditions of participation in Gamblers Anonymous, mental

6    health counseling and extensive community service.

7            So, why do I think that an incarcerative sentence is

8    necessary here?  Well, as Mr. Janey reminded me, I've said on

9    more than one occasion that I do sentencing the old fashioned

10   way.  In the end, punishment is the principal purpose of

11   sentencing.  I think that punishment is a perfectly legitimate

12   goal of sentencing in a society that is held together by a

13   mutual compact to abide by the law.  You broke the compact, so

14   you have to take a time-out from society.  And because you

15   broke the compact in a serious way, that time-out needs to

16   reflect the seriousness of what you did.

17           If you had gone into a bank and robbed it of several

18   million dollars, not only would no one blink if you got

19   sentenced to four years, but everyone would expect that you

20   would get sentenced to four years or even more.  Well, you did

21   the same thing.  Taking money from the people you took it from

22   is just as serious in my estimation as going to a Citibank

23   branch and taking it out of the vault.

24           Another role of sentencing is to set an example for

25   other people who might be tempted to do what you did.  In your

case the very fact that you are famous means that people will
hear about this; they will hear that you are being sent to a
federal correctional facility because of what you did, and not
just for a few months or for a year but for three and a half, a
real long time-out.  And maybe -- just maybe -- if they're
tempted to do something similar, to rob Peter to pay Paul, they
will think twice about it.  Maybe they will decide that the
risks aren't worth it.  That's the message that it's important
to send.  It's a message that promotes respect for the law and
to help the community understand that everyone -- no matter his
background, or his family circumstances, or his success in
life -- has to pay when he or she commits a crime.

        Yet another goal of sentencing is to deter further
criminal conduct.  Now, there are plenty of studies suggesting
that imprisonment is not needed as a deterrent by people like
you, people who are not violent, people from whom society does
not need to be protected, people for whom shame and
mortification -- which are emotions that I know you feel --
imposes a punishment that never ends.  Maybe so.

        But I know that if I had a gambling problem, a
compulsion, and I had to spend 42 months in jail because I
stole a lot of money to support that habit -- not because I
gambled but because I stole a lot of money to support that
habit -- it would make a tremendous impression on me.  It might
even convince me that the game was not worth the candle.  You

J457CARS

1    are a recovering addict, and you need to understand and have it

2    reinforced that the game is not worth the candle.

3              So, why am I not going to sentence you to a full

4    guideline sentence as the government requests?  Several

5    reasons:

6              One is that my probation department assessed you and

7    decided that 70 months was excessive, and I have tremendous

8    respect for those professionals and their assessments.  They

9    see it all, and they are in an excellent position to guide me.

10             One is an argument that Mr. Janey made about

11   proportionality.  Mr. Janey and I see alike about

12   proportionality.  We know that the proportionality issue is

13   supposed to compare people across the entire nation whose

14   numbers are the same, but we also know, Mr. Janey and I, that

15   proportionality where it really counts is relative culpability

16   within a single offense.  And I would not sentence you to the

17   amount of time that Mr. Meli got, and I need to sentence you to

18   more time than Mr. Wright got.

19             The third reason is that you made great strides toward

20   rehabilitation, and I believe those to be sincere.

21             And the fourth is that you've done a lot of good in

22   this world, far more than most people have, and that weighs

23   heavily on your side of the ledger.

24             Now, I recognize that you had a very special platform

25   for doing good, one that's not available to all of us, but you

J457CARS

1    took advantage of that platform to help an awful lot of people

2    in an awful lot of ways, and I am going to give you credit for

3    that.

4            Furthermore, I happen to think that you can do

5    considerable good in the future, especially if you keep your

6    promise that you're going to work to make the public aware of

7    the real dangers of addictive gambling.

8            I want to thank the people from GA who are here today

9    and who wrote on Mr. Carton's behalf.  I won't name you; I will

10   keep you anonymous.  But they believe that your repentance is

11   sincere, and I think they're probably the best judges of that.

12           It is admirable that you're working with enterprises

13   like the National Council on Gambling to try to parlay your

14   celebrity into a forum that will let people know that gambling

15   can ruin your life.  I gather that the video that I read about

16   this morning is a first step toward that, and I applaud you for

17   that, and in fact I'm going to help, because not only am I

18   shortening your sentence so that you will get out and back into

19   the world sooner, but I'm going to require that you perform 150

20   hours of community service as one of the conditions of your

21   supervised release.  That's because I think you can do a lot

22   more good by going around our communities and speaking out

23   against the very real dangers of gambling than you can by

24   sitting around for the extra year or two in prison.  It is

25   because I, a long-time listener, know what you're capable of,

J457CARS

1    and we're going to get you back out where you can find yourself

2    a pulpit from which to shout out a warning -- not that silly

3    you got a problem, call 1-800 gambler warning -- which you

4    yourself told me in your letter was woefully inadequate -- your

5    words -- but a real warning about gambling as the road to

6    perdition, which it is for some people, and which it certainly

7    has been for you.

8         Now, whether that pulpit will be on sports radio is up

9    to the folks who run sports radio.  I don't run sports radio.

10   I do have a letter from one of the station managers, he says he

11   talked to you about how your eventual return could be used to

12   alert people to the dangers of compulsive gambling, and maybe

13   some day I will turn on WFAN and there you will be again.

14        But I haven't stopped listening to sports radio, and I

15   know that it has a big new advertiser, and that is legalized

16   gambling.  Two, three, four ads for sports betting run in every

17   half hour segment, ads that tout the wonders of placing the

18   bet, betting on the games, doubling your bet during the games,

19   changing your bet at half time, getting free credit against

20   your next bet if you lose -- I haven't figured out how that one

21   works yet -- and it troubles me, because the message in those

22   ads is antithetical to the message you deliver in your new

23   video and the message you're going to have to deliver as part

24   of your community service.

25        On the radio these sports betting ads are read by the

1    talent, they're read by people like you.  In his column this

2    morning Mr. Mushnick noted with some irony that Boomer Esiason

3    read an ad for sports betting on the air within minutes of

4    announcing that you had been arrested.

5            If none of this had happened -- if none of this had

6    happened and you were still on the air -- you would probably be

7    reading those very ads with their -- to quote you -- woefully

8    inadequate warning at the end.  Will sports radio give you a

9    platform to undercut its biggest new source of advertising

10   income?  It's not for me to decide.  I think there might be

11   some magical thinking going on here.

12           If sports radio is no longer your platform, you're

13   going to have to find a new platform from which to deliver your

14   new message.  But I happen to think that you're capable of

15   doing that.

16           I have reviewed the presentence report.  I adopt as my

17   findings its description of the offense and the offense

18   conduct, its calculation of the guidelines.

19           I believe the total offense level is 27; is that

20   correct?  Mr. Carton's Criminal History Category is I.  Yes,

21   27, Criminal History Category I.  I accept and adopt the

22   description of the defendant's personal characteristics set

23   forth beginning at paragraph 91 of the presentence report.  I

24   have considered at great length every one of the Section 3553

25   factors.  I have concluded that a sentence of incarceration is

J457CARS

required but that a guidelines sentence would exceed the level
that is sufficient but not greater than necessary to effectuate
the goals of the sentencing statute, as I have highlighted
those goals that I believe are most relevant in Mr. Carton's
case.

          Mr. Carton, would you please stand.  Docket number 17
Crim 680, a total offense level of 27, a Criminal History
Category of I, I hereby sentence you, Craig Carton, to be
remanded to the custody of the Attorney General of the United
States and the Bureau of Prisons for a term of 42 months on
each of Counts One, Two and Three; those terms to run
concurrently, to be followed by a term of three years'
supervised release on each count, again to run concurrently.

          Mr. Carton's financial obligations will be such that I
am not recommending a fine.  You will be required to make
restitution.  The amount at present I think needs to be reduced
by $50,000; is that correct?

          MR. QUIGLEY:  The 50,000 is reflected.

          THE COURT:  It's reflected in the amount here?

          MR. QUIGLEY:  Yes, your Honor.

          THE COURT:  OK.  Restitution to your victims in the
amount of $4,827,093.21.  And I will enter a forfeiture
preliminary judgment in a moment.  You are required to pay
$300.  That's $100 per count in court costs.  That is due and
payable immediately.

J457CARS

1          Mr. Janey?

2          MR. JANEY:  Your Honor, if we may discuss timing.

3          THE COURT:  Timing?  You can certainly discuss timing,

4     but let's discuss recommendation or place.

5          MR. JANEY:  Right.  If we could have until Monday to

6     submit to the Court a place.

7          THE COURT:  Certainly.

8          MR. JANEY:  There are a couple of things we want to

9     consider in terms of distance to the family.

10          THE COURT:  Right.  And I'm eager to accommodate

11     family visitation.

12          MR. JANEY:  Thank you.  And whatever place we will

13     request be recommended, your Honor, it will be a place with an

14     RDAP program.

15          THE COURT:  Right.  So, when you get out, Mr. Carton,

16     you have 72 hours to show up in this building and to report to

17     the probation office on the sixth floor.  Then for three years

18     you will report to a probation officer on a regular basis; you

19     will do everything the probation officer tells you to do; and

20     you will do nothing that the probation officer says you cannot

21     do.

22          The big mandatory conditions are easy to figure out.

23     You can't commit another crime.  You cannot unlawfully possess

24     a controlled substance.  You have to refrain from the unlawful

25     use of controlled substances, submitting to one drug test

53

J457CARS

within 15 days after your release and at least two periodic

drug tests thereafter.  The dates will be picked at random by

your probation officer.  You have to cooperate in the

collection of DNA, genetic identifying material, as directed by

your probation officer.  You have to comply with the standard

conditions of supervision.  They are in writing, you are going

to get a copy, and you will see them and you will sign off on

them.

You have to be truthful with your probation officer.

You have to allow the probation officer to visit you at your

home or elsewhere any time, and if there happens to be

contraband lying around, the probation officer can pick it up

and take it.

You have to work at least 30 hours a week at a lawful

type of employment, unless the probation officer excuses you

from doing so.  And if you plan to change where you work or

anything about your work, such as your position or your job

responsibilities, you have to notify the probation officer at

least ten days before you make the change.  If notifying the

probation officer in advance isn't possible because they close

the place down, you show up at work and the doors are locked,

call your probation officer within 72 hours.

You can't communicate or interact with anybody who you

know is engaged in criminal activity.  And if you know somebody

who has been convicted of a felony, you must not knowingly

J457CARS

communicate or interact with that person without first getting

the permission of your probation officer.

If you are arrested or questioned by law enforcement,

you have to notify the probation officer within 72 hours.

You must not own, possess or have access to a firearm,

ammunition, destructive device or dangerous weapon.

There are some special conditions in addition to the

standard.  You have to participate in an outpatient mental

health treatment program approved by the United States

Probation Office, and you have to continue to take any

prescribed medications unless your healthcare provider tells

you otherwise.  You must contribute to the cost of services

rendered based on your ability to pay and the availability of

third-party payment.  And I authorize the release of relevant

evaluations and reports to the healthcare provider.

You have to perform 150 hours of community service.

And you will work it out with the probation officer, but you

should not be licking envelopes somewhere.  You should be out

there talking about what you know is the most important thing

you can talk about, which is the dangers of gambling and how it

can ruin your life.

You have to provide the probation officer with access

to any financial information that he or she asks for, and you

can't incur any new credit charges or open additional lines of

credit without the approval of your probation officer unless

J457CARS

1    you're in compliance with the installment payment schedule

2    which is applicable to your restitution.

3              It is my recommendation that you be supervised in your

4    district of residence.

5              The restitution in this case, total amount

6    $4,827,093.21.  $3,507,093.21 to the hedge fund, that's

7    Brigade.  $870,000 to investor number one, and $450,000 to

8    investor number two, the gentlemen you referred to earlier.

9              Your liability for restitution is joint and several

10   with your codefendants.  All payments should include your name

11   and docket number to ensure that they are attributed to you.

12             If while you're incarcerated you are engaged in a

13   non-UNICOR work program, they will take $25 a quarter out

14   towards your restitution penalties.  If you're in a UNICOR

15   grade 1 through 4 program, they will take 50 percent of your

16   gross monthly earnings.  And when you get out restitution is to

17   be paid in monthly installments of 15 percent of your gross

18   monthly income, commencing 30 days after the date of your

19   release.

20             You need to notify the United States attorney for this

21   District within 30 days of any change in your mailing or

22   residence address that occurs while any portion of the

23   restitution remains unpaid.

24             Additionally, I have been given by the government a

25   preliminary order of forfeiture and money judgment, and I

J457CARS

1    believe that the parties have signed this.

2              MR. QUIGLEY:  It was in the consent order, but I don't

3    think there is any dispute.

4              THE COURT:  All right, fine.

5              On application of the government, and on the findings

6    set forth in this preliminary order of forfeiture and money

7    judgment, it is hereby ordered, adjudged and decreed that as a

8    result of the offenses charged in Counts One through Three in

9    the indictment, of which the defendant was found guilty, a

10   money judgment in the amount of $4,599,000 in United States

11   currency, which represents the amount of proceeds traceable to

12   the commission of the offenses charged in those counts, shall

13   be entered against the defendant Craig Carton.

14             Pursuant to Rule 32.2(b)(4) of the Federal Rules of

15   Criminal Procedure, upon entry this preliminary order of

16   forfeiture and money judgment is final as to Mr. Carton and

17   shall be deemed part of his sentence and included in the

18   judgment of conviction.  All payments on the outstanding money

19   judgment shall be made by postal money order, bank or certified

20   check, made payable in this instance to the United States

21   Marshals Service and delivered by mail to the United States

22   Attorney's Office, Southern District of New York, attention

23   Money Laundering and Asset Forfeiture Unit.

24             The marshals are authorized to deposit payments into

25   the asset forfeiture funds, and the United States shall have

J457CARS

1  clear title to such forfeited property.  Now that's in addition

2  to, not in lieu of the restitution.

3          I am signing the order of forfeiture on this 5th day

4  of April at 1:25 p.m., and I am signing the order of

5  restitution same time and date.

6          Craig Carton, you have a right to take an appeal from

7  the judgment of conviction that has been entered against you

8  and on the sentence that has been imposed upon you.  You have a

9  right to counsel in connection with any appeal you choose to

10  file, and if you cannot afford a lawyer, one will be appointed

11  to represent you.  Do you understand, sir?

12          THE DEFENDANT:  I do.

13          THE COURT:  You may be seated.

14          Mr. O'Neil, aside from the paperwork, do you have

15  anything else?  You wanted to talk about surrender date.

16          MR. JANEY:  Yes, your Honor.  Thank you.  We would

17  request a date after June 5, your Honor.  And if I may explain

18  why.

19          THE COURT:  It's OK.  July 15?

20          MR. JANEY:  Thank you, your Honor.

21          THE COURT:  Couldn't get you in by June 5 anyway.  So

22  you will be at your daughter's graduation.

23          Is there anything else from the government?

24          MR. QUIGLEY:  No, your Honor.  Thank you.

25          THE COURT:  Thank you, Mr. Quigley and Mr. Kobre.

J457CARS

1              Is there anything else from the defense?

2              MR. JANEY:  No, your Honor.  We will follow up with

3    the submission on Monday as to requests for designation

4    recommendation.

5              THE COURT:  Thank you.  Thank you, Mr. Janey.  And

6    please thank Mr. Gottlieb for me.

7              MR. JANEY:  Thank you, your Honor.

8              THE COURT:  Anything else from you, Mr. O'Neil?

9              These proceedings are closed.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25