

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

June 16, 2021

By ECF
The Honorable Colleen McMahon
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Craig Carton*, 17 Cr. 680 (CM)

Dear Judge McMahon:

      The Government writes to update the Court regarding the defendant's restitution obligation and resubmits and respectfully requests entry of the Stipulation and Order for Assignment of Earnings (Dkt. 205-1) previously jointly executed by the parties to effectuate prompt payments to the victims of his crime. The defendant's Probation Officer concurs with the terms of the Stipulation and Order. Additionally, this letter provides the applicable law regarding the collection of restitution and the information the Government has gathered regarding the defendant's current financial situation.

## BACKGROUND

      The Court sentenced the defendant on April 5, 2019 to serve 42 months of imprisonment, followed by three years of supervised release, and ordered him to pay a $300 special assessment and $4,835,186.56 in restitution to three victims. *See* Judgment (Dkt. 187). The defendant served less than 23 months in the custody of the Bureau of Prisons ("BOP") and just started his term of supervised release with the United States Probation Office ("USPO").[1] To date, he has paid his $300 assessment in full, and only $4,300 to the Clerk of Court toward his restitution obligation.[2] His current outstanding restitution balance, including accrued interest, is now $5,084,903.26.[3]

---

[1] *Compare* BOP surrender date of July 15, 2019 in Judgment *with* BOP release date of June 9, 2021 on BOP Inmate Locator for Register No. 79501-054 at www/bop.gov/inmateloc/ (visited June 9, 2021).

[2] While in prison, he made only four payments totaling $600 in the six-month period from December 2019 to June 2020. Since his release to home confinement, he has made only two payments totaling $4,000.

[3] Pursuant to 18 U.S.C. § 3612(f), interest accrues on the unpaid balance at the rate of 2.44%. The Court also ordered the defendant to pay a $4,599,000 forfeiture money judgment (Dkt. 185). He has neither forfeited any assets nor made any payments toward the forfeiture order.

In mid-March 2021, pursuant to 18 U.S.C. § 3664(k),[4] one of the victims notified the Court of a material change in the defendant's economic circumstances that increased his ability to pay restitution and asked the Court to adjust the defendant's payment schedule accordingly. *See* Letter (Dkt. 200). The Court declined to grant the victim any relief because "Mr. Carton's 'custodial' sentence does not end until June 9, 2021, at which point he will begin his three years of supervised release under the watchful eye of the Southern District Probation Department." *See* Response (Dkt. 203). Additionally, the Court noted "[i]f anyone (including the Court or the Probation Officer) believes, on the basis of the financial information so provided, that Mr. Carton's restitution schedule should be altered, the time to address the matter will be when Mr. Carton finally comes under the supervision of the Court. As that day has not yet arrived, I did not ask for any response to the [victim's] letter." *Id.*

The Government and the defendant, via his attorney, then jointly executed a stipulation to facilitate the repayment of restitution by automatic withholding of 15% of the defendant's gross earnings from his employer(s). The Court declined to enter the proposed order on the parties' stipulation and noted "Until I know more about Mr. Carton's financial situation, I am not signing off on anything." *See* Memo Endorsement (Dkt. 203).

## DEFENDANT'S ECONOMIC CIRCUMSTANCES

The Government now respectfully provides the Court with more information regarding the defendant's economic circumstances. Based on review of the non-public presentence report, public records, subsequent financial disclosures provided to the Government by the defendant, via his attorney, and subpoena responses received from third parties to date, the defendant's financial situation is the following:

- 52-year-old employed man "separated" from his spouse of 22 years, with whom he shares four children (two adults over the age of 18 and two minors);

- Employed by Audacy, Inc. from November 1, 2020 to date as a broadcaster with an annual salary of $600,000 from which gross monthly earnings of $46,154 are paid on a bi-weekly basis;

- Member of the SAG-AFTRA Union, to which Audacy, Inc. contributes $13,200 per year toward the union pension or retirement funds. SAG-AFTRA recorded earnings from November 21, 2017 to March 9, 2021 as $180,388;[5]

---

[4] This law requires defendants to notify the Court and the Government of any change in their economic circumstances that might affect their ability to pay restitution; it also permits the Government or the victim to notify the Court of such a change and seek relief at any time. 18 U.S.C. § 3664(k).

[5] Pending receipt of terms and conditions regarding eligibility for withdrawal.

- Less than three months after arrest, executed a separation agreement in which he agreed to pay spouse $15,000 monthly child support, plus at least $8,000 monthly rent and expenses for a Tribeca apartment and 100% of private school tuition, return of $300,000 taken from 529 Plan accounts, and 75% of the net equity (approx. $100,000) in their Chester, New Jersey to home, while forgoing any interest in her business and keeping only land in Arizona and his already depleted retirement accounts (two retirement, one brokerage, and two bank accounts have *de minimus* balances);

- Five months after arrest, transferred two parcels of real property in Maricopa County, Arizona with an estimated aggregate net equity of $135,000 to Robert and Joyce Kent, who had sued in December 2017 but did not obtain a default judgment until April 8, 2019—three days after sentencing—and just one day before this Court entered the criminal judgment and restitution order on April 9, 2019;[6]

- In the four months after conviction and before sentencing, sold three vehicles for a total of $60,000, allegedly to fund spousal and child support; no vehicle at this time;

- Reconciled and/or resumed cohabitation with spouse in this 9,345 square foot single-family, six-bedroom, nine-bathroom house described by realtor.com as sitting on more than four acres complete with a pool and sports court, where he served the last 12 months of home confinement:



---

[6] *See* docket for *Kent v. Carton*, No.2:17-CV-13057 (D.N.J.).

- Filed Chapter 7 bankruptcy on August 21, 2020 to stay collection of other debts and foreclosure against home;[7]

- Surrendered $59,234 cash value in a MetLife whole insurance policy to the bankruptcy trustee on March 1, 2021;

- Two adult children attend the University of Miami in Coral Gables, Florida, to which at least $190,542 for the spring 2019 to spring 2021 semesters billed to spouse's name has been paid;

- Monthly expenses of $38,500 for a four-person family in Morris County, New Jersey substantially exceed the necessary reasonable expenses allowed by the Internal Revenue Service and the U.S. Bankruptcy Trustees Program:[8]

| CATEGORY | ACTUAL | ALLOWED | VARIANCE |
|---|---|---|---|
| Housing & Utilities[9] | $16,850 | $3,697 | $13,153 over |
| Food, Clothing, Misc.[10] | $20,150 | $1,740 | $18,410 over |
| Transportation[11] - Ownership | $ 1,200 | $ 512 | $ 679 over |
| Transportation - Operating | $ 100 | $ 319 | $ 219 under |
| Out of Pocket Health Care[12] | $ 200 | $ 224 | $ 24 under |
| TOTALS | $38,500 | $6,501 | $31,999 over |

## APPLICABLE LAW

I.    **Restitution in the full amount of each victim's loss is required by law.**

---

[7]  *See* docket for *In re Craig Carton*, No. 20-19781-VFP (Bankr. D.N.J.).

[8]  *See* IRS Collection Financial Standards at www.irs.gov/businesses/small-businesses-self-employed/collection-financial-standards; and U.S. Trustee Program Means Testing at www. justice.gov/ust/means-testing/20200501 (visited April 16, 2021).

[9] *See* IRS Local Standards for Housing and Utilities at www.irs.gov/businesses/small-businesses-self-employed/new-jersey-local-standards-housing-and-utilities (visited April 16, 2021).

[10] *See* IRS National Standards for Food, Clothing, and Other Items at www.irs.gov/businesses/ small -businesses-self-employed/national-standards-food-clothing-and-other-items (visited April 16, 2021).

[11] *See* IRS Local Standards for Transportation at www.irs.gov/businesses/small-businesses-self-employed/local-standards-transportation (visited April 16, 2021).

[12] *See* IRS National Standards for Out of Pocket Health Care at www.irs.gov/businesses/small-businesses-self-employed/national-standards-out-of-pocket-health-care (visited April 16, 2021).

The Mandatory Victim Restitution Act ("MVRA") made restitution to victims a mandatory component of the sentence for certain crimes, including Title 18 offenses against property and any offense committed by fraud or deceit.[13]  *See United States v. Walker*, 353 F.3d 130, 132-33 (2d Cir. 2003) (affirming restitution order, noting that defendant cannot deny the offenses charged clearly constitute offenses against property in which identifiable victims suffered pecuniary losses).  Initially, the MVRA requires the Court to order the full amount of restitution to victims of crime regardless of the defendant's economic circumstances.[14] The Court may then set a payment schedule for the restitution, and in doing so, the MVRA requires the Court to consider various factors, including the defendant's ability to pay.[15]  The default rule is immediate payment in full unless the interests of justice warrant payment in installments, and if the Court permits anything other than immediate payment, Congress has mandated that the length of time over which payments are to be made must be "the shortest time in which full payment can be reasonably made."[16]

## II.    The criminal judgment is a lien against all of the defendant's property and rights to property that is enforced by the Government.

The payment schedule set by the Court differs from the separate statutory lien against all of the defendant's property and rights to property.  "*Notwithstanding any other federal law*,"[17] a judgment imposing a fine or restitution order "*is a lien in favor of the United States on all property and rights to property*" of the defendant[18] that "*may be enforced against all property and rights to property*" of the defendant with very few exemptions.[19]  The Supreme Court has acknowledged that  "notwithstanding" clauses reflect Congressional intent to supersede conflicting provisions of any other statute. *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993).

The MVRA purposefully enhanced post-conviction enforcement of restitution by the Government, as Congress directed the Attorney General to aggressively pursue collection of restitution with the intent that the Department of Justice would commit the resources necessary to ensure that the rights of victims are enforced.[20]  *See United States v. Phillips*, 303 F.3d 548, 551

---

[13]  18 U.S.C. §§ 3663A(a)(1) and 3663A(c)(1)(A)(ii).

[14]  18 U.S.C. §§ 3663A and 3664(f)(1).

[15]  18 U.S.C. § 3664(f)(2) (referring to schedules under § 3572), § 3664(f)(3)).

[16]  18 U.S.C. §§ 3572(d)(1)-(2).

[17]  18 U.S.C. § 3613(a) (emphasis added).

[18]  18 U.S.C. § 3613(c) (emphasis added).

[19]  *See* n. 17, *supra*.

[20]  18 U.S.C. §§ 3612(c) and 3613.

(5th Cir. 2002).  In addition to the MVRA, Congress further emphasized the rights that the Government and the Court must afford to crime victims in the Crime Victim Rights Act ("CVRA").[21]  Although federal law already required that courts order full restitution to victims,[22] mandated that the length of time over which payments are to be made must be "the shortest time in which full payment can be reasonably made",[23] and authorized the Government to enforce restitution orders "by all other available and reasonable means",[24] Congress further mandated that Department of Justice employees must make their best efforts to ensure that victims are notified of and accorded their rights,[25] including "*[t]he right to full and timely restitution as provided in law*."[26]

To that end, the Government is both authorized and obliged to collect restitution owed to crime victims—apart from the BOP custodial and USPO supervision aspects of the defendant's sentence, or any bankruptcy filing—via the many cumulative civil and criminal enforcement remedies provided in law to do so.[27]  The Government may use any federal or state procedure to enforce a criminal restitution judgment for 20 years after a defendant's release from imprisonment.[28]  The civil enforcement remedies may be used to collect restitution within the criminal case in which the defendant was originally convicted.  *United States v. Cohan*, 798 F.3d 84, 89 (2d. Cir. 2015) ("nothing precludes the government from initiating a collection proceeding under an existing criminal docket number in order to collect a fine or restitution ordered as part of the criminal sentence.").  Pursuant to the MVRA, "the required restitution was made a part of the defendant's sentence, and accordingly, the government, as the prosecuting authority, was responsible for litigating any issues that might arise as to the existence and extent of that obligation."  *Federal Ins. Co. v. United States*, 882 F.3d 348, 357 (2d. Cir. 2018).  Therefore, the Government routinely collects restitution in a variety of contexts.  For example:

**Notwithstanding a bankruptcy filing**, unlike almost all other debts, criminal fines, forfeitures, and restitution cannot be discharged, are exceptions to the automatic stay from collection, are not subject to the property exemptions in the Bankruptcy Code, and may be enforced

---

[21]  18 U.S.C. §§ 3771(b)(1) (court's duty); 3771(d)(1) (victim and the Government may assert victim's rights); and 3771(d)(3) (petition to court of appeals for a writ of mandamus available if district court denies relief sought).

[22]  18 U.S.C. § 3664(f)(1)(A).

[23]  18 U.S.C. § 3572(d)(2).

[24]  18 U.S.C. § 3664(m)(1)(A)(ii).

[25]  18 U.S.C. § 3771(c)(1).

[26]  18 U.S.C. § 3771(a)(6).

[27]  18 U.S.C. §§ 3612, 3613, 3613A, 3614, 3664, and 3771; 28 U.S.C. §§ 1651, and 3001-3008.

[28]  18 U.S.C. §§ 3613(a), (b), and (f); 3664(m)(1)(A)(i) and (ii); and 28 U.S.C. § 3003(b)(2).

by the Government.[29]   Courts have consistently held that the Government may pursue collection of criminal judgments despite a pending bankruptcy case.  *See In re Partida*, 862 F.3d 909, 912-13 (9th Cir. 2017); and *In re Robinson*, 764 F.3d 554, 557 (6th Cir. 2014) (holding that "[n]otwithstanding" clause in MVRA overrode protections of automatic stay and authorized government to collect criminal restitution imposed on debtor despite bankruptcy filing); *c.f. United States v. Colasuonno*, 697 F.3d 164, 172 (2d Cir. 2012) (affirming enforcement of restitution as exception from the automatic stay for the "continuation of a criminal action or proceeding against the debtor").

    **Notwithstanding the status of BOP custody**,[30] the Government may pursue the enforced collection of fines and restitution.  *See, e.g., United States v. Smith*, 768 Fed. App'x. 926, 928-29, 934 (11th Cir 2019) (affirming garnishment of settlement funds held in attorney's trust account while defendant was incarcerated); *United States v. Rand*, 924 F.3d 140, 143-44 (5th Cir. 2019) (affirming turnover of funds from inmate trust account notwithstanding status of custody or payment schedule, finding that "Congress specifically clarified that criminal debtors retain their obligation throughout their prison term and must not only inform the court and attorney general of any material change affecting their ability to pay but also "apply the value of [substantial] resources to any restitution or fine still owed," even if the resources were acquired while in custody. 18 U.S.C § 3664(k), (n)." noting the government "acted within its statutory mandate when it notified the district court that [defendant] had acquired the ability to pay part of his debt sooner than expected" and ultimately concluding "[defendant] cannot escape his responsibility to restore his victims by hiding behind his sentencing order, not when he has the means to pay and not when the law provides a remedy that the government and the district court may act upon.")

    **Notwithstanding the status of USPO supervised release**, courts have repeatedly recognized that the restitution required by the MVRA is an independent component of the defendant's sentence that is subject to enforcement by the Government.  *United States v. Rutigliano*, 887 F.3d 98, 106-07 (2d. Cir. 2018) (remanding order that reduced defendant's restitution obligations, differentiating restitution component of sentence from custodial component of sentence, and noting that only a willful failure to pay restitution can result in incarceration when a defendant has the ability to pay); *United States v. Lauersen*, 648 F.3d 115, 116 (2d Cir. 2011) (upholding administrative imposition of additional monetary penalties for delinquency and default in payment because responsibility for collection vests with the Attorney General and finding that only the Government has discretion to assess and waive such penalties); *United States v. Hamburger*, 414 F. Supp. 2d 219, 225-26 (E.D.N.Y. 2006) (holding that MVRA order is not merely a condition of probation or supervised release, but an independent component of the criminal sentence); *United States v. Kerzhner*, 2007 WL 29393, at *2-3 (E.D.N.Y., Jan. 4, 2007)

---

[29]   18 U.S.C. § 3613(e) and 11 U.S.C. §§ 523(a)(7) and (13) (non-dischargeable); *compare* 18 U.S.C. § 3613(a) *with* 11 U.S.C. § 522(d) (property exempt from collection) and 11 U.S.C. §§ 362(a)-(b) (automatic stay of collection).

[30]   18 U.S.C. § 3664 (n) (requiring that "[i]f a person obligated to provide restitution, or pay a fine, *receives substantial resources* from *any source*, including inheritance, settlement, or other judgment, *during a period of incarceration*, such person *shall be required to apply the value of such resources to any restitution or fine still owed*.") (emphasis supplied).

(holding there is no authority to modify the full amount of restitution due and noting that "[c]haracterizing mandatory restitution as merely a condition of supervised release would directly conflict with the language and purpose of the MVRA."); and *United States v. Williams*, 2021 WL 1338569, at *2-3 (E.D. Mo., Apr. 9, 2021) (denying defendant's motion to stay government's discovery and fraudulent transfer action until after supervised release because delaying enforced collection of restitution would lead to absurd results by shielding convicted criminals from civil liability for duration of supervised release and inhibit the Government's ability to recover restitution for victims).

## CONCLUSION

As long as restitution remains owed to a victim, under the MVRA and the CVRA, the Government is obliged to collect—and the defendant is required to pay—from his nonexempt property. The Government will continue to pursue discovery of the defendant's assets and enforcement of the judgment until the full amount of restitution is satisfied or the debt expires.[31]

The Government has conferred with the defendant's Probation Officer, who concurs with the terms of the Stipulation and Order for Assignment of Earnings (Dkt. 205-1) previously signed and submitted by the parties to facilitate payments toward restitution through automatic withholding of 15% of the defendant's gross earnings—that is at least $6,923 per month from Audacy, Inc.—immediately and until further notice. There is no reason why the victims of his crime should be denied these funds and bear the burden or risk of nonpayment. Accordingly, defendant's Probation Officer requested that the Government resubmit the stipulation to the Court for entry of the order. Therefore, we respectfully request that the Court sign the order and enter it on the docket, to aid the parties and USPO in the efficient execution of the judgment.

Thank you for your consideration of this letter.

Respectfully,

AUDREY STRAUSS
United States Attorney

By: */s/ Melissa A. Childs*
   MELISSA A. CHILDS
   Assistant United States Attorney
   86 Chamber Street, 3rd Floor
   New York, NY 10007
   Telephone: (212) 637-2711
   Facsimile: (212) 637-2717

*Enclosure*

---

[31] Pursuant to 18 U.S.C. § 3613(b), the defendant's liability to pay restitution in this case will not expire until June 9, 2041, which is 20 years from the date of his release from prison, unless he pays in full before then.