UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

──────────────────────────────── x

UNITED STATES OF AMERICA,

    -against-

CRAIG CARTON AND
MICHAEL WRIGHT,

    Defendants.

──────────────────────────────── x

17 Cr. 680 (CM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/14/2023

### DECISION AND ORDER ON DEFENDANT CRAIG CARTON'S MOTION TO ENFORCE THE TERMS OF THE PROTECTIVE ORDER

McMahon, J.:

On January 30, 2023, Darrell Janey, Esq., representing defendant Craig Carton, filed a letter motion asking the Court to enforce the protective order that was entered in this long-closed criminal fraud case. In his letter motion, Mr. Janey accused Jonathan Marc Davidoff, who is counsel for the plaintiffs (including himself) in the action *Marc Adler v. David Molner*, Index No.: 154462/2017[1]—an action not against Carton, but arising out of the same events that underlay Carton's prosecution—of violating that protective order (to which he was subject because he briefly represented Carton's co-defendant, Michael Wright, in this action) by using documents that he had obtained pursuant to the protective order in the *Adler* lawsuit. Mr. Janey retracted that allegation after Mr. Davidoff filed a letter with exhibits that made it clear he had done no such thing.

---

[1] The full caption of the state case is *Marc Adler, Robert Cohen, Peter Forsstrom, Michael McQuarry, Jonathan M Davidoff v. David Molner, Naomi Molner, Joseph Meli, Advance Entertaiment, LLC*, Index No.: 154462/2017.

1

This, however, did not end the matter. Mr. Janey persists in seeking enforcement of the protective order—apparently to shield his client, Craig Carton, from complying with a subpoena duces tecum served on him as a third-party witness in connection with the *Adler* action, or from giving a deposition in that lawsuit. The subpoena seeks the production of documents relevant to the pending state court action against Molner – including specifically communications between Carton and Molner – and it is my understanding that the judge presiding in the state court matter views Carton as a critical witness (a conclusion I would have no difficulty reaching, since Molner was involved in the fraudulent conduct for which Carton was convicted). Carton is apparently seeking to enforce the protective order in this case to shield himself from producing documents in the state case, and possibly from testifying.

On January 30, the Court issued an order to show cause directing Mr. Janey to expand on his perfunctory letter motion, and for Mr. Davidoff and the Government to weigh in on whether the court should maintain, discontinue, or otherwise modify the protective order. Messrs. Janey and Davidoff have filed briefs outing their respective positions; the Government has not responded.

The Protective Order

On November 8, 2017, defendants Carton and Wright, appeared for an initial conference and arraignment. At the conference, the Government asked the Court to sign a broad protective order covering the discovery it was preparing for the defendants. The Government said that "[t]he protective order would provide that materials produced in discovery by the government are considered confidential" *See* Conference Transcript at 5. The Court asked the Government whether the proposed order would prohibit Mr. Davidoff from using those material in connection with the *Adler* action, which had already filed on behalf of himself and others. The

Government responded, "Correct." *Id.*

The Court then pressed the AUSA on whether the Government had met the good cause showing for a protective order, under Rule 16(d):

> THE COURT: What's the good cause? I refuse to accept generalized representations from the government that there's confidential stuff in this case other than people's bank account numbers, Social Security numbers, personal identifying information. We have a lot of victims here, those alleged victims, those people's privacy can be respected. Why is anything else confidential in this case?
>
> MR. QUIGLEY: Judge, there are numerous bank records, your Honor. And I think when we get bank records and we ask for bank records for a particular individual oftentimes and it's true in this case, we get bank records for every account that's associated with that individual. So, these accounts include not only be the defendant's personal identifying information but information about other people who are not connected to this case or cosigners to those accounts.
>
> THE COURT: Easily redacted.
>
> MR. QUIGLEY: Your Honor, in the abstract if we're talking about a thousand pages of discovery or even five thousand pages, perhaps, but we're talking about tens of thousands, if not hundreds of thousands of pages.
>
> THE COURT: And how many people's bank records are we talking about? How many separate accounts?
>
> MR. QUIGLEY: Dozens, your Honor.
>
> THE COURT: Dozens. Oh, wow I'm overwhelmed.
>
> ........................................................................
>
> MR. QUIGLEY: The defendants had a lot of bank accounts and other people who were involved in the case had a lot of bank accounts. I think through that -- I mean we can do go through that. It's just going to take a tremendous amount of time. And I think the Smith case that Mr. Davidoff cites actually supports the burden on the government and the burden in not getting discovery out as a reason for issuing a broad-based protective order. I mean, it says on –
>
> THE COURT: Well, that's fine, *a broad-based protective order until you have time to do the redactions.* Sure, that gets the information into their hands. I agree. I'm going to enter an order. I will tell you right now I'm going to enter an order that prohibits Mr. Davidoff from using anything he gets here in that state Supreme Court action, anything. It will specifically say that. It will specifically say that, OK? That's a guarantee. (Emphasis added).

3

*Id.* at 6-8.

It is clear from the Court's exchange with the parties that the Court intended that the broad-based protective order remain in place only until the Government had time to redact certain personal information about victims. It was not the court's intention that any and every document produced by the Government -- many of which it had obtained from Carton himself, from his phone, from his computer, from his files -- would remain forever under lock and key, out of reach of civil plaintiffs. In fact, the Court agreed with Mr. Davidoff that *the Government* would be required to produce some of the documents covered by the protective order if Davidoff filed a *Bivens* action on behalf of the victims of the alleged fraud. *Id. at* 12-13.

The Court wrapped up the discussion of the proposed order, stating: "So I hear your arguments. . . . Entering the Protective Order may be the right thing to do I will think about this for a day or two and I may just end up entering the [Protective Order] so that we can get this moving. And we'll consider modifications of the [Protective Order] as you talk to the government. *Id.* at 14-15.

On November 8, 2017, the Court entered the Protective Order. *United States v. Carton*, 17 Cr. 680 (CM), ECF No. 14. Notably, the order did not include a provision expressly prohibiting Davidoff from using discovery produced by the Government in the state civil action. Nonetheless, as Mr. Janey concedes, no materials produced or derived from the Government in this action have been produced by Mr. Davdoff in the *Adler* case. So, the only question is whether there is anything in the protective order that shields Mr. Carton from complying with a subpoena duces tecum or with the lawful orders of one of my colleagues in the New York State Supreme Court.

The answer is no. There is not.

As a reading of the transcript makes clear, the protective order in this case was entered for one reason and one reason only: to protect the personal identifying information of the victims of Carton and Wright until such time as it could be redacted. The court rejected, on the record and in no uncertain terms, the notion that there was any basis for confidentiality aside from that. Therefore, to the extent that Mr. Carton or his attorney read the protective order as covering any information other than this personal identifying material, they are misreading the order and ignoring the court's oral rulings entered in connection therewith. And while the parties never formally did what the court told them to do – present the court with a modified version of the protective order once the documents were redacted – the documents in redacted form were used at the trial. So as far as I am concerned, the protective order ceased to have any force or effect long ago.

The order was certainly not entered to protect Carton from the consequences, civil or criminal, of his actions. It was not entered to shield him from having to answer for his conduct in a state court, whether in the *Adler* action or otherwise, or from giving testimony and evidence that is relevant in that action. Nothing in the protective order "protects" Mr. Carton from responding – by producing any and all documents that were used in this case, regardless of whether the Government handed them over or not – to any lawful subpoena or any order of some other judge in some other lawsuit. Protective orders are not supposed to be modified or terminated to the extent that any party "reasonably" relied on them in producing documents; but Mr. Carton relied on no protective order when producing his documents to the Government, and if he thought the limited protection the court was prepared to give to the documents in the Government's production would forever shield him from civil accountability, then his reliance was unreasonable.

The only thing that survives from the protective order is the portion that requires redaction of any document containing identifying information about any victim of this "ticket scheme" – not their names, but addresses, phone numbers, social security numbers, bank account numbers, or other, similar private information. But once so redacted, nothing in the protective order prevents their being produced in response to a lawful subpoena. It is for the state court judge to decide Mr. Carton's motion to quash, but no order of this court precludes him from either testifying or giving evidence in the form of document production, subject only to the redaction ruling made by this court.

I should note that, while the Government has not responded to the court's inquiry, Mr. Davidoff advises the court that the Government – which was party to and is subject to the protective order – has already produced a tranche of documents from this case in connection with the *Adler* court action. Those documents were previously subject to the protective order. *See* Davidoff Declaration Exhibit 4. The Government did not seek the court's permission to produce those documents, which suggests that it read the protective order in the context in which it was issued and concluded that it was not violating same by producing the documents in a civil lawsuit to which they are relevant.

This court heard a great deal of evidence to the effect that Molner assisted Mr. Carton in the fraudulent ticket scheme; the trial testimony and closing arguments are peppered with references to Molner and his numerous emails with Carton, including how Molner helped Carton edit the fake contracts with the investors. *See* Trial Transcript at 850. Thus, discovery from Mr. Carton, including but not limited to documents that were once the subject of the protective order (and that still are to the extent they have not been properly redacted) would appear to be relevant to the lawsuit against Molner. But that is not for this court to decide. It is for Justice David B. Cohen in

the New York State Supreme Court. Justice Cohen has entered an order, dated December 1, 2022, directing Mr. Carton to appear for a deposition; in response to Mr. Carton's emergency order to quash the subpoena duces tecum addressed to him, my state court colleague stated that Mr. Carton had evidence that was relevant to the state action and would be deposed. This court does not propose to do anything that would override those orders; my writ does not extend to interfering with a lawsuit pending in another court. This is especially so since, per the representation of Mr. Davidoff, the Plaintiffs in the state action are not seeking bank information or the private information about victims; they are seeking documents and communications that evidence Molner's participation in the fraud. This court made it perfectly clear on the record that those documents were not going to be forever subject to a federal protective order because they contained no protectable information

Therefore, Justice Cohen should be advised that nothing in the protective order prohibits Mr. Carton from giving relevant evidence, whether in the form of testimony or documents, in the ongoing state court action. And since I am advised that the plaintiffs in the state court action are not seeking the only information that is protected forever by the protective order, the motion seeking "enforcement" of the protective order is DENIED.

This constitutes the decision and order of the Court.

Dated: New York, New York

April 13, 2023

_____
U.S.D.J.

BY ECF TO:

    Darelle Janey, Esq.
    Jonathon Davidoff, Esq.
    Scott Harmon, Esq.
    Daniel Gitner, Esq. (in his capacity as Chief of the Criminal Division, USAO/SDNY

Case 1:17-cr-00680-CM   Document 226   Filed 04/14/23   Page 8 of 8